# In the United States Bankruptcy Court
# For the Eastern District of Pennsylvania

| | | |
|---|---|---|
| In re | : | |
| | : | |
| Jamuna Real Estate, LLC | : | Case no. 04-37130 |
| Bagga Enterprises, Inc. | : | Case no. 04-37132 |
| United Management Services, Inc. | : | Case no. 04-37136 |
| | : | |
| Debtors | : | Chapter 7 |
| | : | |
| | : | |
| Marvin Krasny, Chapter 7 | : | |
| Trustee of Jamuna Real Estate LLC; | : | |
| Marvin Krasny, Chapter 7 | : | |
| Trustee of United Management | : | |
| Services, Inc.; Gary Seitz, | : | |
| Chapter 7 Trustee of | : | |
| Bagga Enterprises, Inc.; | : | |
| and FL Receivables Trust 2002-A | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| Pratpal Bagga; Khushvinder Bagga; | : | |
| Ravinder Chawla; Hardeep Chawla | : | |
| Welcome Group, Inc.; K&P Real | : | |
| Estate LLC; World Apparel Products, | : | |
| Inc. d/b/a SJM Trading Co., d/b/a | : | |
| Ten Tigers; American Merchandise | : | |
| Co., Inc., a/k/a American | : | |
| Merchandising Co., Inc.; | : | |
| 21st Century Restaurant Solutions, | : | |
| Inc.; Brand Trade, Inc.; | : | |
| HB Properties, Inc.; | : | Adv. No. 06-0128 |
| HB Properties LLP; Sant Properties; | : | Adv. No. 06-0129 |
| John and Jane Does and ABC | : | |
| Companies | : | Adv. No. 06-0130 |
| | : | |
| Debtor(s) | : | |
| | : | |

# <u>Opinion</u>

By: Stephen Raslavich, United States Bankruptcy Judge.

**<u>Introduction</u>**.

    In three related bankruptcies, two trustees and a secured

lender have filed an identical fifteen count complaint against four individuals and various entities controlled by them. The Complaint alleges federal racketeering and state common law claims. All Defendants move for dismissal of all counts with the exception of Count V. The motion is opposed by the Plaintiffs. A hearing on the motion was held on July 25, 2006. For the reasons set forth below, the Motion will be granted in part and denied in part.

*Procedural Developments*
*Since the Filing of this Motion*

Following the hearing, the Defendants filed a motion in the District Court to withdraw the reference of this case from the Bankruptcy Court. That request was opposed. Before ruling on that motion, the District Court remanded the matter to this Court to determine which claims in the Complaint raise core versus non-core claims. *See* Order dated October 6, 2006, 06 cv 0050. This Court made that determination on December 20, 2006. On January 22, 2007, the District Court denied the Defendants' motion to withdraw reference. That placed the Defendants' Motion to Dismiss squarely before this Court.

*Summary of Holding*

Count I -RICO (Plaintiffs against Pratpal and Khushvinder Bagga and R. Chawla)

- Basis for Contention: Defendants maintain that this count fails to state a claim under RICO against either Pratpal Bagga, Khushvinder Bagga or Ravinder Chawla

2

- Holding: The Court holds that this Count does state a RICO claim against all three Defendants

Count II - Conspiracy to Violate RICO (Plaintiffs against all Defendants)

- Basis for Contention: The Defendants argue that the Complaint is deficient as it fails to allege agreement among the alleged conspirators, that it fails to allege the requisite mental state, and that the Plaintiffs lack standing to raise this, as well, as the first count.

- Holding: Count II states a claim of conspiracy to violate RICO as to all Defendants

Count III - Alter Ego (Plaintiffs against the Baggas, Bagga Enterprises, Inc., Jamuna Real Estate LLC and United Management Services, Inc.)

- Basis for Contention: Defendants argue that no alter ego claim is made out as to Mrs. Bagga.

- Holding: The Court finds that Count III states an alter ego claim as to both Pratpal Bagga and his wife Khushvinder Bagga.

Count IV - Fraudulent Transfer (Plaintiffs vs. Pratpal and Khushvinder Bagga)

- Basis for Contention: Defendants maintain that this Court lacks jurisdiction to hear this claim; that the count fails to state a claim; and that the claim is untimely

- Holding: Count IV will be dismissed without prejudice

Count V - Conversion (Plaintiffs against Pratpal Bagga)

- This count is not challenged by the Defendants.

Counts VI through VIII - Turnover (Plaintiff Trustees v. Defendants)

- Basis for Contention: Defendants maintain that these

3

three counts do not plead turnover claims.

- Holding: The Court concurs with the Defendants.  Counts VI through VIII will be dismissed with prejudice for failure to state claims for turnover

Count IX - Fraud (Plaintiff FL Receivables vs. Individual Defendants)

- Basis for Contention: Defendants maintain that this Count is not made out as to Khushvinder Bagga, Ravinder Chawla or Hardeep Chawla.

- Holding: Count IX will be dismissed as to Khushvinder Bagga, Ravinder Chawla and Hardeep Chawla without prejudice

Count X - Alter Ego (Plaintiffs against all Defendants)

- Basis for Contention: The Defendants maintain that this count fails to state an alter ego claim against Khushvinder Bagga, Ravinder Chawla or Hardeep Chawla.

- Holding: The Court finds that Count X fails to state an alter ego claim against either Ravinder or Hardeep Chawla.

Count XI - Breach of Fiduciary Duty/Self Dealing (Plaintiffs against all Individual Defendants

Count XII - Breach of Fiduciary Duty/Preservation of Entity Property (Plaintiffs against the Bagga Defendants)

Count XIII - Breach of Fiduciary Duty/Deepening of Insolvency (Plaintiffs against all Defendants)

- Basis for Contention: As to all three counts, Defendants argue that each fails to state a claim against Khushvinder Bagga, Ravinder Chawla or Hardeep Chawla.

- Holding: Counts XI through XIII fail to state a claim against either Ravinder or Hardeep Chawla the three counts will be dismissed without prejudice as to them.

Count XIV - Aiding and Abetting a Breach of Fiduciary Duty (Plaintiffs against the Defendants)

4

- Basis for Contention: The Defendants argue that this count fails to state a cause of action as a legal matter and, alternatively, that it fails to state a claim as to either Khushvinder Bagga or Hardeep Chawla.

- Holding: The Court holds that this count states a claim against both Khushvinder Bagga and Hardeep Chawla for aiding and abetting a breach of fiduciary duty.

Count XV - Declaratory Relief (Plaintiffs against the Defendants)

- Plaintiffs have admitted that this count is identical to Count X.  Therefore, this Court's ruling as to that earlier count disposes of this one.

*The Arguments
For Dismissal*

The Motion to Dismiss is premised mostly on Rule 12(b)(6)[1]; i.e., that the complaint fails to state a claim upon which relief may be granted.  It is also party-specific as to certain defendants and certain claims.  The statute of limitations is also raised as to certain counts.

*Standard for Dismissal*

In judging the legal sufficiency of a complaint, the claim may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).  All well-pleaded factual allegations in the claim must be taken as true.  *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972);

---

[1]Made applicable by B.R. 7012(b).

5

*Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The court must draw all reasonable inferences from the allegations and view them in the light most favorable to the non-moving party. *Rocks*, 868 F.2d at 645. Although the statute of limitations is raised usually as an affirmative defense, it may be brought as grounds for dismissal. *See Robinson v. Johnson*, 313 F.3d 128, 135 n.13 (3d Cir. 2002) (recognizing that the only time that the statue of limitations may serve as grounds for dismissal in a Rule 12(b)(6) motion is when it is clear from the face of the complaint the time has in fact run); Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1357 at 686 (2007) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).")

*Count I - RICO*

The first count alleges that Pratpal Bagga, Khushvinder Bagga, and Ravinder Chawla violated § 1962 of the Racketeer Influenced and Corrupt Organizations Act of 1984 (RICO).[2] That section provides, in pertinent part, that:

---

[2]18 U.S.C. § 1961 et seq. RICO creates a private cause of action for a person injured in business or property under 18 U.S.C. § 1962. 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3286 (1985).

6

> It shall be unlawful for any person employed
> by or associated with any enterprise engaged
> in, or the activities of which affect
> interstate or foreign commerce to conduct or
> participate, directly or indirectly, in the
> conduct of such enterprise's affairs through
> a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to plead a violation of RICO,

plaintiffs must allege (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity.  *Lum v. Bank*

*America,* 361 F.3d 217, 223 (3d Cir. 2004) *citing Sedima, S.P.R.L.*

*v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).

Where, as here, Plaintiffs rely on mail and wire fraud as a basis

for a RICO violation, the allegations of fraud must comply with

Federal Rule of Civil Procedure 9(b), which requires that

allegations of fraud be pleaded with specificity.  *See Saporito*

*v. Combustion Engineering*, 843 F.2d 666, 673 (3d Cir. 1988) *rev'd*

*on other grounds* 489 U.S. 1049, 109 S.Ct. 1306 (1989).  In order

to satisfy Rule 9(b), plaintiffs must plead with particularity

"the 'circumstances' of the alleged fraud in order to place the

defendants on notice of the precise misconduct with which they

are charged, and to safeguard defendants against spurious charges

of immoral and fraudulent behavior." *Seville Indus. Mach. Corp.*

*v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984).

Plaintiffs may satisfy this requirement by pleading the "date,

place or time" of the fraud, or through "alternative means of

injecting precision and some measure of substantiation into their

7

allegations of fraud." *Id.* (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. *See Saporito,* 843 F.2d at 675; *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658-59 (3d Cir.1998) *abrogated on other grounds as recognized in Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000); *Klein v. General Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir.1999).

*Conduct*

Liability under subsection (c) is predicated on a defendant having "*conduct[ed] or participate[d], directly or indirectly, in the conduct* of [the enterprise's] affairs." 18 U.S.C. § 1962(c)(emphasis added). In *Reves v. Ernst & Young*, the Supreme Court held that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must participate in the operation or management of the enterprise itself." 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) (citation omitted).[3] The High Court understood the word "conduct" to indicate some degree of direction over the affairs

_____

[3]Although *Reves* involved a motion for summary judgment, the Third Circuit has held that its holding is applicable to a motion to dismiss. *See University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (rejecting argument that *Reves* test applies only in a summary judgment context)

8

of the enterprise.  *Id.* at 178, 113 S.Ct. at 1169.  The Court concluded also that the term "participate" meant "to take part in."  *Id.* at 179, 113 S.Ct. at 1170; *see also See University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (adopting "operation or management" test enunciated in *Reves*); *see also United Nat. Ins. Co. v. Equipment Ins. Managers*, 1995 WL 631709 *4 (E.D.Pa.).  What conduct or participation is alleged here?

In its recitation of the alleged facts,[4] the Complaint begins generally by alleging that "the Baggas and the Chawlas jointly *control and direct* the affairs of the Bagga/Chawla Enterprise."  Complaint, ¶ 33.  They are further alleged to have "*made* [at least 20] joint *decisions concerning* the affairs of the [enterprise.]"  *Id.* ¶ 34(a) - (t).  Within the RICO counts, "Pratpal Bagga, Khushvinder Bagga and Ravinder Chawla are alleged to have "directly or indirectly *conducted or participated in conducting* the affairs" of the enterprise.  *Id.* ¶ 166.  The three individuals are alleged to have "knowingly caused" companies they control to defraud a lender.  *Id.* ¶ 169.  Pratpal Bagga caused two entities of the enterprise to hide collateral.  *Id.* ¶170.  Both the Baggas and the Chawlas are alleged to have caused two of its businesses to sell counterfeit clothing and to have laundered the proceeds of such actions.  *Id.* ¶ 171, 172.  Pratpal is also

---

[4]This extends over 30 pages and 159 paragraphs.

alleged to have committed bankruptcy fraud in the case of one of
the entities, the Welcome Group, to benefit the enterprise. *Id*.
¶ 174.

The Court finds that each of the named individual defendants
to this count served in some managerial or operational capacity
as to the enterprise. Pratpal Bagga is cited the most often as
having acted to further the enterprise. He was assisted by his
wife Khushvinder on at least two occasions. Ravinder Chawla is
not specifically identified in the RICO count; however, there are
numerous allegations implicating the Chawlas in the sale of
counterfeit goods, money laundering, and bankruptcy fraud.
Accordingly, the element of "conduct or participation in the
conduct" of the enterprise is satisfied as to each of the named
individual defendants here.

