IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
In re                                    : Chapter 7
                                         :
JAMUNA REAL ESTATE, LLC                  : Bankruptcy No. 04-37130
UNITED MANAGEMENT SERVICES, INC.         : Bankruptcy NO. 04-37132
BAGGA ENTERPRISES, INC.                  : Bankruptcy No. 04-37136
            Debtor(s)                    :
                                         :
_____       :

MARVIN KRASNY, IN HIS CAPACITY AS        :
CHAPTER 7 TRUSTEE OF UNITED              :
MANAGEMENT SERVICES, INC.;               :
MARVIN KRASNY, IN HIS CAPACITY AS        :
CHAPTER 7 TRUSTEE OF JAMUNA REAL         :
ESTATE LLC; GARY SEITZ, IN HIS           :
CAPACITY AS CHAPTER 7 TRUSTEE OF         :
BAGGA ENTERPRISES, INC. AND FL           :
RECEIVABLES TRUST 2002-A                 :
            Plaintiffs                   :
                                         :
     v.                                  :
PRATPAL BAGGA; KHUSHVINDER BAGGA;        :
RAVINDER CHAWLA; HARDEEP CHAWLA;         :
WELCOME GROUP, INC.; K&P REAL            :
ESTATE LLC; WORLD APPAREL PRODUCTS,      :
INC. D/B/A/ SJM TRADING COMPANY,         :
D/B/A TEN TIGERS; AMERICAN               :
MERCHANDISE CO., INC., A/K/A             :
AMERICAN MERCHANDISING CO.,INC.;         :
21ST CENTURY RESTAURANT SOLUTIONS,       : Adv.No. 06-00128
INC.; BRAND TRADE, INC.; H.B.            : Adv.No. 06-00129
PROPERTIES, INC.; H.B. PROPERTIES        : Adv.No. 06-00130
LLP; SANT PROPERTIES; JOHN AND           :
JANE DOES AND ABC COMPANIES              :
            Defendants                   :
_____       :
```

# Opinion

By: Stephen Raslavich, United States Bankruptcy Judge.

*Introduction*

The Court has issued two prior opinions in this litigation which together set out the operative background facts.

Familiarity with them will be presumed and the history will not be presented.[1]

*Summary of Ruling*

At this juncture, the Chawla Defendants[2] seek summary judgment in their favor as to all of the remaining counts of the Plaintiffs' Complaint which are directed at them. Their legal theory is somewhat analogous to their premise to a previous motion for summary judgment wherein they sought dismissal of the Complaint's RICO counts on the basis that Plaintiff FL Receivables Trust 2002-A (FL Receivables) lacked assignment standing to assert such claims. For the reasons discussed in its Opinion and Order of February 6, 2008 the Court agreed and these counts, to the extent predicated on assignee standing, were dismissed. Here, the Chawla Defendants argue that *all* other counts of the Complaint should be dismissed as to them because FL Receivables has no authority to institute this lawsuit, hence it is ultra vires and a legal nullity. The issues have been briefed and the matter heard on February 5, 2008. The Court disagrees with the moving parties and the Motion will be denied.

---

[1] *In re Jamuna Real Estate LLC*, 365 B.R. 540 (Bankr.E.D.Pa.2007) (ruling on motion to dismiss); *In re Jamuna Real Estate LLC*, 2008 WL 320299 (Bankr.E.D.Pa.) (granting partial summary judgment on RICO claims)

[2] The "Chawla Defendants" consist of brothers Ravinder and Hardeep Chawla, and certain business entities they control; to wit: World Apparel Products, Inc., K & P Real Estate, LLC, American Merchandising Co., Inc., 21st Century Restaurant Solutions, Inc., and Brand Trade, Inc.

*Stipulated Facts*
*and Arguments*

The parties agree that the Plaintiff is a domestic statutory trust organized under Delaware law; that the Trust is governed by two documents: the Owner Trust Agreement (OTA)[3] and the Administration Services Agreement (ASA)[4]; and that the Trust may sue and be sued.  Transcript (T-) 14, 15.  The terms of the OTA confirm all of this.  *See* OTA §§ 2.1, 2.6, 2.11(i).  Where the parties are at odds is on the question of *who* may file suit on behalf of the Trust.

Defendants' arguments are alternative: first, that only Wilmington Trust Company, the Trustee, could file suit on behalf of the Trust; second, even if the right to sue could be delegated, there is no proof that delegation occurred.  Defendants' Brief, 6-9; T-6,7.  Plaintiff, too, makes alternative arguments: first, it reads the trust documents to allow liberal delegation of the Trustee's rights to file suit; and second, it contends that by filing a Proof of Claim, the Trustee implicitly authorized this lawsuit.  Plaintiff's Response, 3-8

*The Proof of Claim*

The Proof of Claim which was filed on behalf of the Plaintiff was signed by the Trustee and expressly contained a

---

[3] Attached as Ex. B to Chawla Defendants' Motion.