*Enterprise*

The statute specifically defines an enterprise as "any
individual, partnership, corporation, association, or other legal
entity, and any union or group of individuals associated in fact
although not a legal entity." 18 U.S.C. § 1961(4). To plead a
RICO enterprise, "it is enough that a complaint put the defendant
on notice of the claims against him. It is the function of
discovery to fill in the details, and of trial to establish fully
each element of the cause of action. *Seville, supra,* 742 F.2d at
790. Accordingly, the complaint need only identify the entities

10

which Plaintiffs believe constitute the enterprise. *See PTI
Services, Inc. v. Quotron Systems, Inc.*, 1995 WL 241411 *12
(E.D.Pa.) *citing Seville, supra*, 742 F.2d at 790.  The rules of
pleadings require nothing more at this early juncture than that
bare allegation. *See State Farm Mutual Automobile Ins. Co., v.
Red Lion Medical Center, Inc.*, 2003 WL 21973349 *3 (E.D.Pa.)
*citing Seville, id.*  Although one court has added that the
Plaintiff must allege that the enterprise is separate from the
pattern of racketeering activity, *see Dianese v. Com. of
Pennsylvania*, 2002 WL 1340316 *11 (E.D.Pa.), the majority of the
courts in this District hold that all that needs to be pleaded at
this stage of the proceedings is the existence of the enterprise.
*See, e.g., Lickman v. Rivkin*, 2006 WL 1744753 *6 (E.D.Pa.) *citing
Seville*, 742 F.2d at 790.

Here, Plaintiffs allege the existence of the "Bagga/Chawla
Enterprise" in detail.   The enterprise is alleged to be an
association in fact of individuals and affiliated entities under
the joint direction, control and leadership of the Baggas and
Chawlas. *Complaint,* ¶ 29.  Its objective, as alleged, is to
obtain non-recourse loans for the benefit of the corporations
controlled by these individuals, to convert the proceeds of such
loans to the use of non-borrowers by various fraudulent means, to
default on such loans, and to frustrate efforts to collect those
obligations. *Id.* ¶ 4.  The enterprise's alleged modus operandi

11

is set out in one extended paragraph of the Complaint.[5]  *Id.* ¶ 5.
It involves "common businesses" with "interlocking relationships"
which "engage in commingling of funds." *Id.*  "Over a period of
years," these businesses are alleged to have "worked together" to
perpetrate the alleged fraud*.  Id.*  The enterprise is alleged to
have created a "complex system of commingled transactions" with
an intentionally opaque accounting system.  *Id.*  Money is
borrowed by one or more of the businesses; that business then
cooperates with other businesses in the enterprise to divert the
loan proceeds funds from the borrower to other businesses or
individuals controlling them; the obligated business is then
stripped of assets or fraudulently encumbered so that the lender
cannot collect from the borrower.  *Id.*

For purposes of surviving a motion to dismiss, the Complaint
pleads the existence of an enterprise sufficiently.  There is no
mystery as to who the members of the enterprise are, what the
enterprise is, what it does, and how it goes about doing it.
Moreover, it clearly demarcates, on the one hand, the Baggas, Mr.
Chawla, and the businesses each controls, from the enterprise.
The Court finds, then, that the Complaint sufficiently identifies
the enterprise.

*The Pattern and
Racketeering Activity
Elements of the RICO Claim*

---

[5]It fills almost an entire page of the Complaint.

The order of the remaining two RICO elements enumerated by the Third Circuit in *Lum, supra*—third, a "pattern" and fourth, a "racketeering activity"—would indicate that the Court first analyze whether a pattern is pleaded; however, as a practical matter, that order must be reversed. As will be seen, *infra,* the Court cannot determine if a pattern between or among acts has been pleaded until it knows what those predicates are. Indeed, this was the method employed by both the Supreme Court and the Third Circuit. *See, e.g., H.J.,Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 251, 109 S.Ct. 2893, 2906 (1989) (finding first that petitioner alleged multiple predicate acts of bribery before analyzing whether such acts related to a common purpose); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411-12 (3d Cir. 1991) (finding that complaint alleged predicate act of mail fraud before determining if pattern pleaded). Does the Complaint plead the requisite "racketeering activity"?

To answer that question, the Court refers first to the definition of the term provided in the statute. In pertinent part, a "racketeering activity" is

> (B) any act which is indictable under any of the following provisions of title 18 United States Code: … section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) … section 1956 (relating to the laundering of monetary instruments) … section 2314 and 2315 (relating to interstate transportation of stolen property) … section 2320 (relating to trafficking in goods and services bearing counterfeit marks) … (D) any offense

13

>     involving fraud connected with a case under
>     title 11 …

18 U.S.C. § 1961(1).  The complaint alleges two or more related instances of mail fraud, wire fraud, trafficking in counterfeit goods, money laundering, interstate transportation of converted goods, tax fraud and bankruptcy fraud.  Complaint, ¶ 168.

As to mail and wire fraud per se, the Complaint alleges that the Defendants used the mails and wires to make fraudulent misrepresentations to the lender to obtain loans (¶¶ 40-41), to transmit loan proceeds to other members of the Enterprise in order to conceal them from the lender (¶¶ 100, 101), to falsely explain to the lender why the loan could not be repaid, and to convey a collusive offer to satisfy the loan at a 50% discount. *Id.* ¶¶ 83, 111-113, 169, 173.  The Defendants were also alleged to have used the mails and wire to traffic in counterfeit apparel and to launder the proceeds of that business.  *Id.* ¶ 171-172. They are accused of having moved the lender's collateral across state lines.  *Id*. ¶ 170.  Finally, the Defendants are alleged to have committed a number of frauds related to a bankruptcy: concealing property, making a false oath or account, misstating a debtor's financial condition and/or payments to insiders, and knowingly destroying or concealing records.  *Id.* ¶¶ 174-75. Each of these acts constitutes a "racketeering activity" as

expressly defined above.[6] The next question for the Court to

answer is whether these acts follow a "pattern"?

*What Constitutes a Pattern*
*for Purposes of RICO?*

There is no specific definition of the term "pattern" in the

statute.  The closest it comes is in its definition of "pattern

of racketeering activity." That is defined as

> at least two acts of racketeering activity,
> one of which occurred after the effective
> date of this chapter and the last of which
> occurred within ten years (excluding any
> period of imprisonment) after the commission
> of a prior act of racketeering activity;

18 U.S.C. § 1961(5).  This definition has been held to "state a

minimum necessary condition for the existence" of a "pattern."

*H.J. Inc., supra* 492 U.S. at 237, 109 S.Ct. at  2899 (1989)  The

Supreme Court emphasized that allegations cannot constitute a

RICO "pattern" unless they show that the racketeering predicates

are *related*, and that they amount to or pose a threat of

*continued criminal activity*." *Id.*; *see also Kehr Packages, Inc.*

*v. Fidelcor, Inc.*, 926 F.2d at 1412 (emphasis added) (*citing*

*H.J., Inc., supra* to require RICO plaintiff to plead that

predicates acts related and that they amount to or pose the

threat of continuing criminal activity to sufficiently allege

---

[6]Although tax fraud is alleged to be one of the predicate acts of
the enterprise, the body of the RICO counts do not allege it.  This is
not surprising as the Third Circuit has explained that tax fraud is
not "racketeering activity" under RICO.  *See United States v. Morelli*,
169 F.3d 798, 804 (3d Cir. 1999)

pattern requirement); *see also Tabas v. Tabas,* 47 F.3d 1280, 1303
(3d Cir.1995) ("Thus, a plaintiff seeking to bring a RICO claim
must allege, among other things, relatedness and continuity")
Both tests depend heavily on the specific facts of each case.
*Kehr, supra, id.*

*Relatedness*

The Supreme Court has adopted a broad multi-factor test for
relatedness, which focuses on whether the alleged predicate acts
"have the same or similar purposes, results, participants,
victims, or methods of commission, or are interrelated by
distinguishing characteristics and are not isolated events."
*H.J., Inc.* 492 U.S. at 240, 109 S.Ct. at 2901 (quoting Dangerous
Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982),
*repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98-473,
tit. II, § 212(a)(2), 98 Stat.1987).   Does the Complaint allege
a nexus among these predicate acts?

The Court finds that it does.  The Complaint alleges that
the Defendants used mail and wire fraud to transmit false
information to obtain the commercial loans.  Complaint ¶ 41.
This involved mailing false price lists for equipment that the
Defendants were supposed to buy with the loan proceeds.  *Id.* ¶
47.  Other false financial information was furnished as well.
*Id.* ¶ 49.  After receiving the loan proceeds, the Complaint goes
on to explain, Mr. Bagga claims to have invested those proceeds

16

in a business controlled by his cousin, Mr. Chawla. *Id*. ¶ 71.
That business is alleged to have trafficked in counterfeit
apparel in violation of federal law. *Id*. ¶¶ 66, 67. From there,
the loan proceeds would be re-characterized and funneled back to
the Baggas. In other words, those funds were laundered also in
violation of federal law. *Id*. ¶ 84-87. By this time, the
borrowers had defaulted and when pressed for payment, they
resorted to mail and wire fraud to convey an offer of compromise
to the lenders that was collusive. *Id*. ¶ 111-113. All the
while, the Complaint continues, the Defendants were transporting
the collateral that secured the loan out of state in violation of
federal law. *Id.* ¶ 126-131. And when the lender sought to
enforce its guarantees against Welcome Group, the Defendants
resorted to bankruptcy fraud. They encumbered the Welcome Group
with fraudulent liens which ostensibly had priority over the
lenders claim. They are also alleged to have failed
intentionally false disclosures in that proceeding. *Id*. ¶¶ 135-
142. All of the racketeering activities alleged in the complaint
follow a pattern to defraud this lender.

*Continuity*

To establish a RICO pattern, it must also be shown that the
predicates themselves amount to, or that they otherwise
constitute a threat of, continuing racketeering activity. *H.J.
Inc., supra*, 492 U.S. at 240, 109 S.Ct. at 2901. The Third

17

Circuit has interpreted the Supreme Court's holding as follows:

> Of course, not every single scheme comprising two or more predicate acts will constitute a pattern. Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. A short-term scheme threatening no future criminal activity will not suffice. Although Congress intended a "natural and common-sense approach to RICO's pattern element" and continuity "depends on the specific facts of each case," *id.* at 237, 242, 109 S.Ct. at 2899, 2902, the Court delineated some parameters of the analysis. The Court stressed that continuity is "centrally a temporal concept." *Id.* at 242, 109 S.Ct. at 2902. Thus, the length of time over which the criminal activity occurs or threatens to occur is an important factor. As the Court noted, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* One method of demonstrating continuity is to show that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* This showing can be made with respect to otherwise legitimate entities, or when "the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.*
>
> This court has also noted other factors that are relevant to the "pattern" inquiry. In *Barticheck v. Fidelity Union Bank/First Nat'l State,* 832 F.2d 36, 39 (3d Cir.1987), we focused on "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." This approach is entirely consistent with *H.J. Inc. See Marshall-Silver Constr. Co. v. Mendel,* 894 F.2d 593, 596 (3d

> Cir.1990). After *H.J. Inc.,* however, "we must
> focus on these factors as they bear upon the
> separate questions of continuity and
> relatedness." *Banks,* 918 F.2d at 423.

*Kehr Packages,* 926 F.2d at 1412-13.  What does the Complaint
allege as to continuity?

The Complaint alleges both open-ended and closed-ended
continuity.  Plaintiffs see a threat of future racketeering
activity in Defendants' failure to have abated their fraud.
Complaint ¶ 179.  They continue, it is further alleged, to divert
and conceal assets, conceal collateral in which the lender has a
security interest, and to destroy information relating to the
Bagga-controlled businesses.  *Id*.  Defendants disagree arguing
that what is pleaded here is a single, discrete scheme to obtain
a loan which it would never repay.  There is no allegation of
further fraud.  Plaintiff's response is that the scheme must ever
beget more instances of fraud to survive.  As Plaintiffs put it,
from the initial misrepresentation about the loans to the hiding
of assets, "each of these predicate acts signals that another is
to come."  Plaintiffs' Brief, 26.

The Court does not find that the Complaint supports that
conclusion.  Taking all the factual allegations as true, it does
not necessarily follow that there is more fraud to come.  In
fact, the last alleged instance of racketeering is what happened
in the Welcome Group bankruptcy.  That case was filed in April
2004.  Since then, the parties have been in litigation and no

19

further racketeering is alleged.  The Court, then, does not read the Complaint to set forth the possibility of continued—i.e., "open-ended"—criminal activity.

That does not mean, however, that what is alleged does not otherwise constitute continuity.  While there is no indication of *ongoing* fraud, what is alleged to have occurred transpired over a considerable time period.  This matters because the Supreme Court has interpreted continuity in this context as fundamentally a temporal concept.  *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902.  Continuity does not necessarily connote perpetuity; the two dimensions are not to be confused.  This, then, is what the Supreme Court meant by "closed-end" continuity.  *Id.; see also Hines v. Castle*, 937 F.2d 868, 873 (3d Cir. 1991) ("[D]uration is the sine qua non of continuity.") What is alleged is not a case of an episodic fraud or racketeering activity.  Rather, the Complaint asserts a fraud which begot other frauds and racketeering activities in various, albeit related, contexts *spanning over three years*.  The initial loan was procured by fraudulent representations.  When that loan defaulted, the borrowers gave false reasons why they could not pay.  This was done to buy time to render themselves judgment proof and to hide the collateral.  Even the guarantor who would file bankruptcy was saddled with bogus liens and had paid insiders without disclosing that fact in the bankruptcy proceeding.  Meanwhile, the

20

individual defendants enriched themselves with the money
supposedly borrowed on behalf of their businesses.  So while this
conduct may have ceased, it lasted sufficiently long to
constitute a "closed-end" pattern of continuous racketeering.