[4] Attached as Ex. C to Chawla Defendants' Motion.

3

claim for damages under the RICO statute.  From this, the Plaintiff would have the Court infer that the Trustee authorized the lawsuit.  Plaintiff's Brief, 8; T-53,54.  The problem with this argument is that it suffers from the fallacy of association: the Trustee filed a Proof of Claim demanding damages under RICO; the Complaint contains counts alleging RICO violations; therefore, the Trustee authorized the filing of the Complaint.  But there is simply no evidence that it was the Trustee who made the decision to file this Complaint.  As the Defendants' counsel emphasized, there is a world of difference between filing a claim in a bankruptcy case and commencing litigation.  T-33,34.  They are governed by different rules of procedure.  *Compare* B.R. 3001 et seq. *with* B.R. 7001 et seq.  In particular, the latter is governed to a large extent by the Federal Rules of Civil Procedure.  *See, generally,* Part VII of the Bankruptcy Rules of Procedure.  Among those rules is the duty to reasonably investigate the basis of the claims raised in a complaint.  *See* B.R. 9011.  Bankruptcy Rule 3001 requires that a Proof of Claim conform to the Official Form.  B.R. 3001(a)[5]; 9 *Collier on Bankruptcy* ¶ 3001.03[1] (15th ed. rev.)  Simply put, the Trustee's having filed a Proof of Claim is not probative of whether the Trustee affirmatively decided to file a lawsuit.  But

---

[5]All that the form says in the way of a duty to investigate is to state the criminal penalties for filing a fraudulent claim.  *See* Official Form 10, bottom of first page, italics

did someone else have the authority to make such a decision?

*Delegation*

  Typically, a trustee is charged with administering a trust. *See* Restatement (Third) of Trusts, § 76.  For the Defendants, this means that the Trustee may not delegate those duties which are charged to it under the Trust.  Indeed, it is a principle of trust law that a trustee has a duty to personally perform the responsibilities of the trusteeship except as a prudent person might delegate those responsibilities to others.  *See* Scott & Fratcher, Law of Trusts, § 171 (Fourth ed. 2001); *see also* Restatement (Third) Trusts § 171.

  However, this rule has since evolved to meet the needs of business.  One commentator has observed that "the nondelegation rule of the law of trusts entered the 1990's considerably weakened." John H. Langbein, *Reversing the NonDelegation Rule of Trust Investment Law*, 59 Mo.L.Rev. 105, 114 (Winter 1994).  The Restatement of Trusts has been revised to effectively reverse the rule with regard to investment of trust funds.[6] Instruments which govern a trust now often contain flexible management provisions which place administrative duties on an entity other than the trustee.  Delaware, for example, has accordingly amended its

---

  [6]*See* Restatement (Third) of Trusts, § 227(c) (adopting prudent investor rule which recognizes that a trustee may be required to delegate investment decisions under certain circumstances; *see also id.*, Comment j.

business trust law to relax the traditional rule.  Section 3806 of the Delaware domestic statutory trust law provides that "*[e]xcept to the extent otherwise provided in the governing instrument of a statutory trust*, the business and affairs of a statutory trust shall be managed by or under the direction of its trustees." 12 Del.C. § 3806(a) (emphasis added).  As one Court has remarked:

> [U]nlike an ordinary property trust that is instinct with fiduciary obligation, a "business trust" is simply an alternative form of business organization, *see generally Morrissey v. Commissioner of Internal Revenue,* 296 U.S. 344, 357, 56 S.Ct. 289, 80 L.Ed. 263 (1935), designed, *especially in Delaware*, to give sophisticated commercial parties unusual flexibility in structuring their ventures, *see* R. Franklin Balotti and Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations,* § 25.1.

*Calvin Klein Trademark Trust v. Wachner*, 123 F.Supp.2d 731, 734 (S.D.N.Y.2000) (emphasis added); *see also* James A. Florach and Martin I. Lubaroff, *The Best Entity for Doing Business, Delaware Business Trusts*, 937 PLI/Corp 371, 375-76 (April-May 1996) (noting act's extremely flexible management provisions); *accord* John H. Langbein, *The Secret Life of the Trust: The Trust as an Instrument of Commerce*, 107 Yale L.J. 165, 183-86 (October 1997) (identifying key attribute of a Delaware business trust to be the flexibility of design in matters of governance); Tamar Frankel, *The Delaware Business Trust Failure as the New Corporate Law*, 23

Cardozo L.Rev. 325, 326 (November 2001) (speculating as to why counsel are not availing themselves of this flexible business form)  The Delaware business trust has been identified as a business form well suited to securitization.  *See* Report of Committee on Bankruptcy and Corporate Reorganization of the Bar Association of the City of New York, *New Developments in Structured Finance*, 56 Bus.Law. 95, 174 (November 2000).  To what extent does the Plaintiff Trust exhibit these characteristics?