In sum, the Plaintiffs plead a RICO count sufficiently
within the strictures of Rule 9's specificity requirement.  The
Complaint described the date and place of the initial alleged
frauds in obtaining the loans.[7]  *See* Complaint ¶ 41.  It also
cites the month and year in which the Defendants allegedly
misrepresented the reason the loan had defaulted, when they
colluded to try to settle the loan at a tremendous discount, when
the lender learned that its collateral had been moved.  *Id*. ¶ 71,
112-113, 126.[8]  Finally, the timing of the filing of misleading
bankruptcy disclosures and claims is apparent enough from a
review of the applicable dockets.  *Id*. ¶ 137-140.  All of this is
sufficiently set forth within the framework of RICO.


*Count II - Conspiracy*
*to Violate RICO*

The second count alleges that the Defendants engaged in a
conspiracy to violate the RICO statute.  Defendants offer three

---

[7]Given that these representations were made via fax, the precise
time of the misrepresentation should be easily determined.

[8]Presumably, this is based on Chawla's April 2, 2001 letter to
Mr. Bagga offering the allegedly false explanation that the loan
proceeds were lost in the bad business deal.  *Id*. ¶80.

reasons as to why this count is insufficient: first, it fails to
allege either an "enterprise" or "pattern of racketeering
activity"; second, it fails to allege the conspiracy itself; and
third, it does not set forth the requisite mental state. *See*
Defendants' Brief, 25-26; Defendants' Reply Brief, 11-12.  The
first of these contentions is quickly dispatched: this Court
found that the Complaint pleaded both the existence of an
"enterprise" and a "racketeering activity."  It is the second and
third arguments which require more analysis.

*Pleading a*
*RICO Conspiracy*

     Section 1962(d) of RICO makes it unlawful to conspire to
violate [section 1962(a), (b), or (c)].  *Liability* under section
1962(d) liability is governed by the general principles of
conspiracy law.  *See Smith v. Berg*, 247 F.3d 532, 537 (3d Cir.
2001)  This informs, of course, any discussion of what must
*pleaded* to allege a RICO conspiracy claim.  In that regard, the
Third Circuit has explained that:

> [I]n order to state a claim under RICO
> subsection [1692](d), a plaintiff must allege
> (1) agreement to commit the predicate acts of
> fraud, and (2) knowledge that those acts were
> part of a pattern of racketeering activity
> conducted in such a way as to violate section
> 1962(a), (b), or (c).  *Odesser v. Continental
> Bank,* 676 F.Supp. 1305, 1312 (E.D.Pa.1987).
> "[A]llegations of conspiracy are not measured
> under the ... [Fed.R.Civ.P.] 9(b) standard,
> which requires greater particularity of
> allegation of fraud, but are measured under
> the more liberal ... [Fed.R.Civ.P. 8(a) ]

pleading standard." 676 F.Supp. at 1313. A
conspiracy claim must also contain supportive
factual allegations. *Black & Yates, Inc. v.
Mahogany Ass'n, Inc.,* 129 F.2d 227, 231-32
(3d Cir.), *cert. denied,* 317 U.S. 672, 63
S.Ct. 76, 87 L.Ed. 539 (1942). The
allegations must be sufficient to "describe
the general composition of the conspiracy,
some or all of its broad objectives, and the
defendant's general role in that conspiracy."

*Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989). Have the

Plaintiffs alleged a conspiracy?

Defendants argue that the conspiracy count consists of

nothing more than conclusory allegations. Defendants' Brief, 27.

No facts are alleged which indicate a conspiracy. *Id.* There is

no explanation of "how or when Defendants conspired among

themselves or with the other Defendants." *Id.* That argument,

however, is premised upon a narrow reading of the conspiracy

count. While the count consists of six paragraphs five of which,

standing alone, plead in conclusory terms, it begins by

incorporating all other pertinent factual allegations in the

complaint. *See* Complaint ¶ 181. Such practice is not only

permitted, but is encouraged. *See* F.R.C.P. 10(c)(made applicable

by B.R. 7010); Wright & Miller, *Federal Practice & Procedure:*

*Civil 3d* § 1326 (2007) (noting that practice of incorporation

encourages pleadings that are short, concise and free of

unwarranted repetition and promotes convenience). It is

appropriate, then, for the Plaintiff to reference allegations

beyond those expressly pleaded in Count II in asserting the

23

conspiracy claim.  Accordingly, the Court will judge the
sufficiency of this count by all of the pertinent allegations in
the Complaint.

*The Existence of*
*an Agreement*

The Court begins its analysis with a determination of
whether it is alleged that an agreement existed between and among
the Defendants to commit the predicate acts.  Within Count II it
is alleged that Mr. and Mrs. Bagga and Ravinder Chawla[9] *agreed* to
conduct the affairs of the Bagga Chawla Enterprise through a
pattern of racketeering activity.  Complaint ¶ 182.  It is next
alleged that "each of the *corporate* Defendants also *agreed* with
one or more of the Baggas and Chawlas to violate section
1962(c)…"  *Id.*  ¶183.  Other than those general allegations, the
Complaint adds that all of the Defendants were "involved in
*common businesses*," "*worked together* to defraud creditors," and
"*cooperated* in a scheme to divert" assets away from creditors.
*Id.* ¶ 5 (emphasis added).  The Baggas and Chawlas made *joint*
*decisions* regarding at least 18 instances of racketeering
conduct.  *Id.* ¶ 34(a)-(s) (emphasis added).  Each corporate or
non-individual Defendant is alleged to have *agreed* with one or
more of the Baggas or Chawlas to participate in and to facilitate
the commission of those acts.  *Id.* ¶ 31 (emphasis added).  Does

---

[9]Curiously, Hardeep Chawla is not mentioned in this paragraph
notwithstanding that the count is direct at *all* defendants.

24

all of this state a RICO conspiracy against all of the

Defendants?

While the Complaint does not allege that on a certain date,

one or more of the Defendants met at a certain place and agreed

on certain specific things, it contains other allegations which

allow the inference of a conspiracy.  Some of these examples are

more apparent than others: Mr. Bagga is alleged to have attempted

to collude with Messrs. Chawla and their company Sant Properties

to defraud the lender by arranging a sham sale.  *Id*. ¶ 112, 113.

Collusion, by its nature, requires a joint design.  More in the

way of context is required when considering whether World Apparel

is alleged to have conspired.   That entity, another of the

Chawlas' businesses, is charged with having furnished false

equipment price lists to the lender who would use that

information to decide to loan money to the Bagga Companies.  *Id*.

¶ 47.  Once those misrepresentation were made, Captec attempted

to undertake due diligence but the financial information it

received was similarly deceptive: it grossly understated the

Borrowers' liabilities.  *Id*. ¶ 49.  After Captec made the loan,

Mr. Bagga deposited some of the proceeds with Brand Trade

(another entity he owns[10]).   *Id*. ¶ 46  The same can be said of

the disclosures (or lack thereof) made by those in control of the

Welcome Group when it filed bankruptcy.  It is alleged that

---

[10]Identified simply as a clothing company.  *Id*. ¶ 17(d).

25

insider payments to Defendant K & P (controlled by Mrs. Bagga) and 21st Century (controlled by Mr. Bagga) were not disclosed. *Id*. ¶¶ 135-142.  Such omissions do not occur by accident.  It is also alleged that Sant Properties filed a fraudulent claim in the Welcome bankruptcy.  *Id*. ¶ 140.  All of this indicates concerted effort by these Defendants[11] named above to defraud the lender and thwart any hope of collection.

*The Required*
*Mental State*

While a RICO violator must have agreed with his co-conspirator, he must also have known at the time of the conspiracy that what they had agreed to do would further their enterprise.  *See Rose, supra*, 871 F.2d at 367 (noting that conspirator must have knowingly furthered the enterprise's affairs).  This second element—*mens rea*— is what the Defendants maintain is lacking.  *See* Reply Brief, 25.  Does the Complaint allege that the Defendants[12] knew that they would further the enterprise when they agreed on their conduct?

---

[11]As to HB, LLP and HB, Inc., its general partner, the Complaint does not implicate them in the defrauding of Captec or the alleged machinations which followed.

[12]Although the corporate Defendants are fictitious entities and therefore, possess no independent knowledge, they are charged with what their fiduciaries know.  *See* 15 P.S. § 512 (stating that the individual officers are fiduciaries of the corporations they control); *See Romy v. Burke*, 2005 WL 280861 *2 (Pa.Com.Pl) (fiduciaries are agents of their corporation); *Kinney v. Sun Oil Co.*, 437 Pa. 80, 90, 262 A.2d 128, 133 (Pa.1970) (explaining that knowledge of a corporate agent may be imputed to the corporation).

26

Again, the specific allegations within the count are conclusory: the "defendants knowingly took steps in furtherance of the conspiracy" and "knowingly undertook the commission of acts that did or would…constitute a pattern of racketeering activity." Complaint, ¶¶ 184,185. It is the incorporated allegations which precede this count which shed light on what the Defendants knew. It is alleged that to obtain the purchase money loans, Bagga Enterprises obtained from one of Chawla's businesses an invoice for the equipment which he would buy with the loan proceeds. *Id*. ¶ 41. The Complaint explains that the prices on that invoice were inflated and that the Baggas and Chawlas knew that the lender would make the loan based on those false representations. *Id*. ¶¶ 41,47. Similarly, it is alleged that the Defendants knew that the letter explanation which Ravinder Chawla gave Mr. Bagga to explain to the lender why the loan could not be repaid was "knowingly false:" the accounting records reflect that the money was not lost, but diverted. *Id*. ¶¶ 77, 78, 80, 82, 86. Finally, while there is no express allegation that the collusive sale proposal of certain of the Bagga restaurants in satisfaction of the lender's claim was equally done with the intent of furthering the enterprise, it may be fairly inferred from what is there. Plaintiff's allege not only that the proposed buyer offered but one half of the restaurant's appraised value but that it was not disclosed to the lender that

27

the buyer would be a corporation in which the Chawlas held an interest. *Id*. ¶¶ 112, 113. As alleged, then, this was no arms length transaction. More to the point, such a misrepresentation is not made without a purpose. In other words, one may infer from these allegations that the Defendants "knew" that they would be furthering their enterprise if they could satisfy the lender's claim under the proposed terms. Each of these examples from the Complaint alleges the requisite mental state for a RICO conspiracy.

In sum, the Court finds the conspiracy count to be sufficiently pleaded. It sets forth both agreement and intention to further the enterprise. More generally, it describes the composition of the conspiracy (the Baggas, the Chawlas and the businesses they control), explains its objective (to obtain non-recourse commercial loans which they would never repay), and relates the respective roles of the Defendants (Mr. Bagga as the primary actor; Messrs. Chawla as his aiders and abettors). Contrary to what Defendants maintain, a RICO conspiracy is properly alleged.

*Standing and
the RICO Claims*

Defendants also argue that the RICO counts are not ripe. They maintain that the Defendants have not alleged the requisite injury. Defendants' Brief, 28. In other words, they allege that the Plaintiffs lack standing. In general, "[s]tanding consists

28

of both a 'case or controversy' requirement stemming from Article III, Section 2 of the Constitution, and a subconstitutional 'prudential' element." *See The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir.2000). RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court …" 18 U.S.C. § 1964(c). The Complaint alleges injury in the form of discrete monetary loss: it has sustained injury to its business and property as a result of the various racketeering activities committed by the Defendants in connection with the loans. Complaint, ¶ 180. As of January 2006, it is alleged, FL is owed upwards of $5 million as a result of Defendants' conduct. Is that sufficient to meet the requirement under RICO that the plaintiff sustain an injury?