*The Trust Documents
and Delegation*

The OTA specifically provides that the Trustee may delegate its administrative duties to someone else:

> []the Owner Trustee shall be deemed to have discharged its duties and responsibilities hereunder and under the Related Documents *to the extent other Persons have agreed* in the Administration Services Agreement to perform such acts or to discharge such duties of the Owner Trustee or the Owner Trust hereunder or under any Related Document.

Owner Trust Agreement  § 6.2 (emphasis added).  The Administrative Services Agreement referred to was entered into upon creation of the Trust.  *See* OTA § 6.4.  It names Prudential Securities Credit Corp., LLC (PSCC) as "Administrator."  *See* ASA, 1.  As Administrator, PSCC was to provide general bookkeeping and accounting services.  ASA § 2(a)(i)-(v).  In addition, it was required "to take any appropriate action that is the duty of the Owner Trust to take pursuant to the Related Documents*."  Id.* §

2(b). Plaintiff relies principally on this provision from subsection 2(b) in asserting its right to file suit. Plaintiff's Brief, 2. Defendants disagree contending that the such a reading cannot be reconciled with the rest of the subsection. T-17, 27-30.

The Court finds the Defendants' reading of the trust documents to be hyper-technical. Contrary to their essential premise, a great deal of flexibility is afforded a trust drafter under Delaware law. This appears to have been the result of the 1994 amendments to the statute. *See* 12 Del.C. § 3806, Text Amendment, 69 Laws 1994, ch. 265, §§ 3-5. That change renders inapposite the case law relied upon by Defendants. *See* T-22 citing *Riggs National Bank v. Zimmer*, 1977 WL 5316 *14 (Del.Ch.) (stating the general rule prohibiting delegation *as it applied to a trust created as part of estate plan*). The law in Delaware, then, is that delegation of basic administrative duties such as the right to sue may be entirely proper.

Neither does the Court accept Defendants' argument that the trust's terms are ambiguous (T-13, 17) There are a number of reasons for this. First, the Administrator is charged with two sets of duties: in addition to providing bookkeeping and accounting duties, the Administrator must also "take any appropriate action that it is the duty of the Owner Trust or Owner Trustee to take pursuant to the Related Documents or the

8

Contract Assets." *See* OTA § 6.4(a). Defendants, however, see this "general duty" as so at odds with the specific tasks described in the same paragraph as to render them surplusage. T-12, 13. In other words, there would be no need for the specific task mentioned if the general duty is interpreted so broadly as to empower the Administrator to do anything. But the Court finds no inconsistency here. Like the Plaintiff, the Court finds them to be complementary, not limiting (T-49). Moreover, clarity is also demonstrated by an apparent redundancy: the Administrator's duties as first stated in the OTA are then repeated almost verbatim in the ASA. *Compare* OTA § 6.4(a) *with* ASA § 2(a) and (b).

    Second, Defendants are not signatories to the Trust agreement. To what extent, then, may they assert that the terms of the Trust are vague? The Court notes that the parties to this arrangement—Wilmington and PSCC—agree on what it means. The Trustee's representative stated in her deposition that PSCC was authorized to file this litigation; PSCC's representative said the same in his declaration. *See* Defendants' Supplemental Brief, Ex. A, Deposition of M. Pupillo, 104-05; Plaintiff's Response, Schwartz Affidavit, ¶ 5. This is confirmed by the parties' conduct as well. *See Capitol Bus Co. V. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir.1973) (stating that course of dealing may indicate parties' mutual intent). In sum, Defendants

9

never satisfactorily explain why those provisions in the OTA and ASA should be interpreted differently.

And aside from contract interpretation, the Court queries whether any harm is risked by delegation? Typically, a trust is created for the benefit of a third party not in control of the trust property. Where the trust in question is a vehicle for an estate plan, that beneficiary is often incapable or otherwise unable to manage the trust property responsibly; thus the creation of a fiduciary to assume that duty. But here the beneficiaries are the holders of the certificates of the Trust.[7] Their interest is the income derived from the securitized loans. And as the OTA makes clear, it is the general duty of the Owner Trustee *or the person acting in his stead* to "administer the owner Trust *in the interest of the Owner Trust Certificateholders*." OTA § 6.2 (emphasis added). Likewise, the OTA requires that the Administrator "shall … engage in such other activities as may be required in connection with *conservation of the Owner Trust Estate* … " OTA § 2.3(v) (emphasis added). That would *require* recovery on the defaulted loan. As Plaintiff's counsel emphasized, how else can the Administrator "administer" the trust at this stage (with respect to loans in default) except

---

[7]Plaintiff puts it another way: the Administrator is also a beneficiary so there is no chance of harming a third party. T-57

to pursue collection and, if necessary thereto, file suit?[8]  T-45.