The Defendants explain that this very issue was disposed of in the District Court's Opinion of March 8, 2005. *See FL Receivables Trust v. Bagga, et al.*, 2005 WL 563535 (E.D.Pa.). There, the District Court was confronted with a similar challenge to RICO and conspiracy to commit RICO counts. The Defendants had moved to dismiss those two counts for lack of standing. *Id*. *3 They explained that the Plaintiff's had a pending collection action against these same defendant which would determine the amount of any injury it had suffered. *Id* Until that other action was resolved, the Plaintiff's injury would remain

"speculative and contingent on future events." *Id*

The District Court agreed.  It observed that while their existed no binding authority on point, other circuits have held that a creditor's RICO claim is not ripe until it concludes any contract-based collection action.  *Id*. *4  Within this circuit, the District Court noted, the Third Circuit has "left no doubt that an injury that is speculative or contingent on future events does not confer RICO standing."  *Id*. *citing Maio v. Aetna, Inc.*, 221 F.3d 472, 495 (3d Cir. 2000)

In their Brief, the Plaintiffs mention the crucial fact neglected by the Defendants: the subsequent bankruptcy filings: that the Welcome Group had filed bankruptcy in 2003 under Chapter 7 with no assets for creditors.  Plaintiffs' Brief, 34.  In December 2004, Bagga Enterprises, Jamuna Real Estate, and United Management filed under Chapter 7.  Those cases are, of course, pending before this Court; however, the Summaries of Schedules would not indicate any realistic hope of recovery for creditors. *See* Bankruptcy Schedules, 04-37130, 37132 and 37136.  It would appear then that the Plaintiffs can demonstrate the "concrete loss" required of a RICO plaintiff.  *See Isaak v. Trumbull S&L*, 169 F.3d 390, 396 (6th Cir. 1999) (finding that plaintiff's RICO injury was ascertainable and definable by the time bankruptcy was filed); *cf. Barnett v. Stern*, 909 F.2d 973, 977 n.4 (7th Cir. 1990) (explaining that RICO plaintiff had failed to prove damages

30

because they did not show inability to satisfy their claims from

the bankruptcy estate)  Efforts at prepetition collection having

yielded nothing, the Plaintiffs have pleaded the requisite injury

for RICO standing purposes.

*Equity and the Trustee's*
*Right to Raise RICO*

     The Defendants' final challenge to the RICO claims are

directed to the *Trustee* Plaintiffs.  They argue that because the

alleged wrongful conduct of the Debtor Defendants must be imputed

to them, the Trustees are precluded from raising such claims.

Defendants' Reply Brief, 12-13.  This refers, of course, to the

doctrine of *in pari delicto* which

> derives from the Latin, in pari delicto
> potior est conditio defendentis: "In a case
> of equal or mutual fault ... the position of
> the [defending] party ... is the better one."
> The defense is grounded on two premises:
> first, that courts should not lend their good
> offices to mediating disputes among
> wrongdoers; and second, that denying judicial
> relief to an admitted wrongdoer is an
> effective means of deterring illegality.

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306

(1985).  As applied by the High Court, the doctrine requires: (1)

that the plaintiff bear "substantially equal responsibility" for

the alleged misdeeds, and (2) that precluding the plaintiff's

suit would not significantly impair enforcement of the relevant

laws.  *Id.* at 310-11.

     There is no Third Circuit decision regarding whether this

defense is applicable to RICO claims.  Within the circuit, the
sole decision coming closest to the question avoided the question
on factual grounds.  *See Cohen v. Wolgin*, 1988 WL 65970 *7
(E.D.Pa.).  Elsewhere, it is only the Eleventh Circuit which has
weighed in on this issue finding that a bankruptcy trustee's RICO
claims were barred under the *in pari delicto* doctrine.  *See
Laddin v. Edwards (In re ETS Payphones, Inc.)*, 437 F.3d 1145,
1156 (11th Cir. 2006) Because that decision offers useful
guidance to the present case, it will be analyzed here at some
length.

The Debtor, ETS, had operated a Ponzi scheme.  Funds
received from investors in the scheme were allegedly funneled
into individual retirement accounts managed by three financial
institutions (the IRA Custodians).  The Trustee sued the IRA
Custodians under RICO (as well as state law) alleging "a failure
to conduct due diligence and/or by ignoring the facts
altogether." *Id*. at 1148  The IRA Custodians moved to dismiss the
RICO count based on the doctrine of in pari delicto.  *Id*. at
1148-49.

The Eleventh Circuit began by noting that "the federal law
of affirmative defenses governs the enforcement of causes of
action created by federal statutes." 437 F.3d at 1152 *citing
O'Melveny & Myers v. FDIC*, 512 U.S. 79, 84-85, 114 S.Ct. 2048,
2053, 129 L.Ed.2d 67 (1994).  Because no circuit decision had

previously ruled on the question, the Eleventh Circuit turned to
analogous decisions.  It analyzed two Supreme Court cases in
which the High Court considered the application of the in pari
delicto doctrine in the enforcement of antitrust and securities
laws.  *Id.* at 1153 *analyzing Bateman Eichler, supra* and *Perma
Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 88 S.Ct.
1981 (1968) *overruled on other grounds Copperweld Corp. v.
Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 273 (1984).  In
both cases, the Supreme Court did not bar the plaintiffs' claim
finding that each was a passive—as opposed to active—violator of
the federal statute in question.  In *Perma Life*, the plaintiffs
were franchisees who alleged that the parent franchisor had
conspired to restrain trade and fix prices.  The franchisor
argued that the franchisees were equally culpable by entering
into the franchise agreement.  In refusing to impute the wrongful
conduct, the Court explained that the franchisees participated in
the conspiracy only to the extent that they sought the
franchises.  Their participation "was not voluntary in any
meaningful sense." *Id*. at 139, 88 S.Ct. at 1985.  Similarly, in
*Batemen Eichler*, the plaintiffs were recipient of stock tips that
resulted in losses.  When the tippees sued, the defendant argued
that the tippees were culpable having received and acted upon
inside information.  Here, again, the High Court found the
plaintiffs to be "passive" violators at worst and refused to

33

apply the doctrine.  It explained that "in its classic formulation, the *in pari delicto* defense was narrowly limited to situations where the plaintiff bore at least substantially equal responsibility for his injury.  *Id.* at 306-07.

The Eleventh Circuit observed that crucial to the Supreme Court in both cases were the important distinctions between the relative culpability of the parties.  437 F.3d at 1154.  The Circuit Court noted that a RICO violation requires active conduct or participation in the conduct.  *Id.* at 1155.  That conduct or participation must be both "affirmative and deliberate."  *Id.* at 1156.  Moreover, that conduct or participation must involve a "a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Those "activities" are specifically listed in the statute and involve serious offenses.  *See id.*, § 1961(1).  In weighing the involvement of the parties in that case, it not only found that the IRA Custodians were not actively involved in the fraud, but even assuming the custodians bore some fault, the Debtor was *in majore delicto*, or greater wrong, as between the two.  437 F.3d 1155.  From that it concluded that the debtor "had substantially equal responsibility for its injury."  *Id. citing Bateman Eichler*, 472 U.S. at 308-09, 105 S.Ct. at 2628.

That, however, would not end the Eleventh Circuit's analysis.  It next inquired—consistent with *Bateman Eicher*—whether imputing the wrongdoing to the Trustee *qua*

34

plaintiff "advance[d] the policy of civil liability under the
federal RICO statute." *Id*. That policy, the circuit court
noted, was to punish "any person" who violated RICO. *Id*. The
statute's purpose, it recalled, was to "help eradicate organized
crime from the social fabric by divesting an association of the
fruits of ill-gotten gains." *Id*. at 1155 *quoting Genty v. RTC
Corp*, 937 F.2d 899, 910 (3d Cir.1991). To allow the trustee to
press the RICO claim, the Eleventh Circuit concluded, would not
achieve that purpose. All that would occur in that case would be
a transfer of those assets among similarly culpable creditors.
*Id.* at 1155. Having found that both requirements for the
application of the *in pari delicto* doctrine had been met, the
Court precluded the Trustee's RICO claim. *Id.* at 1156 Should
the RICO claims in this case be similarly dismissed?

In making that determination, the Court begins with a brief
analysis of an issue not directly addressed by the Eleventh
Circuit in *Laddin*: may a trustee as successor to a debtor
prosecute prepetition choses of action free of defenses such as
in pari delicto? To answer that question, the Court must
analyze the pertinent legal framework. The trustee is, of
course, the "representative of the estate." 11 U.S.C. § 323(a).
In that capacity, the "trustee . . . may prosecute . . . or
commence and prosecute any action or proceeding in behalf of the
estate before any tribunal." B.R. 6009. A leading commentator

explains:

> A trustee is empowered to commence actions on
> behalf of the estate.  Such actions will fall
> into two categories: (1) those brought by the
> trustee as successor to the debtor's interest
> included in the estate under section 541 or
> those assigned to the trustee against third
> parties for the benefit of the estate; and
> (2) those brought under one or more of the
> trustee's avoiding powers.

3 *Collier on Bankruptcy* ¶ 323.03[2] (emphasis added).  As the

Third Circuit has explained, "in actions brought by the trustee

as successor to the debtor's interest under section 541, the

'trustee stands in the shoes of the debtor and can only assert

those causes of action possessed by the debtor. [Conversely,]

[t]he trustee is, of course, subject to the same defenses as

could have been asserted by the defendant had the action been

instituted by the debtor.' " *Hays & Co. v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir.1989) (quoting

*Collier on Bankruptcy* ¶ 323.02[4], now found at ¶ 323.03[2]).

These defenses affect the trustee's right to bring the claim just

as they did the debtor's as they existed at the commencement of

the bankruptcy.  *See Official Committee of Unsecured Creditors v.*

*R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 356 (3d cir. 2001)

citing legislative history.  The RICO claims are not brought

under an avoidance provision.  Instead, they derive from the

trustee's succession to a debtor's property and other rights.

The Trustees' right to bring the RICO claims, then, is only as

good as the Debtors.'

The Court turns then to the Defendants' contention that any wrongdoing on their part is shared by the Debtors, and thereby, the Trustees.  If the Court weighs the relative degrees of culpability of Debtors and the Defendants, it is the Defendants who are responsible for the RICO violations.  There is no doubt that the loans from Captec were taken in the name of Bagga Enterprises and Jamuna Real Estate and that United Management as well as the Welcome Group guaranteed those obligations.  But again, those corporations are fictitious entities under the control of Mr. Bagga: he is the sole shareholder of each and is, upon information and belief, an officer or director of each as well.  Complaint, ¶¶ 11-13, 19, Moreover, all of the subsequent alleged racketeering acts in the Complaint were done at his direction.  The claim that the Debtor, and thereby the Trustees, were *active* participants in the RICO violations is not supported by what is alleged.

Neither would it serve the policy of the RICO statute to impute the Defendants' alleged wrongdoing to the Trustees. Allowing the Trustees to press the RICO claims poses no threat of shifting ill-gotten assets from one conspirator to another.  A review of the Bankruptcy Schedules for each of the Debtor corporations demonstrates this.  Neither debtor owes any secured debt.  The combined priority claims consist of about $240,000 in

37

tax debt.  That leaves general unsecured debt.  Eighty-five
percent of the unsecured debt of Bagga Enterprises is owed to FL
Receivables, the co-plaintiff.  *See* Schedule F, Case no. 04-
37136.  In the case of United Management, FL holds 98% of such
claims.  *Id.* Case no. 04-37132.  For Jamuna, FL and its
predecessor Captec, are the sole creditors listed.  *Id.* Case no.
04-37130.  Moreover, to the extent any persons who are complicit
in the wrongdoing have filed claims, the Trustees have the right
to seek their disallowance.   Based on what is alleged in the
Complaint, there are no grounds to impute any of the alleged
wrongdoing to the Plaintiffs.

*Counts III, X and XV -*
*Piercing the Corporate Veil*

The Complaint pleads three alter ego counts.  Count III is
brought against Mr. and Mrs. Bagga.  It asks the Court to
disregard the corporate status of the Debtors and to hold the
Baggas liable for the corporations' debts.  Count X is brought
against both the Baggas and the Chawlas seeking to hold them
liable for the debts of the businesses which they control.  Count
XV is directed against all Defendants and seeks a declaration
that the corporate structures be disregarded so it is no
different from Count X.[13]  The Defendants challenge all three

---

[13]Plaintiffs have even admitted as much on a prior occasion.  *See*
Plaintiff's Brief Concerning Characterization of Core Versus Non-Core
Claims, at 10.  At that time, they also characterized the count as
more in the nature of a remedy than a cause of action.  *Id.*

counts on three grounds.  They first argue that neither count
states a claim for alter ego liability as to Mrs. Bagga or
Messrs. Chawla.  Defendants' Brief, 29-30.  Neither count sets
forth the essential element of control as to any of the three
persons.[14]  *Id*. 33.  As a second argument, they dispute the
Trustees' standing to bring this sort of claim.  *Id*. 39.  For
their part, the Plaintiffs argue obliquely that Mrs. Bagga's
participation in her husband's scheme renders her liable as an
alter ego under principles of civil conspiracy.  Plaintiffs'
Brief, 38, 46.  The Defendants' final argument is limited to the
request to pierce the corporate veils of K & P, Sant Properties,
HB, and HB, Inc.  The Defendants' argue that the Complaint simply
does not implicate any of those entities so their corporate
structures ought not to be disregarded.  Defendants' Brief, 56

     The Court begins with the pleading requirements for an alter
ego claim.  The various factors which would support such a
finding include (1) insufficient capitalization; (2)
intermingling of funds; (3) non-functioning officers and
directors; (4) absence of corporate formalities; (5) failure to
pay dividends; (6) outward representation of sole proprietorship
as opposed to incorporation.  *See Village at Camelback Property*

---

[14]As to Count XV, this argument is refined somewhat: it is
maintained that because there are no allegation implicating either
Sant Properties, K & P, HB, Inc., or HB, the corporate structures of
those entities should not be disregarded.  Defendants' Brief, 56.