That is the most reasonable interpretation of PSCC's administrative duties with regard to the loans made to the Defendants.

*Did the Administrator*
*Authorize Filing Suit?*

Having found that the Administrator was empowered to file suit, the Court turns to the question of whether, in fact, PSCC so decided.  The OTA provides generally that the Trustee could file suit with the prior consent of the Majority Owner Trust Certificateholders (i.e., the beneficiaries).  For actions to collect on contracts owed the trust, however, no prior consent is needed.  *See* OTA § 4.1(xii).  So if the Trustee had the discretion to sue, so would the Administrator.  Did PSCC make that decision?

The Plaintiff maintains that it did relying principally on the affidavit of Edward M. Schwartz, Jr., Senior Vice President of PSCC.  According Mr. Schwarz, PSCC—as Administrator—expressly authorized the Plaintiff to commence this litigation.  *See* Plaintiff's Response, Schwartz Affidavit, ¶5.  Viewing this evidence in the light most favorable to the Plaintiffs, the Court

---

[8]Indeed, the word "administer" means to "manage or conduct." Black's Law Dictionary, 41 (5th Ed.)  *See Wisconsin, Dept. of Tax. v. Pabst*, 15 Wis.2d 195, 202, 112 N.W.2d 161, 165 (1965) (applying this dictionary definition the word to determine if certain acts committed by inter vivos trustee constituted "administering" a trust)

11

must conclude that PSCC properly commenced this litigation.

*Summary*

The Court finds that the operative trust documents permissibly delegated to the Administrator the discretion to file suit against the Defendants. Evidence exists in the record demonstrating that PSCC, the Administrator, affirmatively made that decision. Accordingly, the Chawla Defendants' Motion for Partial Summary Judgment is denied.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   April 7, 2008

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re | : Chapter 7 |
| | : |
| JAMUNA REAL ESTATE LLC | : Bankruptcy No. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : Bankruptcy NO. 04-37132 |
| BAGGA ENTERPRISES, INC. | : Bankruptcy No. 04-37136 |
| Debtor(s) | : |
| | |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF UNITED | : |
| MANAGEMENT SERVICES, INC.; | : |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF JAMUNA REAL | : |
| ESTATE LLC; GARY SEITZ, IN HIS | : |
| CAPACITY AS CHAPTER 7 TRUSTEE OF | : |
| BAGGA ENTERPRISES, INC. AND FL | : |
| RECEIVABLES TRUST 2002-A | : |
| Plaintiffs | : |
| | : |
| v. | : |
| PRATPAL BAGGA; KHUSHVINDER BAGGA; | : |
| RAVINDER CHAWLA; HARDEEP CHAWLA; | : |
| WELCOME GROUP, INC.; K&P REAL | : |
| ESTATE LLC; WORLD APPAREL PRODUCTS,: |
| INC. D/B/A/ SJM TRADING COMPANY, | : |
| D/B/A TEN TIGERS; AMERICAN | : |
| MERCHANDISE CO., INC., A/K/A | : |
| AMERICAN MERCHANDISING CO.,INC.; | : |
| 21ST CENTURY RESTAURANT SOLUTIONS, | : |
| INC.; BRAND TRADE, INC.; H.B. | : |
| PROPERTIES, INC.; H.B. PROPERTIES | :Adv.No. 06-00128 |
| LLP; SANT PROPERTIES; JOHN AND | :Adv.No. 06-00129 |
| JANE DOES AND ABC COMPANIES | :Adv.No. 06-00130 |
| Defendants | : |

## <u>Order</u>

AND NOW, upon consideration of the Chawla Defendants' Motion for Partial Summary Judgment as to Claims of Plaintiff FL Receivables Trust 2002-A, the Plaintiff's Response, after hearing held February 5, 2008, and for the reasons set forth in the

attached Opinion, it is hereby

    ORDERED that the Motion is Denied.

By the Court:

*Stephen Raslavich* (signature)

Stephen Raslavich
United States Bankruptcy Judge

Dated: <u>April 7, 2008</u>

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for Plaintiffs
Lawrence J. Tabas, Esquire
OBERMAYER REBMAN MAXWELL & HIPPEL LLP
One Penn Center, 19th Fl.
1617 JFK Blvd
Philadelphia, PA 19103

Patrick E. Fitzmaurice, Esquire
THATCHER PROFFIT & WOOD LLP
50 Main Street
White Plains, NY 10606

Counsel for Defendants
Richard M. Simins, Esquire
Jeffrey Carbineau, Esquire
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street, 14th Fl
Philadelphia, PA 19103-2985

Andrew Teitelman, Esquire
380 Red Lion Road, Ste 202
Huntingdon Valley, PA 19006