*Owners Assn, Inc. v. Carr*, 371 Pa.Super. 452, 465, 538 A.2d 528,
535 (Pa.Super.1988).  In essence, what these factors boil down to
is the exercise of control by the individuals over the corporate
entity.  *Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 43 669
A.2d 893, 895 (Pa.1995).  Moreover, this domination must be
complete and must have been exercised for the individual's
personal benefit.  *Ashley v. Ashley*, 482 Pa. 228, 237, 393 A.2d
637, 641 (1978).

Aside from the substance of the pleadings, the Court must
ascertain the degree of specificity required.  Under Pennsylvania
law, claims to pierce the corporate veil are evaluated applying
the notice pleading standard of Rule 8(a), unless fraud is a
necessary element of the claim.  *Motorola, Inc., v. Airdesk,
Inc.*, 2005 WL 894807 *2 (E.D.Pa.) *citing Laborers v. Ruscitto*,
848 F.Supp. 598, 600 (W.D.Pa.1994).  This general rule is
consistent with the principle that Rule 9(b) should be "construed
narrowly and not extended to other legal theories or defenses."
Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1297
(1990).  Although fraud is alleged in the count (*see* ¶¶ 194, 196,
202), the claim does not depend on an allegation of fraud.  The
viability of these counts will be judged against the general,
notice pleading standard.

*The Role of
Mrs. Bagga*

Defendants first argue that the Complaint fails to allege

40

that Khushvinder Bagga is the alter ego of the Debtors.
Defendants' Brief, 33.  Such a finding, they argue, would be
based on control, which is demonstrated only as to Mr. Bagga.[15]
*Id.*  The Plaintiffs respond by arguing that Mrs. Bagga is part of
a conspiracy with her husband.  That makes her liable along with
him for the debts of the businesses he controlled.  Plaintiffs'
Brief 38.  What is the extent of her alleged involvement in her
husband's business ventures?

According to the Complaint, it is significant.  While Mrs.
Bagga is neither a shareholder nor officer of the Debtor
corporations, she controlled the movement of liquid assets
between the various businesses.  She was a signatory on the
accounts of the Debtor corporations having "controlled
withdrawals and disbursements."  Complaint, ¶ 101.  In
particular, it appears to have been in the United Management
account into which moneys of the various entities were
commingled.  *Id.* ¶ 102.  From that account, she and Mr. Bagga
decided whom to pay and when to pay them.  *Id.* ¶ 103.  Among
those persons paid, the Complaint goes on to allege, was herself
in derogation of corporation formalities.  *Id.* ¶ 104.  This is
alleged to include payment of upwards of $800,000 to herself and
to her and Mr. Bagga of nearly $1.5 million.  *Id.* ¶¶ 93, 95.  Her

---

[15]Defendants do not assert as to this count or counts X or XV that
an alter ego claim is *not* pleaded as to *Mr.* Bagga.

explanation for some of those payments—to repay what she contends
were loans she made to the businesses—is not supported by
documentation.  *Id.* ¶¶ 105, 106, 109.  As to United, at least,
Mrs. Bagga is alleged to have exercised sufficient degree of
control to make out an alter ego claim.  At the pleadings stage,
then, the Complaint states a claim for piercing the corporate
veil of United and making Mrs. Bagga liable for its debts.

She is also alleged to be the owner of K & P Real Estate
LLC.  *Id.* ¶22.  K & P  was the landlord to the Welcome Group's
restaurants.  *Id.* ¶ 17(a).  Mrs. Bagga is alleged to have taken
the profits of K & P—the rental payments from the Welcome
Group—for herself.  ¶ 93(g).  These insider payments were never
declared as such when Welcome filed bankruptcy.  ¶ 139.  While
there is no mention of the garden-variety alter ego elements,
e.g., non-functioning fiduciaries, intermingling of funds,
failure to follow formalities, etc., the allegation that Mrs.
Bagga took the rental payments from Welcome for herself indicate
some degree of control.  For pleading purposes, the Court finds
that the Plaintiffs have stated as to K & P a cause of action
that its corporate structure should be disregarded.

As to the claim that Mrs. Bagga's conduct makes her a
conspirator with her husband, the Court observes that the Count
does not mention the word conspiracy or plead any of the prima
facie elements of civil conspiracy.  Although derivative, a civil

42

conspiracy claim is an independent cause of action.  In
Pennsylvania, to state a cause of action for civil conspiracy,
the following elements are required: (1) a combination of two or
more persons acting with a common purpose to do an unlawful act
or to do a lawful act by unlawful means or for an unlawful
purpose; (2) an overt act done in pursuance of the common
purpose; and (3) actual legal damage." *General Refractories v.
Firemen Fund Insurance*, 337 F.3d 297, 313 (3d Cir. 2003); *accord
Gilmour v. Boemuller*, 2005 WL 241181 *8 (E.D.Pa.); *McKeeman v.
Corestates Bank, N.A.,* 751 A.2d 655, 660 (Pa.Super.Ct.2000)
(citations omitted).  To construe the allegations of Count III to
also state a conspiracy claim against Mrs. Bagga would be unfair.
As it is drafted, this count informs Mrs. Bagga of an alter ego
claim, but it does not state a civil conspiracy claim against
her.

*The Role of
the Chawlas*

Count X (as well as Count XV) adds as liable Ravinder
Chawla and his brother Hardeep Chawla as alter egos of the
entities they control.  Those entities are World Apparel d/b/a
SJM Trading d/b/a Ten Tigers, Sant Properties, HB, LLP, and HB,
Inc.  The Defendants maintain that the Complaint does not allege
a basis to disregard the corporate structure of either Sant

43

Properties, HB, LLP or HB, Inc.  Defendants' Brief, 56.[16]

There is a paucity of detail which dooms the Plaintiffs
alter ego claims as to the Chawlas and the companies they own or
control.  The Complaint identifies these entities as being owned
by the Chawlas.  Complaint, ¶¶ 23-27.  However, there is simply
no allegation that either Ravinder or Hardeep somehow took
advantage of their own corporations or those controlled by the
Baggas and harmed the Plaintiffs thereby.  In the case of their
own—World Apparel, Sant and HB—there is also no evidence of
undercapitalization or other compromised financial state.[17]  As
to respect for corporate formalities, there is mention of some
undocumented lending but that is all.  There is not enough
explanation as to how these entities were no more than artifices
for the Chawla's designs.  Even less is demonstrated for the
Debtor corporations.  Ravinder Chawla may have provided Mr. Bagga
with a letter containing a false explanation as to why the loan
proceeds could not be repaid but that does not connote control or
domination.  If anything, it was part of a fraud.  There is,
then, no legal basis here to sustain the alter ego claims against

---

[16]Defendant World Apparel is not mentioned in this regard.

[17]While the Complaint alleges that Ravinder Chawla told Pratpal
Bagga that World Apparel would be unable to repay the money which
American Merchandise had given it, that is only a representation.
Complaint ¶ 80.  The Complaint states elsewhere that such
representation was false as that money was merely diverted and not
lost in a bad investment.  *Id*. ¶ 82.

either of the Chawlas.[18]

*Alter Ego Claims and*
*the Trustee's Standing*

The Defendants' last challenge to the alter ego claims is directed to the Trustees. They maintain that the Trustees lack standing to press those causes of action. Veil-piercing claims, they argue, are vested within the creditor injured by the corporate abuse. Defendants' Brief, 39-40. Such claims, they explain, are based on the trustee's avoidance power under § 544 of the Bankruptcy Code. Because that section allows a trustee to avoid only transfers of an interest of the debtor—as opposed to creditors—a trustee does not succeed to an alter ego claim. Alternatively, they argue that even those courts which have allowed a trustee to sue to pierce a corporate veil are based on applicable state law. For their part, the Trustee-Plaintiffs are silent on this point.

In reviewing the Defendants' first argument, the Court sees that it is based on an incorrect premise. Nothing in Counts III, X or XV indicates that the alter ego claims are raised in accordance with § 544. More likely, then, is that such claims are brought under § 541. They are claims of the Debtors to which the Trustees claim to have succeeded. Whatever the statutory

---

[18]And here again, the claim of civil conspiracy against Messrs. Chawla fails for insufficiency. There is simply no allegation in the count which put them on notice that they are charged with conspiracy to abuse the corporate form.

predicate, the Third Circuit has not yet spoken on the issue.
Elsewhere, the majority of the decisions have allowed a trustee
to bring an alter ego claim, but the result is a function of the
underlying state law.  *Compare St. Paul Fire & Marine Ins. Co.,
v. Pepsi Co.*, 884 F.2d 688, 705 (2d Cir. 1989) (holding that
trustee has standing to raise alter ego claims under Ohio law);
*Steyr v. Pappas*, 852 F.2d 132, 135 (4th Cir.1988) (allowing
trustee to assert alter ego claims under Virginia law); *Koch v.
Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1346 (7th
Cir. 1987) (permitting trustee to bring alter ego claim under
either Indiana or Illinois law) with *Mixon v. Anderson (Ozark
Mountain Restaurant Equip. Co., Inc.)*, 816 F.2d 1222, 1228 (8th
Cir. 1987) (holding that under Arkansas law, trustee may not
raise alter ego claims).  Within this Circuit, one District Court
has ruled similarly.  *See In re Eagle Enterprises, Inc.*, 265 B.R.
671, 678 (E.D.Pa.2001) (holding that New York law allowed Trustee
to pursue alter ego claim.)  That brings the Court to the
Defendants' second argument: Would Pennsylvania law allow a
trustee qua successor to a corporation to bring an alter ego
claim to pierce its own corporate shell?

The general standard for piercing the corporate veil is
"when the court must prevent fraud, illegality, or injustice, or
when recognition of the corporate entity would defeat public
policy or shield someone from liability for a crime." *Zubik v.*

46

*Zubik,* 384 F.2d 267, 272 (3d Cir.1967), *cert. denied,* 390 U.S.

988 (1968). *See also, Kiehl v. Action Mfg. Co.,* 517 Pa. 183, 190,

535 A.2d 571, 574 (1987)(adhering to the same standard for

piercing the corporate veil); *Village At Camelback*, 371 Pa.Super.

at 461, 538 A.2d at 532-33 (relating the same standard as it

applies to shareholders of the corporation).  That standard does

not apply, the Defendants maintain, when it is the corporation

itself which seeks to pierce its own veil.  Defendants' Brief,

40-41.  Are the Defendants correct?

They are not.  As the Third Circuit has acknowledged, albeit

in *dicta:*

> It may seem strange to allow a corporation to
> pierce its own veil, since it cannot claim to
> be either a creditor that was deceived or
> defrauded by the corporate fiction, or an
> involuntary tort creditor. In some states,
> however, piercing the corporate veil and
> alter ego actions are allowed to prevent
> unjust or inequitable results; they are not
> based solely on a policy of protecting
> creditors. [citations omitted]  Because
> piercing the corporate veil or alter ego
> causes of action are based upon preventing
> inequity or unfairness, it is not
> incompatible with the purposes of the
> doctrines to allow a debtor corporation to
> pursue a claim based upon such a theory

*Phar-Mor, Inc. v. Coopers & Lybrand (In re Phar-Mor, Inc.)*, 22

F.3d 1228, 1240 n.20 (3d Cir.1994).  This very rationale reflects

the case law cited by Defendants to be inapposite.  Defendants

47

cite *Rabinovici v. Solomont*[19] for the broad proposition that a
plaintiff may not pierce his own corporate veil.  Defendants'
Brief, 40.   There, however, the plaintiff sought to have the
court disregard the separate existence of a corporation formed by
him.   There was no risk of unfairness to an innocent third party
creditor.   Likewise, in *Sams v. Redev. Auth. of New Kensington,*[20]
plaintiff-owners of two real estate parcels—one a partnership,
the other a corporation—could not collapse the two for purposes
of obtaining a higher assessment in an eminent domain proceeding.
The policies upon which veil piercing are based, i.e., fraud or
injustice, were not present there.   *See also Kiehl,*, 517 Pa. at
191-92,  535 A.2d at 575 (disallowing subsidiary from piercing
parent's veil shield itself from liability under workman's
compensation law).

Such opportunistic use of the alter ego doctrine is not what
the Complaint indicates.   In Count III, the Trustees maintain
that Mr. and Mrs. Bagga have abused the corporate forms for the
benefit of themselves and to the detriment of the creditors.
Likewise, in Counts X and XV, essentially the same is alleged as
to all of the individual defendants.   As this remedy would serve
to benefit those alleged to have been wronged by the individual
defendants, Pennsylvania law would allow the Trustee to disregard

---

[19]2002 WL 32341776 *3 (E.D.Pa.)

[20]431 Pa. 240, 245, 244 A.2d 779, 781-82 (Pa. 1968)

the Debtors' corporate structures and impose liability on the

individual defendants.

*Count IV - Fraudulent Transfer*

Three challenges are made to the fraudulent transfer claims:

concurrent jurisdiction in the District Court, failure to state a

claim, and untimeliness.  Defendants' Brief, 42-47.  Plaintiffs

maintain that none of these argument have merit.  Plaintiffs'

Brief, 40-44.

*Concurrent Jurisdiction*

The Defendants contend because the same cause of action

remains pending in the District Court, it is the Court before

whom the claim was first filed which has jurisdiction of it.  The

first-filed rule, which commands that "in all cases of federal

concurrent jurisdiction, the court which first has possession of

the subject must decide it."  *EEOC v. Univ. of Pa.,* 850 F.2d 969,

971 (3d Cir.1988) (citation omitted).  Because the first-filed

rule rests on equitable principles, the decision to apply the

rule is committed to the sound discretion of the trial court.

*Id.* at 977; *see also Stone Creek Mech., Inc. v. Carnes Co.,* 2002

WL 3142390 *2 (E.D.Pa.).  "Under this standard, a court must act

'with regard to what is right and equitable under the

circumstances and the law, and directed by the reason and

conscience of the judge to a just result." ' *EEOC,* 850 F.2d at

977 *quoting Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243,

49

249, 75 L.Ed. 520 (1931)). The first-filed rule empowers a court
to enjoin subsequent proceedings in another district court
involving the same parties and issues that are pending before the
first court. *Id.* at 971 *citing Triangle Conduit & Cable Co. v.
Nat'l Elec. Prods. Corp.,* 125 F.2d 1008, 1009 (3d Cir.1942)).

Because multiple district courts adjudicating the same
controversy between the same parties would waste scarce judicial
resources, the first court properly cognizant of the controversy
should decide the issues before it. Accordingly, the first-filed
rule seeks to "avoid burdening the federal judiciary and to
prevent the judicial embarrassment of conflicting judgments."
*EEOC,* 850 F.2d at 977. Although the first-filed rule is firmly
rooted in the Third Circuit, equity requires that a court employs
a flexible approach in applying the rule, focusing on the
particular circumstances presented. *Oak Associates, Ltd v.
Palmer,* 2006 WL 293385 *3 (E.D.Pa.) (observing the Third
Circuit's admonition that first-filed rule "is not a rigid or
inflexible rule to be mechanically applied"). While exceptions
to the rule are rare, a district court may depart from the first-
filed rule upon a showing of bad faith, inequitable conduct,
extraordinary circumstances, or forum shopping. *Id.* at 972, 976-
77 (citations omitted); *see also Koresko v. Nationwide Life Ins.
Co.,* 430 F.Supp.2d 394, 399 (E.D.Pa.2005) (courts may depart from
first-filed rule if second-filed action is further along than

50

first-filed or first-filed is anticipatory filing); *Am. Soc'y for Testing & Materials v. Corrpro Cos.,* 254 F.Supp.2d 578, 580 (E.D.Pa.2003).

In this case, none of the exceptions would apply. There is no indication of bad faith or inequity in Plaintiffs having chosen to file the same claim here. Indeed, the reason is obvious: the intervening bankruptcy resulted in the appointment of two trustee who bring the same claims on behalf of the estates. This also indicates that forum-shopping is not implicated here. Finally, there is not an identity of parties given that the Trustees were not appointed until after the bankruptcies were filed. There are no grounds, then, to preclude Count IV based on principles of concurrent jurisdiction.

*Does Count IV
State a Claim?*

The Defendants' next challenge to the fraud count is that it fails to state a claim. But where many fraud counts are disputed for lack of factual specificity, what is alleged here goes to the legal sufficiency of what is alleged.[21] The Defendants point out that the count does not state whether it is based on the state fraudulent transfer statute (made applicable to trustees under § 544(b)) or on the Bankruptcy Code's own fraudulent transfer

---

[21]Defendants do not argue here that the fraud count is deficient for failure to meet the heightened pleading standard of F.R.C.P. 9(b) (made applicable by B.R. 7009).

provision (§ 548).   For the Defendants, this matters because if
it is based on the former, then the count's failure to identify
an actual creditor for standing purposes renders it deficient; if
it is the latter, then the claim is time-barred.  Defendants'
Brief, 44.  They add that elsewhere the Complaint alleges
transfers made by entities other than the Debtors.  Such
transfers, they conclude, cannot be fraudulent as to the Debtors.
*Id.*, 45.  The Plaintiffs generally dispute all of these
contentions.  Plaintiffs' Brief, 41-43.

An analysis of the legal sufficiency of the fraud count is
aided by a brief review of the rules of pleading in Federal
Court.  Federal Rule of Civil Procedure 8(a)(2)[22] provides that a
complaint must include only "a short and plain statement of the
claim showing that the pleader is entitled to relief."
*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992,
998 (2002).  Such a statement must simply "give the defendant
fair notice of what the plaintiff's claim is and the grounds upon
which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99,
103, 2 L.Ed.2d 80 (1957).  A complaint need not plead law or
match facts to every element of a legal theory.  *Weston v.
Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001).  *See also Linker
v. Custom-Bilt Machinery, Inc.,* 594 F.Supp. 894, 901-02
(E.D.Pa.1984) ("Rule 8 is satisfied when the statement of the

---

[22]Made applicable by B.R. 7008(a).

52

claim provides 'fair notice to the adversary of the nature and
basis of the claim asserted and a general indication of the type
of litigation involved.' "(*quoting Continental Collieries v.
Shober*, 130 F.2d 631, 635 (3d Cir.1942))).  "There is no
requirement to state facts sufficient to constitute a cause of
action." *Pennsylvania Real Estate Investment Trust v. SPS
Technologies, Inc.,* 1995 WL 687003 *4 (E.D.Pa.) (quoting
*Schaedler v. Reading Eagle Publication, Inc.,* 370 F.2d 795, 798
(3d Cir.1967)).

This simplified notice pleading standard relies on liberal
discovery rules and summary judgment motions to define disputed
facts and issues and to dispose of unmeritorious claims.
*Swierkiewicz*, *supra, id.*; *Leatherman v. Tarrant County Narcotics
Intelligence and Coordination Unit,* 507 U.S. 163, 168-169, 113
S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). "The provisions for
discovery are so flexible and the provisions for pretrial
procedure and summary judgment so effective, that attempted
surprise in federal practice is aborted very easily, synthetic
issues detected, and the gravamen of the dispute brought frankly
into the open for the inspection of the court."  Wright &
Miller, *Federal Practice and Procedure Civ 3d:* § 1202 (2007).

While these rules eschew technical forms of pleading, what
is averred must be done so in a manner simple, concise and
direct.  F.R.C.P. 8(e)(1).  *See Yurman Design, Inc. v. Chaindom*

53

*Enter., Inc.*, 2002 WL 1402305 *2 (S.D.N.Y.) ("The liberal rules of pleadings in the federal system are not without limits.") Defendants argue that Count IV has exceeded those limits in failure to identify the specific fraudulent transfer provision upon which it is based.  Their point is well-made.  To be sure, §§ 544 and 548 have much in common.  *See In re Carrozzella & Richardson*, 286 B.R. 480, 483 n.3 (Bankr.D.Conn.2001)("With few exceptions, the basic principles governing fraudulent transfer actions are the same, regardless of the statutory basis used). *See In re Pajaro Dunes Rental Agency, Inc.,* 174 B.R. 557, 572 (Bankr.N.D.Cal.1994)("Unless otherwise specified, common-law authorities and case-law dealing with the UFCA, UFTA, Bankruptcy Act of 1898 or the Bankruptcy Code may be cross-referenced whatever the statutory basis of the action at bar.") However, the respective challenges made by the Defendant highlight those differences.  The Trustee's standing to bring a state law fraudulent transfer action under § 544 depends on the existence of an actual creditor harmed by the transfer sought to be avoided.  The existence of such a creditor must be pleaded in the Complaint.  *See Kaliner v. Load-Rite Trailers, Inc.*, (*In re Sverica Acquisition Corp.*), 179 B.R. 457, 465 (Bankr.E.D.Pa.1995) (holding that Trustee's failure to identify actual creditor

harmed by transfer precluded standing).[23]  Conversely, the

Defendants raise the statute of limitations (one year) as to any

claims under § 548.  The Complaint however, does not specifically

state when the avoidable transfers were made.  The effect of all

this is to leave the Defendants to guess which legal theory it

is.  That is a failure to set forth a short plain statement

entitling the pleader to relief which is the relatively liberal

standard.  *See Levitch v. CBS, Inc.*, 94 F.R.D. 292, 295

(S.D.N.Y.1982) (second amended complaint insufficient where

defendant required to guess which part of first amended complaint

incorporated.); *Foreman v. General Motors Corp.*, 473 F.Supp. 166,

180 (E.D.Mich.1979) (complaint insufficient where defendant

required to guess what the claims are).  *See* F.R.C.P. 10(b) (made

applicable by B.R. 7010 and requiring that "each claim founded on

a separate transaction or occurrence … shall be stated in a

separate count … whenever a separation facilitates the clear

presentation of the matters set forth.)  Moreover, such a cryptic

approach is completely unnecessary given that the rules allow for

pleading in the alternative.  *See* F.R.C.P. 8(e)(2).  Accordingly,

Count IV will be dismissed without prejudice and with leave to

---

[23]The Court is aware of the split of authority on this point.  *See*
*In re Lexington Healthcare Group, Inc.*, 339 B.R. 570, 576
(Bankr.D.Del.2006) (not requiring pleading of actual creditor and
noting split)

amend for those reasons as well as those which follow.[24]

*Is Count IV Untimely?*

The final challenge to the fraud count is based on the
applicable statute of repose.   Defendants' Brief, 46.   They
contend that to the extent that the Complaint seeks avoidance of
transfers made in the year 2000, such claims are extinguished by
law.   *Id*. 48.   The Defendants correctly point out that the
Pennsylvania Uniform Fraudulent Transfer Act provides for a four
year statute of repose:

> A cause of action with respect to a
> fraudulent transfer or obligation under this
> chapter is *extinguished* unless action is brought:
> (1) under section 5104(a)(1) (relating to
> transfers fraudulent as to present and future
> creditors), within four years after the
> transfer was made or the obligation was
> incurred or, if later, within one year after
> the transfer or obligation was or could
> reasonably have been discovered by the
> claimant; or
> (2) under section 5104(a)(2) or 5105
> (relating to transfers fraudulent as to

---

[24]Defendants maintain that the Count fails to state a claim
because it references transfers made by non-debtors.  Elsewhere, they
go on to argue, it contradicts itself as to which of the Debtor made
certain transfers.  Defendants' Brief, 44-45.  Merely because the
complaint references transfers made by non-debtors does not mean that
those transfers made by the Debtor are not avoidable.  The applicable
rule of pleading provides that "[w]hen two or more statements are made
in the alternative and one of them if made independently would be
sufficient, the pleading is not made insufficient by the insufficiency
of one or more of the alternative statements."  F.R.C.P. 8(e)(2).
Their objection that at one point it is alleged that Bagga Enterprises
and Jamuna Real Estate made the fraudulent transfers, while just four
paragraphs later, it is United Management who is supposed to have made
them is equally unpersuasive.  The same rule of pleadings provides
that "a party may also state as many separate claims or defenses as
the party has *regardless of consistency….Id.* (emphasis added)

> present creditors), within four years after
> the transfer was made or the obligation was
> incurred.

12 P.S. § 5109 (emphasis added).  The word "extinguished" is

emphasized because of its substantive effect:

> The difference between statutes of repose and
> statutes of limitations is that statutes of
> limitation[s] are procedural devices which
> bar recovery on a viable cause of action,
> where statutes of repose are substantive in
> nature because they *extinguish* a cause of
> action and preclude its revival. In addition,
> statutes of limitation[s] begin to run from
> the time of an injurious occurrence or
> discovery of the same, whereas statutes of
> repose run for a statutorily determined
> period of time after a definitely established
> event independent of an injurious occurrence
> or discovery of the same.

*Miller v. Stroud Township*, 804 A.2d 749, 752 (Pa.Commw.2002)

(emphasis added)

The Plaintiffs' response to all this is that Plaintiff FL

Receivables filed the same claim in the District Court in

2003—which is within the 4 year repose period—and have sought to

consolidate that action with the instant case.  Plaintiffs'

Brief, 43.  They add that the year 2000 transfers were just the

beginning of the avoidable payments made by the Debtors.  *Id*.

Those transfers made *after* 2000 are well within the time bar.

*Id*.  Finally, the Defendants invoke the benefit of Bankruptcy

Code § 108(a) which extends any pending deadline by up to two

years from the date the case was filed.[25]  *Id.*, 44.  Because the
bankruptcy was filed in late December 2004, that time period has
not yet lapsed.  *Id.*

The Court finds the Plaintiffs' points to be well-made.  FL
Receivables commenced its claims in the District Court in a
timely fashion.  The claims were brought in this Court only
because of the intervening bankruptcies.  Moreover, the Complaint
pleads more than just transfers having been made in 2000.  The
existence of avoidable payments within the four year bar renders
the count viable.  In sum, Count IV will be dismissed without
prejudice to allow the Plaintiffs to identify which fraudulent
transfer provision supports their claims.

*Turnover*

Counts VI, VII, and VIII raise claim for turnover under §
542 of the Bankruptcy Code.  Defendants maintain that the
allegations in those counts do not constitute claims for
turnover.  Only claims to property which are not subject to a
bona fide dispute may be validly pursued via the Code's turnover

---

[25]The statute provides that "[i]f applicable nonbankruptcy law, an
order entered in a nonbankruptcy proceeding, or an agreement fixes a
period within which the debtor may commence an action, and such period
has not expired before the date of the filing of the petition, the
trustee may commence such action only before the later of--
(1) the end of such period, including any suspension of such period
occurring on or after the commencement of the case; or
(2) two years after the order for relief."  11 U.S.C. § 108(a)

provisions.  Defendants' Brief, 48-49.  Plaintiffs offer no
response to this argument and that is not surprising.  As the
Court confirmed in its Opinion regarding core versus non-core
matters, the estate may not demand turnover of property subject
to a dispute.  The Third Circuit has explained that a "bona fide
dispute" exists only when there is "a genuine issue of material
fact that bears upon the debtor's liability, or a meritorious
contention as to the application of law to undisputed facts."
*B.D.W. Associates v. Busy Beaver Bldg. Ctrs.,* 865 F.2d 65, 66 (3d
Cir.1989)(quoting *In re Lough,* 57 B.R. 993, 997
(Bankr.E.D.Mich.1986)).  The dispute over such factual or legal
issue must also be substantial.  *Id.* (quoting *In re Busick,* 831
F.2d 745, 746 (7th Cir.1987)  Applying this definition to the
three counts, the Court sees that the defendants "adamantly"
dispute that they have done anything wrong or that they diverted
money from the Debtors to themselves.  Defendants' Brief, 49.
For that reason, the Plaintiffs have failed to state a claim for
turnover and Counts VI, VII and VIII must be dismissed.

*Common Law Fraud*

Count IX of the Complaint alleges that all individual
Defendants are liable for common law fraud.  Defendants maintain
that such a claim is not sufficiently made out as to either
Khushvinder Bagga, Ravinder Chawla, or Hardeep Chawla.  They
add—in anticipation of Plaintiffs' counter—that there is no

59

allegation of conspiracy to commit fraud among these individuals.
The Count is based on fraudulent misrepresentations, Defendants
explain, and there is no allegation that any of these three
Defendants made any representation to the lender.  Defendants'
Brief, 50-52.  Indeed, the Plaintiffs' Response proves
Defendants' prescience: in their response, Plaintiffs re-
characterize their claim against Mrs. Bagga and the Chawlas as
*conspiracy to commit* fraud, as opposed to fraud *per se.*
Plaintiffs' Brief, 44-45.

The Court begins with the question of whether fraud is
pleaded as to those individuals other than Mr. Bagga.  On that
score, the Court is in agreement with the Defendants: there is no
allegation that either Mrs. Bagga or either of the Chawlas made
any representations to the lender.  It is Mr. Bagga who is the
prime mover of the fraud as to Captec.  But can Count IX be
fairly construed to state a claim against these other defendants
for conspiracy to commit fraud?

The applicable rules provide that "a party may set forth two
or more statement of a claim alternatively or hypothetically,
either in one count or in separate counts."  F.R.C.P. 8(e)(2).
However, the elements of a civil conspiracy claim, while
derivative, are distinct from the underlying claim of fraud.  In
Pennsylvania, civil conspiracy is pleaded by alleging: "(1) a
combination of two or more persons acting with a common purpose

to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Chantilly Farms, Inc. v. W. Pikeland Twp.,* 2001 WL 290645 *13 (E.D.Pa.) (quoting *Smith v. Wagner,* 403 Pa.Super. 316, 322-23, 588 A.2d 1308, 1311-12 (Pa.Super.1991)) The standard of pleadings for civil conspiracy based on fraud is high.  *See Lum, supra*, 361 F.3d at 228 ("Because plaintiffs allege that the defendants accomplished the goal of their conspiracy through fraud, the Amended Complaint is subject to Rule 9(b)")  Can Count IX be construed to sufficiently plead those elements?

The Court finds that it cannot.  Beginning with the count itself, the Court sees that it bears the title "FRAUD" and nothing else.  The Count is not pleaded in the alternative to allege conspiracy; neither, for that matter is the word "conspiracy" used in that count or the entire Complaint.  Within the Count, the Plaintiffs cite the elements for a garden variety claim of fraudulent misrepresentation: intentional misrepresentation, justifiable reliance on those statements, and resulting injury.  What the Plaintiff do not set forth is that this fraud was the result of a conspiracy.  The Court is well aware that Rule 8 requires the Court to construe the pleadings to do substantial justice.  *See* F.R.C.P. 8(f).  That applies, however, to the Defendants as well the Plaintiffs.  To allow the

61

Plaintiff to re-characterize this count as one for conspiracy
works an unfairness upon the Defendants.  They would not be
confronted with a "short plain statement" informing them that
they are charged with having conspired to defraud the Plaintiffs.

The upshot of all this is the Count IX will be judged as
legally sufficient as to the extent it states a claim for common
law fraud.  In that regard, the Complaint fails to state a fraud
claim against Mrs. Bagga or Messrs. Chawla.  Count IX will be
dismissed, without prejudice, as to those Defendants.

*Breach of Fiduciary Duty*

Counts XI through XIII allege that the individual defendants
breached their duties as fiduciaries of the various business
entities they controlled.  Count XI alleges that all of the
individuals engaged in self-dealing to the detriment of the
Plaintiffs.  Count XII alleges that the Baggas transferred the
Debtors' property from the companies they controlled to the
Chawlas or the companies *they* controlled.  Count XIII alleges
that the individual Defendants are guilty of having deepened the
insolvency of all of the businesses controlled by them.  As to
all three counts, the Defendants argue that each fails to state a
claim against Mrs. Bagga or Messrs. Chawla.  Defendants' Brief,
52.  They explain that there is simply no allegation that each
has a fiduciary relationship with the Plaintiffs.  *Id.* 53.
Plaintiffs disagree arguing that Mrs. Bagga's check-writing

62

authority for the Debtors makes her a fiduciary of those
entities.  As to the Chawlas, they vaguely assert that the
"millions of dollars going back and forth between the Debtors and
the Chawla companies" indicates a fiduciary relationship.
Plaintiffs' Brief, 47.  Do these counts plead a claim against
those individuals other than Mr. Bagga?

Fiduciary status is defined by statute as well as common
law.  Pennsylvania's Corporations and Unincorporated Associations
law establishes a fiduciary duty owed by directors and officers
to their corporation as follows:

> (a) Directors.-A director of a domestic
> corporation *shall stand in a fiduciary*
> *relation* to the corporation *and shall perform*
> his duties as a director, including his
> duties as a member of any committee of the
> board upon which he may serve, in good faith,
> in a manner he reasonably believes to be in
> the best interests of the corporation and
> with such care, including reasonable inquiry,
> skill and diligence, as a person of ordinary
> prudence would use under similar
> circumstances.
> …
> (c) Officers.-Except as otherwise provided in
> the articles, an officer shall perform his
> duties as an officer in good faith, in a
> manner he reasonably believes to be in the
> best interests of the corporation and with
> such care, including reasonable inquiry,
> skill and diligence, as a person of ordinary
> prudence would use under similar
> circumstances.  A person who so performs his
> duties shall not be liable by reason of
> having been an officer of the corporation.

15 P.S. § 512.  Thus, officers and directors of a corporation are
considered fiduciaries under the Pennsylvania law of

corporations. *Miller v. Dutil (In re Total Containment, Inc.)*,
335 B.R. 589, 602 (Bankr.E.D.Pa.2005).

Case law expands the scope of fiduciary responsibility to
dominant or controlling shareholders. *See Pepper v. Litton,* 308
U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939)
("[Directors' and dominant or controlling shareholders'] dealings
with the corporation are subjected to rigorous scrutiny and where
any of their contracts or engagements with the corporation is
challenged the burden is on the director or stockholder not only
to prove the good faith of the transaction but also to show its
inherent fairness from the viewpoint of the corporation and those
interested therein.") (citing *Geddes v. Anaconda Copper Mining
Co.,* 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425 (1921));
*In re Athos Steel and Aluminum, Inc.,* 71 B.R. 525, 540
(Bankr.E.D.Pa.1987) (majority shareholder has duty to the
corporation and the minority shareholders if it "dominates the
board of directors and controls the corporation."). When a
corporation is insolvent, the fiduciary duty of the controlling
shareholders arises in favor of corporate creditors. *See
Travelers Casualty and Surety Co. v. Irex Corp.,* 2002 WL 32351176
*3 (E.D.Pa.) ("Cases interpreting Pennsylvania law hold that a
controlling shareholder is a fiduciary of the corporation as are
corporate officers; cases further hold that a fiduciary
relationship develops between a controlling shareholder and

64

creditors of the corporation, as it does between officers of the corporation and creditors of the corporation, at the point the corporation becomes insolvent.") It similarly treats as fiduciaries persons in whom a special confidence has been reposed.  See *In re Johnson,* 292 B.R. 821, 828 (Bankr.E.D.Pa.2003) ("One can be considered a fiduciary where 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other.'" citing *Destefano & Associates, Inc. v. Cohen,* 2002 WL 1472340 *3 (Pa.Com.Pl.), quoting *Commonwealth Dept. of Transp. v. E-Z Parks, Inc.,* 153 Pa.Cmwlth. 258, 266, 620 A.2d 712, 717 (1993)); *see also Lichtman v. Taufer*, 2004 WL 1632574 *7 (Pa.Com.Pl.) (same). Finally, "an agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit.  *Sutliff v. Sutliff*, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987) *citing* Restatement (Second) of Agency § 387 (1958).  Would either Mrs. Bagga, Ravinder Chawla or Hardeep Chawla come within any of these definitions of a fiduciary?

It is clear from the Complaint that neither of the three are officers, directors or shareholders of the Debtor corporations. Only Mr. Bagga is mentioned as being an officer and director of the Debtor corporations.  Complaint, ¶ 19.  Mr. Bagga is the sole

shareholder of the Debtor corporations. *Id.* ¶11-13. In fact, it
is specifically alleged that Mrs. Bagga is neither an officer,
owner or employee of the Debtor corporations. *Id.* ¶192. There
is no mention of either of the Chawlas being owners, officers or
directors of those entities. The Plaintiffs see Mrs. Bagga's
control or influence over the Debtors in her check-writing
authority. Plaintiffs' Brief, 47. However, the legal authority
which they cite to support that conclusion is inapposite. In
*Docteroff,*[26] while the debtor was not a director or officer of a
corporation which he was alleged to have defrauded, he was a
director and shareholder of an entity which, in turn, owned that
corporation. 133 F.3d at 217. The citations to *Voest-Alpine*[27]
is even less persuasive: the principals charged with fiduciary
status as to the defrauded corporation were 100% owners of that
entity. *See* 919 F.2d at 208. The closest that the Court's own
research comes to finding a case equating check-writing authority
with a fiduciary is regarding ERISA actions. *See, e.g., In re
Mushroom Transportation Co.*, 282 B.R. 805, 826 (E.D.Pa.2002)
*reversed on other grounds*, 382 F.3d 325 (3d Cir. 2004);
*Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn.*, 313
F.Supp.2d 739, 751 (W.D.Tenn.2004). However, the allegation that

---

[26]*In re Docteroff*, 133 F.3d 210 (3d Cir. 1997).

[27]*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d
206 (3d Cir.1990)

Mrs. Bagga was empowered with the discretion to pay who she
wanted to pay and when indicates a fairly substantial degree of
control over these corporations.  Complaint ¶¶ 103-106.  She is
alleged to have abused that power which resulted in self-dealing,
depleting assets of the debtors, and increasing their insolvent
state.  For that reason, as to Mrs. Bagga at least, the Court
cannot find that the Complaint does not state a viable fiduciary
claim against her.

Nothing like that control or influence is attributed to
either of the Chawlas.  While it is alleged that millions of
dollars passed back and forth between their companies and Mr.
Bagga's (Complaint, ¶¶ 32, 34, 95-97), that does not establish
that either was in a position of control as to the Debtors.
Throughout the Complaint, it is Mr. Bagga who is alleged to be in
control of these companies.

*Aiding and Abetting a*
*Breach of Fiduciary Duty*

Count XIV charges the individual defendants with having
aided and abetted those individuals who breached fiduciary
duties.  The Defendants argue that this counts fails because the
Pennsylvania Supreme Court has yet to rule whether aiding or
abetting a breach of a fiduciary duty states a cognizable legal
claim. Defendants' Brief, 55.  Alternatively, they argue that
even if it is a cause of action, the claim fails as to Mrs. Bagga
and Hardeep Chawla.  *Id.*  For their part, the Plaintiffs offer

67

the conclusory argument that this count pleads that Mrs. Bagga
and Messrs. Chawla aided Mr. Bagga in his fiduciary breaches.
Plaintiffs' Brief, 47.

The Court takes up first the question of whether this counts
states a claim as a matter of law.  Useful in this regard is the
recent opinion of the United States District Court for the
District of Delaware in *Stanziale v. Pepper Hamilton, LLP (In re
Student Finance Corp.)* 335 B.R. 539 (D.Del.2005).  There, the
District Court had to divine whether the Pennsylvania high court
would recognize such claim.[28]  What follows is an exhaustive
survey of how Pennsylvania Courts—both state and federal—have
ruled on this question:

> Neither the Pennsylvania Supreme Court nor
> the Court of Appeals for the Third Circuit
> has considered whether aiding and abetting a
> breach of fiduciary duty is a valid cause of
> action under Pennsylvania law.  When called
> to apply substantive state law with respect
> to an issue that the state's highest court
> has not addressed, a federal court must
> predict how the state's highest court would
> resolve the issue.  *Jaasma v. Shell Oil Co.,*
> 412 F.3d 501, 507 n. 5 (3d Cir.2005).
> However, "it is not the role of a federal
> court to expand state law in ways not
> foreshadowed by state precedent."  *City of
> Philadelphia v. Beretta U.S.A. Corp.,* 277
> F.3d 415, 421 (3d Cir.2002).  In determining
> what the Pennsylvania Supreme Court would
> decide if presented with an issue it has not
> considered, this Court examines: "(1) what
> the Pennsylvania Supreme Court has said in

---

[28]Pennsylvania law was applicable because the Debtor was a
Pennsylvania corporation.  335 B.R. at 545.

related areas; (2) the 'decisional law' of
the Pennsylvania intermediate courts; (3)
opinions of federal courts of appeals and
district courts applying state law; and (4)
decisions from other jurisdictions that have
discussed the issue ...." *Dilworth v.
Metropolitan Ins. Co.,* 418 F.3d 345, 349 (3d
Cir.2005) (citing *Gruber v. Owens-Illinois
Inc.,* 899 F.2d 1366, 1369-70 (3d Cir.1990)).

One of Pennsylvania's two intermediate
courts, the Commonwealth Court, has concluded
that aiding and abetting a breach of
fiduciary duty is a valid cause of action
under Pennsylvania common law, basing its
conclusion on the Restatement (Second) of
Torts § 876. *Koken v. Steinberg*, 825 A.2d
723, 731 (Pa.Cmwlth.2003). Pennsylvania's
other intermediate court, the Superior Court,
has been more equivocal. In *Burnside v.
Abbott Labs*, the Superior Court favorably
discussed the related cause of action of
"concerted action" under § 876 of the
Restatement, but concluded that the Appellant
had not established a prima facie case. 351
Pa.Super. 264, 505 A.2d 973, 982-83 (1986).
The Superior Court also noted that "this
cause of action has not heretofore been
recognized in this Commonwealth as a valid
basis for imposing liability." *Id.,* 505 A.2d
at 983. More recently, the Superior Court
has made it clear that § 876 has not yet been
adopted as law in Pennsylvania. *See Welc v.
Porter,* 450 Pa.Super. 112, 675 A.2d 334, 338
(1996) (stating that "[a]lthough [§§ 876(a)
and (b)] have been addressed by this Court,
... these pronouncements are not controlling
as the discussions either did not command a
majority or constituted *dicta*. Moreover,
these sections heretofore have not been
expressly adopted."); *see also Clayton v.
McCullough*, 448 Pa.Super. 126, 670 A.2d 710,
713 (1996) (stating that "we are not bound by
§ 876(b) of the Restatement 2d, as it has not
been adopted by the Pennsylvania Supreme Court").

The United States District Court for the
Eastern District of Pennsylvania has

> predicted that the Pennsylvania Supreme Court
> would recognize a claim for aiding and
> abetting breach of fiduciary duty. *See
> Adena, Inc. v. Cohn,* 162 F.Supp.2d 351-357
> (E.D.Pa.2001). However, Pennsylvania's other
> two Federal District Courts have refused to
> expand Pennsylvania law to include that cause
> of action. *See Flood v. Makowski,* No. 03-
> 1803, slip op. at *36, 2004 WL 1908221
> (M.D.Pa.2004) (stating that the court was
> "hesitant to create an entirely new cause of
> action on the basis of two cases from the
> lower courts in Pennsylvania and dictum from
> a third court"); *see also Daniel Boone Area
> School Dist. v. Lehman Bros., Inc.,* 187
> F.Supp.2d 400, 413 (W.D.Pa.2002) (refusing to
> expand Pennsylvania tort liability by
> adopting § 876(b)).

335 B.R. at 550-51. Taking into account all of the foregoing,

the District Court of Delaware concluded that there was an

insufficient basis to conclude that the Pennsylvania Supreme

Court would decide that aiding and abetting breach of fiduciary

duty is a valid cause of action under Pennsylvania law. *Id.*

This Court, however, will defer to the decisions of the District

Court in this District which have allowed a plaintiff to press

this cause of action. *See, e.g., Adena, 162 F.Supp.2d at 357-58*;

*Schuylkill Skyport Inn, Inc. v. Rich*, 1996 WL 502280 *38

(E.D.Pa.); *SDK Investments, Inc. v. Ott*, 1996 WL 69402 *12

(E.D.Pa.); *and Pierce v. Rossetta Corp.*, 1992 WL 165817 *8

(E.D.Pa)[29]

---

[29]While a bankruptcy court is not bound to follow a decision of
single district court judge, *Threadgill v. Armstrong World Industries,
Inc.,* 928 F.2d 1366, 1370 (3d Cir.1991) (holding that there is no "law
of the district"), such a decision is entitled to deference by this

*Did Either Mrs. Bagga or*
*Hardeep Chawla Aid or*
*Abet a Fiduciary's Breach*?

To establish such a claim, a plaintiff must show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach. *Adena*, *supra*, 162 F.Supp.2d at 357-58. As a breach of fiduciary claim is subject to a notice pleading standard, *see Total Containment, supra*, 335 B.R. at 611, that standard will similarly govern a claim that one aided and aided another breaching such duty. Does the Complaint sufficiently state such a claim as to Mrs. Bagga or Hardeep Chawla?

As to Mrs. Bagga, it is alleged that she was the signatory on the bank accounts of Bagga Enterprises, United and the Welcome Group. Complaint, ¶ 101. Her husband had access to her signature stamp for those accounts. *Id*. In the same year that the borrowers lost $1.8 million, the Complaint goes on, the Baggas paid themselves almost $1.5 million. *Id*. ¶ 107. Because such payments stripped those entities of capital, a breach of fiduciary duty is stated. As signatory on those accounts, Mrs.

---

Court. *See In re Morningstar Enterprises, Inc.*, 128 B.R. 102, 106 (Bankr.E.D.Pa.1991). Moreover, this ruling is consistent with that issued by Bankruptcy Judge Fox of this District. *See Total Containment, supra*, 335 B.R. at 611 (holding that plaintiff stated a cause of action for aiding and abetting a breach of fiduciary duty at least for purposes of surviving a motion to dismiss)

Bagga aided and abetted the alleged breaches.

That leaves Hardeep Chawla.  Other than describing him as
Ravinder's brother and co-owner of World Apparel, Sant
Properties, HB, LLP and HB, Inc., the Complaint does not
specifically mention him again.  Complaint, ¶¶ 16, 23-27.
Thereafter, the Complaint refers to the "Chawlas" or Ravinder
Chawla.  Where the Chawlas may have aided or abetted fiduciary
breaches, the Complaint explains, is in assisting Mr. Bagga in
moving money between their companies and those controlled by Mr.
Bagga.  Complaint, ¶¶ 32, 34, 95-97.  They were alleged to be
have paid Mr. and Mrs. Bagga nearly $1.2 million which was
rightly the property of the "already insolvent Bagga Companies."
*Id*. ¶ 95.  That would constitute aiding or abetting a fiduciary
who was self-dealing and stripping his company of capital.  Based
on these allegations, then, the Complaint states a claim against
Hardeep Chawla (as well as his brother Ravinder) for aiding and
abetting a breach of a fiduciary duty.

*Summary*

To reiterate, and after reviewing all of the Defendants'
challenges to the Complaint, the Court concludes that Count I
states a RICO claim against Pratpal Bagga, Khushvinder Bagga and
Ravinder Chawla; that Count II states a RICO conspiracy claim
against all of the Defendants; that Count III states a claim to
pierce the corporate veil of the entities controlled by Pratpal

Bagga and Khushvinder Bagga; that Count IV will be dismissed

without prejudice; that Counts VI through VIII will be dismissed

with prejudice; that Count IX will be dismissed as to Mrs. Bagga

and Messrs. Chawla without prejudice; that Count X will be

dismissed as Ravinder Chawla and Hardeep Chawla without

prejudice; that Counts XI, XII and XIII are dismissed as to

Ravinder Chawla and Hardeep Chawla; that Count XIV states a claim

as to Ravinder and Hardeep Chawla; and that Count XV will be

dismissed as to Ravinder Chawla and Hardeep Chawla without

prejudice.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   April 25, 2007

## In the United States Bankruptcy Court
## For the Eastern District of Pennsylvania

| | | |
|---|---|---|
| In re | : | |
| | : | |
| Jamuna Real Estate, LLC | : | Case no. 04-37130 |
| Bagga Enterprises, Inc. | : | Case no. 04-37132 |
| United Management Services, Inc. | : | Case no. 04-37136 |
| | : | |
| Debtors | : | Chapter 7 |
| | : | |
| | : | |
| Marvin Krasny, Chapter 7 | : | |
| Trustee of Jamuna Real Estate LLC; | : | |
| Marvin Krasny, Chapter 7 | : | |
| Trustee of United Management | : | |
| Services,  Inc.; Gary Seitz, | : | |
| Chapter 7 Trustee of | : | |
| Bagga Enterprises, Inc.; | : | |
| and FL Receivables Trust 2002-A | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| Pratpal Bagga; Khushvinder Bagga; | : | |
| Ravinder Chawla; Hardeep Chawla | : | |
| Welcome Group, Inc.; K&P Real | : | |
| Estate LLC; World Apparel Products, | : | |
| Inc. d/b/a SJM Trading Co., d/b/a | : | |
| Ten Tigers; American Merchandise | : | |
| Co., Inc., a/k/a American | : | |
| Merchandising Co., Inc.; | : | |
| 21st Century Restaurant Solutions, | : | |
| Inc.; Brand Trade, Inc.; | : | |
| HB Properties, Inc.; | : | Adv. No. 06-0128 |
| HB Properties LLP; Sant Properties; | : | Adv. No. 06-0129 |
| John and Jane Does and ABC | : | Adv. No. 06-0130 |
| Companies | : | |
| | : | |
| Debtor(s) | : | |
| | : | |

# <u>Order</u>

**And now**, upon consideration of the Defendants' Motion to

Dismiss Plaintiffs' Adversary Complaints, the Plaintiffs'

Response thereto, after hearing held, the opportunity to submit

briefs and for the reasons stated in the attached Opinion, it is hereby:

**Ordered**, that the Motion is denied as to Counts I, II and III; that the Motion is granted as to Count IV but that such count is dismissed without prejudice; that the Motion is granted as to Counts VI, VII and VII and that such counts are dismissed; that the Motion to dismiss Count IX is granted only as to Khushvinder Bagga, Ravinder Chawla and Hardeep Chawla, albeit without prejudice; that the Motion to dismiss Count X is granted, in part and that count is dismissed against Ravinder Chawla and Hardeep Chawla, without prejudice; that the Motion to dismiss Counts XI, XII and XIII are granted in part as to Ravinder Chawla and Hardeep Chawla, without prejudice; that the Motion to Dismiss Count XIV is denied; and that the Motion to Dismiss Count XV will be granted it being duplicative of Count X.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   April 25, 2007

2

<u>Interested Parties</u>:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

<u>Counsel for Defendants</u>
Richard M. Simins, Esquire
BUCHANAN INGERSOLL, PC
1835 Market Street
Fourteenth Floor
Philadelphia, PA 19103-2985

Andrew Teitelman, Esquire
380 Red Lion RD, Suite 202
Huntingdon Valley, PA 19006

<u>Counsel for Plaintiff</u>
Lawrence J. Tabas, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
One Penn Center, 1617 JFK Blvd
Philadelphia, PA 19103

Patrick E. Fitzmaurice, Esquire
THATCHER PROFFITT & WOOD LLP
50 Main Street, 5th Floor
White Plains, NY 10606