## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| JAMUNA REAL ESTATE, LLC | : BANKRUPTCY NO. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : BANKRUPTCY NO. 04-37132 |
| BAGGA ENTERPRISES, INC. | : BANKRUPTCY NO. 04-37136 |
| DEBTOR(S) | : |
| _____ | : |
| MARVIN KRASNY, IN HIS CAPACITY AS CHAPTER 7 | : |
|     TRUSTEE OF UNITED MANAGEMENT SERVICES, INC.; | : |
| MARVIN KRASNY, IN HIS CAPACITY AS CHAPTER 7 | : |
|     TRUSTEE OF JAMUNA REAL ESTATE LLC; | : |
| GARY SEITZ, IN HIS CAPACITY AS CHAPTER 7 | : |
|     TRUSTEE OF BAGGA ENTERPRISES, INC., | : |
| WILMINGTON TRUST COMPANY IN ITS CAPACITY AS | : |
|     OWNER TRUSTEE OF FL RECEIVABLES TRUST | : |
|     2002-A AND FL RECEIVABLES TRUST 2002-A | : |
| PLAINTIFFS | : |
| VS. | : |
| PRATPAL BAGGA; KHUSHVINDER BAGGA; | : |
| RAVINDER CHAWLA; HARDEEP CHAWLA; | : |
| WELCOME GROUP, INC.; K&P REAL ESTATE LLC; | : |
| WORLD APPAREL PRODUCTS,INC. D/B/A/ SJM | : |
| TRADING COMPANY, D/B/A TEN TIGERS; AMERICAN | : |
| MERCHANDISE CO., INC., A/K/A AMERICAN | : |
| MERCHANDISING CO., INC.; 21ST CENTURY | : |
| RESTAURANT SOLUTIONS, INC.; BRAND TRADE, INC.; | : |
| H.B. PROPERTIES, INC.; H.B. PROPERTIES LLP; | : |
| SANT PROPERTIES; JOHN AND JANE DOES AND | : |
| ABC COMPANIES | : |
| DEFENDANTS | : ADVS NOS. 06-128, 06-129, 06-130 |

## OPINION

**BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.**

INTRODUCTION.

Before the Court is the Motion of Defendants Ravinder Chawla, Hardeep Chawla,

World Apparel Products, Inc., Sant Properties, HB Properties, Inc., and HB Properties,

LLP (the "Chawla Defendants") to dismiss the Plaintiffs' Amended Complaint.[1]  The

Motion is opposed by the Plaintiffs.  After a hearing held on December 4, 2009, the

Court took the matter under advisement.  For the reasons which follow, the Motion will

be granted.

*Summary of Holding*

While the Amended Complaint pleads a total of twelve counts, only four are

directed at one (or more) of the Chawla Defendants: Count I (RICO[2]); Count II

(conspiracy to commit RICO); Count IX (fraud and conspiracy to defraud); and Count

XIV (Aiding and Abetting a Breach of Fiduciary Duty).  As to these counts the Court

rules as follows:

Count I - RICO (Plaintiffs against Pratpal Bagga and Ravinder Chawla)

- Basis for Contention: Ravinder Chawla maintains that this count fails to
  state a claim under RICO against him.

- Holding: The Motion will be granted and Count I will be dismissed as to
  Ravinder Chawla.

Count II - Conspiracy to Violate RICO (Plaintiffs against All Defendants)

- Basis for Contention: The Chawla Defendants argue that the Complaint is

---

[1]For the prior procedural history of this proceeding, *see* 365 B.R. 540 (Bankr.E.D.Pa. 2007) (ruling on Defendant's Motion to Dismiss the original complaint ); 382 B.R. 263 (Bankr.E.D.Pa. 2008) (granting Chawla Defendants' Motion for Partial Summary Judgment on RICO claims); 385 B.R. 127 (Bankr.E.D.Pa.2008) (denying Chawla Defendants' Motion for Summary Judgment as to remaining claims); and 392 B.R. 149 (Bankr.E.D.Pa.2008) (denying Plaintiff's motion for reconsideration of summary judgment as to RICO claims and granting limited leave to amend complaint)

[2]The standard acronym for the Racketeer Influenced and Corrupt Organizations Act of 1984, 18 U.S.C. § 1961 et seq.

deficient in two respects: first, that it is contingent on the sufficiency of
Count I; second, that it fails either to allege either an agreement among
the alleged conspirators or the participation of Hardeep Chawla, HB
Properties Inc, and/or HB Properties LLP.

- Holding: The Motion will be granted and Count II will be dismissed as to
  the Chawla Defendants.

Count IX - Fraud and Conspiracy to Commit Fraud (Plaintiffs against Pratpal
Bagga and Ravinder Chawla)

- Basis for Contention: The Chawla Defendants argue that the claim is time-
  barred, that the Plaintiffs lack standing, and that a prima facie case is not
  pleaded.

- Holding: The Motion will be granted and Count IX will be dismissed as to
  Ravinder Chawla

Count XIV - Aiding and Abetting A Breach of Fiduciary Duty (Plaintiffs vs. All
Defendants)

- Basis for Contention: Chawla Defendants maintain that the Plaintiffs have
  failed to state the proper standard; that there exists no underlying duty;
  that the complaint does not plead substantial assistance or
  encouragement; and that the claim is otherwise time-barred.

- Holding: The Motion will be granted and Count XIV will be dismissed as to
  the Chawla Defendants.

*Standing to
Raise RICO*

Although the legal sufficiency of a complaint is judged facially, this case has a

prior procedural history which affects what may be alleged.  For the third time, the

issue of standing is joined.  In its Opinion of February 6, 2008, this Court held that the

Plaintiff *FL Trust* lacked standing to sue because of a lack of privity.  In the Opinion of

April 7, 2008, it was the Plaintiff *Bankruptcy Trustees* who were found to lack standing

because they were not directly harmed by the alleged racketeering conduct.  The

3

upshot of all of this is that the right of either plaintiff to raise RICO is, at this juncture, severely circumscribed.  It is foreclosed to the extent that it is derivative of the "Captec assignment."  That background and this Court's ruling on its effect is set out at length in the Court's prior opinion and will not be repeated here.  *See generally* 382 B.R. 263. Most importantly, that ruling is now the law of the case.  *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir.2002) citing 18 *Moore's Federal Practice* ¶ 134.20 (3d ed.1999) (As a rule of preclusion, this doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages).   As explained in the Court's Opinion, if the Trust was to press a RICO claim, it would have to be based on damages the Trust *independently* suffered.  The same applies to the Bankruptcy Trustee Plaintiffs.

The Plaintiff Trust has raised RICO claims again in the Amended Complaint.  And once again, the Chawla Defendants challenge its right to do so.

Standing has been described as the "irreducible constitutional minimum."[3] Accordingly, it is appropriate that it be taken up first by the Court.  Its essence is injury; Article III standing requires that "the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."*Township of Piscataway v. Duke Energy,* 488 F.3d 203, 208 (3d Cir.2007) (citing *Trump Hotels & Casino Resorts v. Mirage Resorts,* 140 F.3d 478, 484-85 (3d Cir.1998)).  RICO likewise requires injury and

---

[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)

4

that the harm have resulted from a violation of the statute: "Any person injured in his

business or property *by reason of a violation of section 1962* of this chapter may sue

therefor ..." 18 U.S.C. § 1964(c).  At bottom, where RICO is implicated this becomes a

question of causation.  The Court must determine first if the count pleads a RICO

violation and, if it does, whether damages are pleaded which are the proximate result

of the illegal conduct.  The Court will address the standing question in this way.  *See*

*Maio v. Aetna, Inc.*, 221 F.3d 472, 482 n.7 (3d Cir. 2000) (discussing similarity between

standing analysis and RICO violation and resulting injury analysis).

*Standard for Dismissal*

The Motion to Dismiss is premised mostly on Rule 12(b)(6)[4]; i.e., that the

amended complaint fails to state a claim upon which relief may be granted.[5]  In light of

the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 540 U.S. 544, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007), the legal sufficiency of the Amended Complaint is to be

judged differently from the original Complaint.[6]  While the Supreme Court's decision in

*Twombly* reaffirmed the basic premises of F.R.C.P. 8 and 12(b)(6) (requiring the

pleading of a "short and plain statement" and accepting as true the alleged facts), the

Court made clear that the complaint may not rely on just "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Id*. 127 S.Ct. at

---

[4]Incorporated herein by B.R. 7012.

[5]The statute of limitations is also raised as to certain counts.

[6]*Twombly* was decided less than two months (May 21, 2007) after this Court's April 2007
Opinion on the Defendant's Motion to Dismiss the Plaintiffs' original complaint.

1965.  Also, the "'plain statement'" requirement of Rule 8(a)(2) must contain enough

"heft" to show that the pleader is entitled to relief.  *Id.* at 1966.  This heightened

pleading burden must be enough to raise a right to relief above the speculative level."

*Id.* at 1965; *see also Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d

Cir.2008) (cautioning "that the factual allegations in the complaint must not be so

undeveloped that it does not provide a defendant the type of notice of claim which is

contemplated by Rule 8.") *quoting Phillips v. County of Allegheny,* 515 F.3d 224, 233

(3d Cir.2008)  The Third Circuit has added that "it is no longer sufficient to allege mere

elements of a cause of action; instead 'a complaint must allege facts suggestive of [the

proscribed] conduct.'" *Phillips, id.* (*quoting Twombly,* 127 S.Ct. at 1969 n. 8).

    As a result of the foregoing, *more* is now required in the way of pleading, but

the High Court left the question of *how much* more to the trial court. *See In re*

*Intelligroup Sec. Litig.*, 527 F.Supp.2d 262, 278 (D.N.J. 2007) (interpreting *Twombly's*

specificity requirement to be determined on a case-by-case basis)  If there is any

guidance to be gained from the Supreme Court it may be in one of its rationales.  The

Court noted that in complex cases discovery costs tend to escalate.  127 S.Ct. at 1966-

67  That might be avoided by requiring more in the way of pleading at the outset. *Id.*

*Twombly* itself was an antitrust claim and such causes of action tend to involve complex

and technical questions.  RICO presents the same problem.  Discovery in this case has

become protracted and contentious.  The parties have lamented that discovery has thus

far involved "tens of thousands" of pages of documents.  Defendants' Brief, 24.

Requiring more detail in the pleading stage would clearly help to cut through some of

that.  The Court's analysis, then, will endeavor to hew to the line set forth in *Twombly*.

*Count I - RICO*

Against this background, the Court turns to the RICO claim.  Count I alleges that

Pratpal Bagga, Khushvinder Bagga and Ravinder Chawla violated § 1962 of RICO.[7]

That section provides, in pertinent part, that:

> [i]t shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the activities
> of which affect interstate or foreign commerce to conduct or
> participate, directly or indirectly, in the conduct of such
> enterprise's affairs through a pattern of racketeering activity
> or collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to plead a violation of RICO, a plaintiff must allege (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Lum v.*

*Bank America,* 361 F.3d 217, 223 (3d Cir. 2004); citing *Sedima, S.P.R.L. v. Imrex Co.,*

*Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).

*Conduct*[8]

Liability under subsection (c) is predicated on a defendant having "*conduct[ed]*

*or participate[d], directly or indirectly, in the conduct* of [the] affairs of the enterprise."

18 U.S.C. § 1962(c)(emphasis added).  In *Reves v. Ernst & Young*, the Supreme Court

held that "'to conduct or participate, directly or indirectly, in the conduct of such

---

[7] RICO creates a private cause of action for a person injured in business or property
under 18 U.S.C. § 1962. 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496
(1985).

[8] It is agreed that the Messrs Chawla are "persons" as defined by the statute.  18 U.S.C.
§ 1961(3).

7

enterprise's affairs,' one must participate in the operation or management of the enterprise itself." 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (citation omitted).[9] The High Court understood the word "conduct" to indicate some degree of direction over the affairs of the enterprise. *Id.* at 178, 113 S.Ct. at 1169. The Court concluded also that the term "participate" meant "to take part in." *Id.* at 179, 113 S.Ct. at 1170*; see also University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (adopting "operation or management" test enunciated in *Reves*); *see also United Nat. Ins. Co. v. Equipment Ins. Managers*, 1995 WL 631709 *4 (E.D.Pa.). The Court thus considers the conduct or participation on the part of Ravinder Chawla[10] alleged here.

Along with Pratpal Bagga and Khushvinder Bagga, Ravinder Chawla is alleged to have "directly or indirectly *conducted or participated in conducting* the affairs" of the enterprise. Amended Complaint ¶ 246. Generally, the conduct is alleged to consist of mail and wire fraud, conversion of proceeds from fraud, asset stripping, and evasion of payment. *Id*. ¶ 37 His conduct begins with his company World Apparel. It is alleged to have helped the Baggas conceal assets from creditors. *Id.* ¶249(a), (h) Next, it is alleged that he received proceeds from the Captec loan which were supposed to pay for restaurant equipment. *Id.* ¶ 249(m) He is also charged with transmitting false

---

9 Although *Reves* involved a motion for summary judgment, the Third Circuit has held that its holding is applicable to a motion to dismiss. *See University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (rejecting argument that *Reves* test applies only in a summary judgment context)

[10]Again, this Count is *not* directed at Hardeep Chawla.

documentation to the lender. *Id*. ¶ 249(u). Also imputed to him is the restatement of

World Apparel's financials. *Id.* ¶ 249(v) This established a loss for one of the Bagga

Entities which should have resulted in a tax refund to it; instead, the allegation is that

the refund was diverted by them. *Id.* He is also alleged to have received a loan from

K&P— another Bagga entity—which he was never required to pay back. *Id*. ¶ 249 (w)

He is alleged to have engaged in a scheme to sell counterfeit clothing (¶ 251), to

launder money (¶ 252), and to have filed a fraudulent bankruptcy claim (¶ 255). For

present purposes, all of this certainly constitutes a sufficient allegation of conduct on

Ravinder Chawla's part. It also implicates the company which he owns and controls,

World Apparel.

*Pleading an
Enterprise*

The "conduct" or "participation" alleged must have been part of the affairs of an

"enterprise." The statute specifically defines an enterprise as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of

individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As to

*exactly* what must be pleaded to state the existence of an enterprise, the parties are in

disagreement. The Defendants insist that the Supreme Court has raised the bar for

sufficiently pleading a RICO "enterprise" as a result of *Twombly, supra*. Defendant's

Brief, 26. For their part, Plaintiffs maintain that *Twombly* does no more than state a

rule already honored in practice: i.e., that general notice pleading must be mindful of

context for the pleading to survive. *See* Plaintiffs' Brief, 9-10 citing *Phillips*, 515 F.3d at

233 (explaining that Rule 8(a)(2) general notice pleadings standard remains intact after *Twombly*)  Because this question goes to the very heart of the matter, it must be addressed first.

To recapitulate, this Court's April 2007 Opinion weighed the sufficiency of the "enterprise" allegations in accordance with the Third Circuit's ruling in *Seville Indus. Mach. Corp. v. Southmost Mach. Corp,* 742 F.2d 786 (3d Cir.1984).  *See* 365 B.R. at 548.  *Seville* stated that nothing more than general notice pleading was required for pleading a RICO enterprise.  *Seville* relied, implicitly, on the long-standing rule regarding notice pleading first enunciated in *Gibson v. Connelly*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101 (1957) (holding that a complaint will not be dismissed "unless it appear beyond doubt that the plaintiff can prove no set of facts in support of his claim")  But two months after this Court's April 2007 ruling which relied on *Seville*—and which was consistent with *Gibson*—the Supreme Court effectively overruled *Gibson*.  In *Twombly, supra*, the High Court held that a pleading must, at a minimum, plausibly suggest facts which make a case which rises above the level of speculation.  127 S.Ct. at 1965.  The Amended Complaint's enterprise allegations, Defendants maintain, fail to do that.  *See* Defendants' Brief, 23-33

The Third Circuit has not had occasion to address how *Seville* is affected by *Twombly*,[11] but one would be hard-pressed to argue that it is not.  *Seville's* holding as

---

[11]The Seventh Circuit has addressed the effect of *Twombly* on RICO.  In *Limestone Devel. Corp. v. Village of Lemont,* 520 F.3d 797 (7th Cir.2008), the Seventh Circuit noted that the concerns regarding specificity in a complaint in an antitrust case (the statute at issue in

(continued...)

to pleading a RICO enterprise is premised on a liberal application of Rule 8. But the

controlling interpretation of that rule for the *Seville* court was *Gibson, supra*. *Twombly*

is now the final word on what Rule 8 requires and *what is* required is plausibility; that is

a step up from speculation. *See Vulcan Golf, LLC v. Google, Inc.*, 2008 WL 2959951 *1

(N.D.Ill.)(identifying *Twombly's* two easy to clear hurdles as (1) sufficient description of

the claim in order to give fair notice of what the claim is and the grounds upon which it

rests and (2) allegations which plausibly suggest that the plaintiff has a right to relief)

    This problem takes on an added complexity given that a RICO "enterprise" may

take various forms. For example, it be may be comprised of an organization per se,

such as a corporation and the persons who run it. Or, it may also be comprised of a

disparate collection of individuals and other entities who work in concert, i.e., an

association-in-fact. The distinction matters for pleading purposes. One pre-*Twombly*

decision from this District distinguished the RICO enterprise in *Seville* from RICO

enterprises based on associations in fact. That Court explained that

> [c]ourts can reasonably assume that individuals and
> corporations have an organizational structure, are
> continuous, and have an existence separate and apart from
> any alleged pattern of racketeering activity. When it comes
> to associations in fact, however, there is a greater risk that
> the RICO statute "might be improperly employed to string
> together predicate acts by unconnected defendants." *See*
> *Zito*, 2004 U.S. Dist. LEXIS 19778 at *23. In a footnote, the

---

[11](...continued)

*Twombly*) also exist in a RICO case. *Id.* at 801. This Court finds that reasoning persuasive and
reaches the same conclusion. *See also In re Insurance Brokerage Antitrust Litigation*, 2007 WL
2892700 *6 (D.N.J.); and *Vulcan Golf, LLC v. Google, Inc.*, 2008 WL 2959951 *1 (N.D.Ill.).

> Court of Appeals in *Seville* itself held that the plaintiff could not plead association in fact enterprises consisting of various combinations of the defendants simply by alleging that the defendants conspired with each other to commit the underlying offenses. 742 F.2d at 790 n. 5.
>
> The United States Court of Appeals for the Third Circuit accepted a minimal association in fact enterprise pleading in *Shearin*,[12] but that case is also distinguishable from the instant ones. There, the court held that it was sufficient for the plaintiff to plead that "the association of Hutton Group, Hutton Inc., and Hutton Trust ... was an enterprise...." 885 F.2d at 1165. Hutton Inc. and Hutton Trust were wholly owned subsidiaries of Hutton Group. *Id*. at 1164. This fact is significant because courts can also reasonably assume that a relationship between a corporation and its subsidiaries will have an organizational structure and existence independent of any alleged racketeering activity. Courts cannot make that inference when a complaint alleges an association in fact between widely disparate entities and individuals, as do the complaints here.

*In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litigation*, 2006 WL 1531152 *9 (E.D.Pa.); *see also* Rakoff and Goldstein, *RICO: Civil and Criminal Law and Strategy*, § 1.05, Law Journal Press ("Most of the remaining controversy over the enterprise element of RICO claim concerns the concept of a "group of individuals" associated in fact included in the definition.")  The Court finds that concern to be present here because the enterprise in this case is also one "in fact" as the Amended Complaint sets forth at the outset.  The Plaintiffs' problem is that merely alleging the enterprise's existence is nothing more than a tautology.  The Defendants are entitled to know the type of enterprise they are accused of operating.

---

[12] *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir.1989)

12

According to the Defendants, *Twombly* requires the plaintiff to plead every element of a RICO enterprise which must be proven at trial.  In their brief, they cite a number of cases[13] which require the complaint to plead the three elements set forth in the Supreme Court's opinion in *Turkette*[14] and the Third Circuit's opinion *in Riccobene*[15] (i.e., organizational structure, continuity, and enterprise/racketeering separation).  The parties will recall, however, that the Third Circuit in *Seville* specifically rejected that requirement.  742 F.2d at 790.  And that is the response that Plaintiffs make: they insist that, as a functional matter, *Twombly* has changed nothing in the way of pleading.  Thus, the *Seville* standard of general, notice pleadings obtains.  Plaintiffs point to a recent District Court Opinion which supports that proposition.[16]

The Court believes that neither party has it exactly right.  It is fair to say that the High Court would most likely not accept as sufficient the conclusory allegation that an enterprise exists.  At the same time, however, notifying the Defendants that they are accused of continuous and concerted criminal behavior does not require the Plaintiffs to plead their proof.  Instead, what is required lies somewhere in the middle: the plaintiff must plead more than the existence of an enterprise, but less than the proofs which establish that enterprise.  The Court accordingly turns now to the allegations in the

---

[13] *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 2892700 *8 (D.N.J.); *Freedom Medical Inc. v. Gillespie*, 2007 WL 2480056 *9 (E.D.Pa.2000); and *In re Am. Investor Life Ins. Co. Annuity Marketing Sales Litig.*, 2006 WL 1531152 *7 (E.D.Pa.2007).

[14] *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524 (1981)

[15] *United States v. Riccobene*, 709 F.2d 214 (1983)

[16] *Loften v. Diolosa*, 2008 WL 2994823 *5 (M.D.Pa.)

13

Amended Complaint to determine if they adequately inform the Defendants of the alleged enterprise.

The Plaintiffs allege the existence of the "Bagga/Chawla Enterprise" at the outset.  Amended Complaint, ¶ 36.  The enterprise is alleged to be comprised of persons and affiliated entities under the joint direction, control and leadership of the Baggas and Chawlas.  *Id.*  Its objective, as alleged, is to obtain corporate loans by means of fraud, to convert the loans proceeds to their own personal use, to strip the Debtor corporations of their assets, and then to avoid paying the loans back.  *Id.* ¶ 37.  Each Defendant is alleged to have agreed with one or more of the defendants to have participated in or furthered the enterprise's improper conduct.  *Id.*

Those allegations serve as the framework around which facts are pleaded to establish the enterprise.  This is not a case of unconnected defendants who have committed independent acts sought to be strung together by an overzealous plaintiff.  On the contrary, the individual defendants are related by family, and operate businesses which deal with each other.  They allegedly operated as co-equals in the commission of the enterprise's acts so there is no hierarchy to speak of.  As to regularity, while the amended complaint does not point to a period of time from which the racketeering began and had continued, much may be reasonably inferred in that regard.  The sheer weight of all the alleged efforts to thwart collection suggests that the Defendants' intentions became deliberately concerted at some point along the way and that such coordination continues to this day.  Finally, it is self-evident that there is a demarcation between any legitimate Bagga and Chawla businesses (fast-food

14

franchises, apparel, and real estate holdings) and their collaboration in defrauding the

Plaintiffs out of $4 million.  In sum, the Court finds a RICO enterprise to be sufficiently

pleaded.

*Pattern and
Racketeering*

The modus operandi of a RICO defendant is through a "pattern of racketeering

activity."  In its April 2007 Opinion, this Court observed that it made sense to determine

first if acts of racketeering were alleged before determining if those acts were part of a

pattern.  *See, e.g., H.J.,Inc., v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250, 109 S.Ct.

2893, 2906, 106 L.Ed.2d 195 (1989) (finding first that petitioner alleged multiple

predicate acts of bribery before analyzing whether such acts related to a common

purpose); *see also Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411-12 (3d

cir. 1991) (finding that complaint alleged predicate act of mail fraud before determining

if pattern pleaded).  And there is an added wrinkle here to the analysis: the moving

defendants are both Chawlas and the companies they control.[17] The Plaintiffs'

substantive RICO claims, however, are not directed at both of Chawlas.  Count I

(violation of RICO) is not alleged against Hardeep Chawla—it only names Ravinder

Chawla.  As a result, the pivotal question becomes: Whether the Amended Complaint

pleads the requisite "racketeering activity" as to Ravinder Chawla.

As before, the Court begins with the definition found in the statute.  It defines,

in pertinent part, a "racketeering activity" as

---

[17]Previously, *all* of the Defendants moved for dismissal.

> (B) any act which is indictable under any of the following
> provisions of title 18 United States Code: … section 1341
> (relating to mail fraud), section 1343 (relating to wire fraud)
> … section 1956 (relating to the laundering of monetary
> instruments) … section 2320 (relating to trafficking in goods
> and services bearing counterfeit marks) … section 2314 and
> 2315 (relating to interstate transportation of stolen property)
> … (D) any offense involving fraud connected with a case
> under title 11 …

18 U.S.C. § 1961(1).  The Amended Complaint alleges two or more related instances of

mail fraud, wire fraud, trafficking in counterfeit goods, money laundering, interstate

transportation of converted goods, tax fraud[18] and bankruptcy fraud.  Amended

Complaint, ¶¶ 249-256.  Before determining if the Amended Complaint implicates

Ravinder Chawla, the Court will first review the pleading standard applicable to each

predicate act.

*Pleading Standards*
*for Predicate Acts*

Where, as here, Plaintiffs rely, *inter alia*, on a series of fraud-based predicate

acts (mail, wire, and bankruptcy) as a basis for a RICO violation, those allegations must

meet a heightened standard.  Consistent with Federal Rule of Civil Procedure 9(b),

allegations of fraud must be pleaded with specificity.  *See Saporito v. Combustion*

*Engineering*, 843 F.2d 666, 673 (3d Cir. 1988).  In order to satisfy Rule 9(b), plaintiffs

must plead with particularity "the 'circumstances' of the alleged fraud in order to place

the defendants on notice of the precise misconduct with which they are charged, and to

---

[18]As the Court pointed out in the April 2007 Opinion, tax fraud is not a racketeering
activity recognized under RICO.  *See* 365 B.R. at 550 n.6.  The law today remains the same.

safeguard defendants against spurious charges of immoral and fraudulent behavior."

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984).

Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the

fraud, or through "alternative means of injecting precision and some measure of

substantiation into their allegations of fraud." *Id.* (holding that a plaintiff satisfied Rule

9(b) by pleading which machines were the subject of alleged fraudulent transactions

and the nature and subject of the alleged misrepresentations).  Plaintiffs also must

allege who made a misrepresentation to whom and the general content of the

misrepresentation. *See Saporito,* 843 F.2d at 675; *Rolo v. City Investing Co. Liquidating*

*Trust,* 155 F.3d 644, 658-59 (3d Cir.1998); *Klein v. General Nutrition Co., Inc.,* 186 F.3d

338, 345 (3d Cir.1999); *see also First Capital Asset Mgmt, Inc. v. Satinwood, Inc.*, 385

F.3d 159, 178 (E.D.Pa. 2004) (requiring RICO violation based on bankruptcy fraud to be

pleaded with heightened particularity); *see also Lum, supra,* (requiring mail and wire

fraud-based RICO claim to be subject to Rule 9(b) pleading standard).

In addition to mail and wire fraud, the Amended Complaint also pleads the

predicate acts of money laundering (18 U.S.C. § 1956), dealing in counterfeit goods

and services (18 U.S.C. § 2320), and interstate transportation of misappropriated

property (18 U.S.C. § 2314).  While all three of these crimes connote some element of

dishonesty, they do not necessarily involve fraud per se.  So, as a general matter, they

would be subject to the general notice pleading standard.  *Rose v. Bartle*, 871 F.2d

331, 356 (3d Cir. 1989) ("Thus, the suggestion that '[a] charge of racketeering, with its

implications of links to organized crime, should not be easier to make than accusations

17

of fraud" appears unwarranted.'")  For that reason, each would not be subjected to the

higher pleading standard required of fraud.  *See Republic of Colombia v. Diageo North*

*America, Inc.*, 531 F.Supp.2d 365, 382 (E.D.N.Y. 2007) (holding that charge of money

laundering need not satisfy rule 9(b)); *see Muscle Tech Research and Dev., Inc., v.*

*East Coast Ingredients, Inc.,* 2004 WL 941815 *19 (W.D.N.Y.) (holding that claim of

trading in counterfeit goods need only meet rule 8(a)(2) notice pleading standard); and

*see Perlman v. Zell*, 938 F.Supp. 1327, 1349 (N.D.Ill.1996) (holding that crime of

interstate transportation of another's property subject to notice pleading standard).

Having determined what the Amended Complaint must state to survive dismissal,

the Court now turns its attention to its contents.

*Predicate Acts and*
*Ravinder Chawla*

Certainly, the amendment is replete with allegations that Pratpal Bagga engaged

in predicate acts; it was to his companies that the original loans were made.  But it is

the conduct of Ravinder Chawla and his companies which is at issue.  Plaintiffs insist

that he is implicated in mail fraud, money laundering, trading in counterfeit goods and

bankruptcy fraud both before Plaintiff FL Trust became a party in interest as well as

after.

The Court begins with mail fraud which, again, must be pleaded with some

precision.   The sole artifice that Mr. Chawla is alleged to have engaged in involves a

letter which he wrote in April 2001.  The letter was addressed to Mr. Bagga and

explained why Mr. Chawla's company, World Apparel, could not pay Mr. Bagga's

company, AMCI.  Mr. Bagga's company had placed an order with World Apparel which, according to this letter, could not be filled due to circumstances beyond Mr. Chawla's control.   That, in turn, adversely affected AMCI's revenue which was how Mr. Bagga was apparently intending to repay the FL Trust loan.  ¶¶ 96, 102-104

Standing alone, however, the letter by every outward appearance is benign.  The letter explained that World Apparel was in default with its secured lenders and that those lenders "were looking to its inventory and other assets for recovery."   Plaintiffs argue that the letter does not disclose that both World Apparel and AMCI had been sued by Nike and Adidas for selling counterfeit clothing and that World Apparel had gone out of business.  ¶ 103.  Neither, Plaintiffs go on, does the letter disclose the source of the money which World Apparel lost.  ¶ 104.  But that does not make the writing itself misleading, let alone inaccurate.  Being in default and having creditors seize collateral is not necessarily inconsistent with being sued or having gone out of business.  Likewise, the identity of World Apparel's lender has nothing necessarily sinister to do with World Apparel's inability to fill an order placed by AMCI.  In short, the Court finds nothing which it can reasonably infer to be false or misleading about the contents of the letter in question.  As a result, Court is constrained to conclude that the amendment fails to plead mail fraud with the specificity required for alleging it as a RICO predicate act.[19]

---

[19]That is not to say, however, that Mr. Bagga may not have gone on to use that letter to deceive his lenders.  Indeed, the amendment is replete with allegations that *he* presented the letter to his lenders.  That alone, however, does not plausibly suggest that what Mr. Chawla

(continued...)

The amendment, of course, charges Ravinder Chawla with other predicate acts—money laundering, trafficking counterfeit goods, and bankruptcy fraud. Of the three, the first two are subject to a lower pleading threshold; the third, fraud on the bankruptcy court, requires heightened specificity like the other fraud-based predicates. For that reason, the Court can easily dispose of any claim that bankruptcy fraud is sufficiently alleged as to Ravinder Chawla. The allegations of impropriety in the bankruptcy cases in question never even mention Ravinder Chawla. They exclusively give Hardeep Chawla the active role. It is *Hardeep* Chawla's involvement in Sant Properties and the alleged filing of fraudulent claims that makes up that alleged predicate act. *See* Amended Complaint, ¶¶ 160-169, 194-202. Hardeep Chawla, however, is not a defendant as to Count I. Plaintiffs' attempt to broadly implicate Ravinder Chawla in bankruptcy fraud fails. As Defendants accurately point out, it is here where the Amended Complaint is especially vague, collectively joining Ravinder Chawla with the other individual defendants. The allegations never mention his name or distinguish his conduct. There is, then, no sufficient allegation of bankruptcy fraud as to Ravinder Chawla.

The same analysis cannot be employed for either of the money laundering or counterfeit trafficking charges. For, again, these two predicates require no more than notice pleading. Plaintiffs need only inform Mr. Chawla generally of how he is supposed to have committed those acts. As to money laundering, a person is guilty of the

---

[19](...continued)
wrote was fraudulent.

offense if he or she:

> [ ] knowing that the property involved in a financial
> transaction represents the proceeds of some form of
> unlawful activity, conducts or attempts to conduct such a
> financial transaction which in fact involves the proceeds of
> specified unlawful activity-
> ...
> (B) knowing that the transaction is designed in whole or in part
>
> (i) to conceal or disguise the nature, the location, the
> source, the ownership or the control of proceeds of specified
> unlawful activity ...

18 U.S.C. § 1956(a)(1)(B)(i). The Baggas and the Chawlas are alleged to have

knowingly transferred proceeds from their trafficking in counterfeit goods to each other

as well as to other enterprise members. ¶ 252. As to Ravinder Chawla, it is specifically

alleged that he received $150,000 from the original loan from Captec. That money was

supposed to pay for restaurant equipment and for construction loans. Instead, at least

$1.3 million is alleged to have ended up with a different Bagga company (Brand Trade)

where it was disbursed to Mr. Chawla and others. ¶¶ 50, 54-56. All of this sufficiently

states a claim that Ravinder Chawla engaged in money laundering.

The last racketeering act directed toward Ravinder Chawla is trafficking in

counterfeit goods. 18 U.S.C. § 2320(a) The elements of such a claim include (1)

trafficking or attempting to traffic in goods or services; (2) doing so intentionally; (3)

using a counterfeit mark on or in connection with such goods and services; and (4) with

knowledge that the mark was counterfeit. *Dolgosheev v. U.S. Cit & Immig. Svs*, 2008

WL 2950766 *9 (W.D.Pa.). It is alleged that Mr. Chawla's company World Apparel and

Mr. Bagga's company AMCI knowingly sold counterfeit clothing via a mail fraud scheme.

¶ 251.  This is alleged to have occurred in 1999 - 2001.  The two companies were sued

for it by Nike and Adidas in October 2000.  ¶¶ 82,92.  That is the extent of the

allegations in support of the counterfeiting claim.  As minimal as these allegations are,

they do inform the Defendant of what he was supposed to have done and that he

knowingly did it.  Under a general notice pleading standard, this is enough.

Having found that the Amended Complaint pleads at least two racketeering

activities, the Court turns to the question of whether it was part of a pattern.

*What Constitutes a Pattern*
*for Purposes of RICO?*

There is no specific definition of the term "pattern" in the statute.  The closest it

comes is in its definition of "pattern of racketeering activity." That is defined as

> at least two acts of racketeering activity, one of which
> occurred after the effective date of this chapter and the last
> of which occurred within ten years (excluding any period of
> imprisonment) after the commission of a prior act of
> racketeering activity;

18 U.S.C. § 1961(5).  This definition has been held to "state a minimum necessary

condition for the existence" of a "pattern." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492

U.S. 229, 237, 109 S.Ct. 2893, 2899 (1989)  The Supreme Court emphasized that

allegations cannot constitute a RICO "pattern" unless they show that the racketeering

predicates are *related*, and that they amount to or pose a threat of *continued criminal*

*activity.*" *H.J. Inc.,* 492 U.S. at 239 ); *see also Kehr Packages, Inc. v. Fidelcor, Inc.,* 926

F.2d 1406, 1417 (3d Cir.1991) (emphasis added) (*citing H.J., Inc., supra* to require

RICO plaintiff to plead that predicate acts were related and that they amount to or pose

22

the threat of continuing criminal activity to sufficiently allege pattern requirement); *see also Tabas v. Tabas,* 47 F.3d 1280, 1303 (3d Cir.1995) ("Thus, a plaintiff seeking to bring a RICO claim must allege, among other things, relatedness and continuity")  Both tests are fact-specific.  *Kehr, supra, id*.

*Relatedness*

The Supreme Court has adopted a broad multi-factor test for relatedness.  It focuses on whether the alleged predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc*. at 240, 109 S.Ct. at 2901 (quoting Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98-473, tit. II, § 212(a)(2), 98 Stat.1987).   Does the Amended Complaint allege a nexus among Ravinder Chawla's predicate acts?

The Court finds that it does.  Mr Chawla and his company World Apparel are charged with having laundered proceeds from the original Captec loan.  ¶¶ 54-56 Similarly, World Apparel is accused of having laundered money made from the sale of counterfeit clothing.  ¶¶ 251-252  While the victims and methods are different (Captec/FL Trust versus Nike/Adidas; money laundering versus counterfeiting) the purposes and results are the same: to wrongfully obtain or convert the property of another.

*Continuity*

But relatedness of the predicates is only half of what is required.  It must also be

23

shown that the predicates themselves amount to, or that they otherwise constitute a

threat of, *continuing* racketeering activity. *H.J. Inc., supra*, 492 U.S. at 240, 109 S.Ct.

at 2901. In the April 2007 Opinion, this Court discussed the Third Circuit's

interpretation of the RICO continuity requirement. The Third Circuit explained that the

continuous nature of the pattern could be either open or closed-ended. *See Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412-13 (3d Cir.1991). In its April 2007

Opinion the Court found only closed-end continuity to have been sufficiently pleaded.

But that ruling applied to a motion filed by *all* of the Defendants. Here the Court's

scope is narrower: the amendment must plead continuity as to the acts of Ravinder

Chawla.

    The Amended Complaint alleges generally that the predicate acts are continuous

in that they have extended over more than a three-year period. ¶ 261. Plaintiffs also

see a threat of future racketeering activity — again, stated as to no particular

defendant— given Defendants' failure to have abated their fraud, repeated diversion

and concealing of assets and general hindrance of recovery efforts. *Id*. ¶ 262. There is

however, nothing specific alleged involving Ravinder Chawla as to ongoing

racketeering. Although the amendment adds a new section entitled "Transfers after

September 2002," these allegations almost entirely involve the Baggas and *their*

companies. ¶¶ 203-220. After that comes another new section entitled "Transfer of

the $6.685 million Judgment in 2006." It discusses World Apparel's name change to

World Acquisitions Partners Corp. It goes on to discuss Mr. Bagga's sale of the $6.685

million judgment to Sant Properties for $1.2 million which would in turn be paid over to

the Export Import Bank.  ¶¶ 221-229.  But not only is there no involvement of Ravinder

Chawla in these allegations, the operative facts themselves fail to allege a racketeering

act.  Ravinder Chawla's alleged racketeering, in other words, does not appear (that is to

say, is not sufficiently pled) to extend beyond the money laundering and counterfeiting

discussed above.  For this reason, the Court does not find "open-ended" continuity on

Mr. Chawla's part.

    That leaves the Court to determine whether there are alleged predicates to

support a claim of "closed-end" continuity.  While there is no indication of *ongoing*

fraud, continuity may be demonstrated where what is alleged to have occurred

transpired over a considerable time period.  This matters because the Supreme Court

has interpreted continuity in this context as fundamentally a temporal concept.  *H.J.,*

*Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902.  Continuity, of course, does not necessarily

connote perpetuity and the two dimensions are not to be confused. *Id.; see also Hindes*

*v. Castle*, 937 F.2d 868, 873 (3d Cir. 1991) ("Duration is the sine qua non of

continuity.") In the instant case, what is alleged are two instances of racketeering

activity.  The first in time is the alleged sale of counterfeit clothing over a two year

period.  ¶¶ 82, 251.  The second involves laundering of some of the proceeds from the

Captec loan to the Bagga Companies.  ¶¶ 56, 252.  These do not strike the Court as

*continuous* so much as *episodic*.  Unlike what is alleged as to the Baggas, what is

alleged as to Ravinder Chawla are particularized, one might say *isolated*, occurrences.

There is a "stringing together" of disparate acts here which does not hold up under

scrutiny.  In sum, the Court does not find that the amendment alleges the necessary

25

"closed-end" continuity.

*Causation and*
*Ravinder Chawla*

Even assuming that continuity was sufficiently pled, the Plaintiffs would have to show that it sustained damages as a result of *Ravinder Chawla's* racketeering. And it is here that the Court turns specifically to the standing issue upon which the Chawla Defendants so steadfastly rely. The statute provides that "[a]ny person *injured* in his business or property *by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district court …" 18 U.S.C. § 1964(c) (emphasis added). To be a "person injured ... by reason of a ... [RICO] violation," a plaintiff must allege that his harm was proximately caused by that violation; "but for" causation is insufficient. *See Holmes v. SIPC,* 503 U.S. 258, 268, 112 S.Ct. 1311, 1317 (1992). What is required, then, is "some direct relationship between the injury asserted and the injurious conduct alleged." *Id*

As to Ravinder Chawla, the racketeering acts which the amendment implicates him in are money laundering and selling counterfeit clothing. But the alleged money laundering occurred at the expense of Captec, while the alleged counterfeiting harmed Nike and Adidas. Neither of those offenses are the genesis for any resulting damages which Plaintiffs claim to have suffered. The Trust attempts to set forth a claim of "hindering and delaying" collection efforts on Ravinder Chawla's part. This is based on bankruptcy fraud, but the Court has already found that such a claim fails to implicate Ravinder Chawla with the degree of specificity required of fraud-based causes of

action.[20]  Thus, even assuming that the amendment sufficiently alleged racketeering on

Ravinder Chawla's part, there is, nevertheless, no nexus between that alleged conduct

and the harm alleged to be suffered by the Plaintiffs.  In sum, the RICO claim against

Ravinder Chawla is legally insufficient.

*Count II - Conspiracy
to Violate RICO*

The second count of the Amended Complaint alleges a conspiracy to violate the

RICO statute.  Unlike Count I, however, it is brought against *all* of the Chawla

Defendants.  Both Ravinder and Hardeep Chawla, as well as the defendant companies

they control, have moved to dismiss this count.  They assert three reasons as to why

this count is insufficient: first, that it fails to allege an underlying RICO violation;

second, that  it fails to allege agreement among would-be conspirators; and third, that

it does not allege that Hardeep Chawla, H.B. Properties, Inc. or H.B. Properties, LLP

took part in the conspiracy.  *See* Defendants' Brief, 43-51; Reply Brief, 21-22.

In order to properly address the viability of the count, the Court must first

ascertain that which must be pleaded and with what degree of specificity.  Section

1962(d) of RICO makes it unlawful to conspire to violate [section 1962(a), (b), or (c)].

As this Court's April 2007 Opinion observed, liability under § 1962(d) is governed by the

general principles of conspiracy law.  *See* 365 B.R. at 553 *citing Smith v. Berg*, 247 F.3d

---

[20]It also makes moot the Chawla Defendants' emphasis on the amendment's new date
from which the Debtor corporations can be considered insolvent.  Defendants' Brief, 6-7; Reply
Brief, 3.  That condition simply has nothing to do with whether the Chawlas harmed the Plaintiff
FL Trust.

532 (3d Cir. 2001)  The elements which must *pleaded* to allege a RICO conspiracy claim

are (1) an agreement to commit the predicate acts of fraud, and (2) knowledge that

those acts were part of a pattern of racketeering activity conducted in such a way as to

violate § 1962(a), (b), or (c).  *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) *citing*

*Odesser v. Continental Bank,* 676 F.Supp. 1305, 1312 (E.D.Pa.1987). "[A]llegations of

conspiracy are not measured under the ... [Fed.R.Civ.P.] 9(b) standard, which requires

greater particularity of allegation of fraud, but are measured under the more liberal ...

[Fed.R.Civ.P. 8(a) ] pleading standard." 676 F.Supp. at 1313. A conspiracy claim must

also contain supportive factual allegations.  *See Black & Yates, Inc. v. Mahogany Ass'n,*

*Inc.,* 129 F.2d 227, 231-32 (3d Cir.), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed.

539 (1942).  The allegations must be sufficient to "describe the general composition of

the conspiracy, some or all of its broad objectives, and the defendant's general role in

that conspiracy." *Alfaro v. E.F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1117-18.  A

conspiracy complaint "must contain sufficient information for the court to determine

whether or not a valid claim for relief has been stated and to enable the opposing side

to prepare an adequate responsive pleading."  Wright & Miller, *Fed. Prac. & Proc. Civ.*

*3d* § 1233.  "'Although mere inferences from the complaint are inadequate to establish

the necessary factual basis', a court may look to any 'factual allegations of particular

acts' within the complaint as a whole incorporated by the conspiracy claim to provide

this basis." *Rose, supra*, 817 F.2d at 366 (citations omitted); *see also Swiggett v. Upper*

*Merion Twp.*, 2008 WL 4916039 *3 (E.D.Pa.) *quoting Rose, supra*, ("Only allegations of

conspiracy which are particularized, such as those addressing the period of the

conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators

taken to achieve that purpose, will be deemed sufficient.")[21]

*Agreement on the Part
of the Chawla Defendants*

The Court begins its analysis with a determination of whether it is alleged that

one or more of the Chawla defendants agreed to participate in a conspiracy to commit

predicate acts.  Within Count II it is alleged that Mr. and Mrs. Bagga and *Ravinder*

Chawla[22] *agreed* to conduct the affairs of the Bagga Chawla Enterprise through a

pattern of racketeering activity.  ¶ 265.  It is next alleged that *Hardeep* Chawla and

each of the entity ("corporate") Defendants also *agreed* with one or more of the Baggas

and Chawlas to violate section 1962(c) …" ¶ 266.  That is as specific as the allegations

*within* Count II get.  The preceding allegations (of Count I)—all of which are

incorporated by reference—do not specifically identify an agreement on the part of any

the Chawla Defendants, but that comes as no surprise.  "Smoking gun" type of

evidence in this context is rarely present.  Hence, the rules of civil procedure do not

require it at the pleading stage.  Instead, what is sufficient are allegations of conduct

that allow an inference that acts were done pursuant to an agreement.

As to Ravinder Chawla, the amendment implicates him in money laundering: he

---

[21]Although neither party mentions it, nothing about the *Twombly* decision changes this
standard.  Indeed, the Court sees the rationale of the Third Circuit in *Bartle* as consonant with
*Twombly*.  While the conspiracy claim is not required to meet the Rule 9 fraud standard, the
need to provide supporting facts constitutes the "plausibility" and "heft" which the High Court
spoke of in *Twombly*.

[22]Curiously, Hardeep Chawla is not mentioned in this paragraph notwithstanding that the
count is direct at *all* defendants.

is accused of having taken for his own benefit some of the Captec loan proceeds.  ¶ 56.
That money was supposed to pay for equipment and to finance construction loans.  It
is reasonable to infer that this allegation, taken as true, would not occur without
design.  In other words, consent to Mr. Bagga's defrauding of Captec was implicit.  The
same can be said of World Apparel, the company Mr. Chawla owns. It is charged with
trafficking in counterfeit clothing with AMCI, Mr. Bagga's company.  ¶ 82.  Again, that is
something that is not undertaken without some planning.

As to Hardeep Chawla, the amendment offers examples of agreement with the
other individual defendants to violate RICO.  On behalf of Sant Properties, he tendered
an offer to Captec that would have satisfied what the Bagga companies owed it.  The
tender price, however, offered no more than one half of the book value of those
companies.  That offer, the amendment explains, was collusive: In particular, it was
never disclosed to the lender that Mr. Bagga and Hardeep Chawla were cousins.  By its
very nature, collusion requires some prior understanding.  This would apply equally to
the alleged filing of a fraudulent proof of claim in the Welcome Group bankruptcy.  Like
Ravinder Chawla's money laundering and counterfeit goods trafficking, Hardeep
Chawla's collusion and bankruptcy fraud are sufficiently alleged to have been the result
of a prior understanding.

The same cannot be said, however, with regard to the Defendants HB
Properties, Inc. and HB Properties, LLP.  These two corporate defendants are controlled
by Hardeep Chawla.  The Chawla Defendants maintain that the Amended Complaint
expressly refers to them but three times.  They are identified as defendants; their

30

business is described as real estate; and they are said to have been owed money from

the Bagga Companies, which should have been disclosed (but was not) to Captec in the

original loan application.  Defendants' Brief, 49 citing Amended Complaint, ¶¶ 32, 33,

and 43.[23]  Two other paragraphs mention the HB Defendants along with two non-party

entities referred as HBK Properties and HBF Properties.  *Id*. ¶¶ 127(c), 140.  Each is

alleged to be one of the HB Entities and each is supposed to have received payments

from other Defendants in the case.  There is no explanation, however, of how the

briefly described "conduct" of either of the HB Defendants was culpable.  Neither does

the Amended Complaint allege a state of mind suggesting a conspiracy.  As a result,

the Court finds that this count fails to state a RICO conspiracy claim against either HB

Properties, Inc. or HB Properties, LLP.

*The Required*
*Mental State*

    While a RICO violator must have agreed with his co-conspirator, he must also

have known at the time of the conspiracy that he would be engaging in racketeering.

*See Rose, supra*, 871 F.2d at 367 (noting that conspirator must have knowingly

furthered the enterprise's affairs).  This second element—*mens rea*— is what the

amendment must establish as to the individual Chawla Defendants.[24]  Here, again, the

---

[23]For their part, Plaintiffs never respond to this particular argument.

[24]Although the corporate Defendants are fictitious entities and therefore, possess no
independent knowledge, they are charged with what their fiduciaries know.  *See* 15 P.S. § 512
(stating that the individual officers are fiduciaries of the corporations they control);  *See Romy
v. Burke*, 2005 WL 280861 *3 (Pa.Com.Pl) (fiduciaries are agents of their corporation); *Kinney
v. Sun Oil Co.*, 437 Pa. 80, 90, 262 A.2d 128, 132 (Pa.1970) (explaining that knowledge of a
                                                                                (continued...)

specific allegations within the count are conclusory: the "defendants knowingly took steps in furtherance of the conspiracy" and "knowingly undertook the commission of acts that did or would … constitute a pattern of racketeering activity."  ¶¶ 267-268.  It is the incorporated allegations which precede this count which shed the only light on what the Chawla Defendants allegedly knew.  These sufficiently allege that deliberate acts of both Hardeep and Ravinder Chawla were not done without a purpose.  By taking money intended for the Bagga Companies for himself and by selling counterfeit clothing, Ravinder would perforce know that he was furthering the alleged enterprise.  Likewise, by colluding with a cousin to buy out the lender at a steep discount, and by filing a fraudulent bankruptcy claim, Hardeep Chawla would likewise know that this would frustrate FL Trust's recovery efforts.  The required mental state of both individual Defendants is thus sufficiently alleged.

*Injury and the RICO
Conspiracy Claim*

Notwithstanding, to survive the same fate that befell the substantive RICO claim, the Plaintiffs must demonstrate that it was harmed as a result of the conspiracies.  RICO injury must be the proximate result of the racketeering; any harm that is attenuated or indirect will not suffice.  Once again, FL Trust cannot claim that it was harmed by the money laundering and counterfeit trading of Ravinder Chawla: others were the victims of those acts.  The case is less clear as to Hardeep Chawla's conduct.

---

[24](...continued)
corporate agent must be imputed to the corporation).

Certainly, FL Trust was not harmed by the collusive offer from Sant Properties because the offer was never accepted.  On the other hand, there is arguably damage resulting from Sant Properties' alleged fraudulent proof of claim in the Welcome Group Bankruptcy.  The amendment explains that this resulted in no distribution to FL Trust on its claim in that case.  But that premise cannot be taken at face value: no facts are pleaded which address the possibility that FL Trust would have received nothing in the case (as the Chawla Defendants maintain) regardless of what Hardeep Chawla might have done.  It must be remembered that the racketeering predicate is based in fraud (specifically, bankruptcy fraud) so more is required to demonstrate that FL Trust was harmed by the allegedly groundless proof of claim.  Because there is nothing more offered in that regard,[25] the Court finds the amendment fails to sufficiently allege injury.  As a result, the RICO conspiracy claim must be dismissed.

*Common Law Fraud*

Count IX of the Complaint alleges that Mr. Bagga and Ravinder Chawla are liable for common law fraud and civil conspiracy to commit fraud.[26]  The Chawla Defendants challenge this count on three bases: first that the *conspiracy to defraud* claim is stale; second, that FL Trust lacks standing; and third that the allegations are legally insufficient.  *See* Defendants' Brief, 51-59.   The Plaintiffs respond first by relying on

---

[25]The docket reflects that the Welcome Group bankruptcy is closed.  *See* Case # 03-16369.  As to recovery, the Trustee in that case concluded that there would be no distribution to creditors.  *See* Docket # 158.

[26]Previously, the count was limited to fraud.

the relation back provision of the applicable procedural rule of amendment.  Second,

they rely on proof that the underlying fraud claim was assigned to the Plaintiff Trust by

Captec.  Third, they specifically refute the Defendants' premise that the Plaintiffs'

allegation implicating Ravinder Chawla in the fraud is made upon information and

belief.  Plaintiffs' Brief, 45-50.

*Is the Conspiracy*
*Claim Time-Barred?*

Defendants' limitations argument is based on 42 P.S. § 5524(7).  That statute

provides for a two-year statute of limitations for tort claims such as fraud.  Case law

has expanded that universe of claims to include conspiracy to commit those torts.

*Parker v. Learn the Skills Corp.*, 2006 WL 2228867 (E.D.Pa.); *Cavalier Clothes, Inc. v.*

*Major Coat Co.*, 1991 WL 125179 *3 (E.D.Pa. 1991) If there were nothing more to it

than that,  disposition of the matter would be simple: The conspiracy to defraud claim

was filed in 2008, which is more than two years after the cause of action is said to have

accrued.  As a result the claim would be out of time.

But Plaintiffs rely on the rule of procedure which allows an otherwise untimely

amendment to relate back to one which was filed within the limitations period: "An

amendment to a pleading relates back to the date of the original pleading when: … (B)

the amendment asserts a claim or defense that arose out of the conduct, transaction,

or occurrence set out--or attempted to be set out--in the original pleading."  F.R.C.P.

15(c)(1)(B).  The Third Circuit has held that an amended complaint relates back when

the "amendments ... restate the original claim with greater particularity or amplify the

factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading .... In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings." *General Motors Corp v. Schneider Logistics, Inc.*, 2008 WL 2785861 *5 (E.D.Pa.) *quoting Bensel v. Allied Pilots Ass'n.*, 387 F.3d 298, 310 (3d Cir.2004). When determining whether a common core of operative facts exists, the court looks at "whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Id.* (citing *Michelsen v. Penney,* 135 F.2d 409, 416-17 (2d Cir.1943)).

Here, it would be disingenuous of Ravinder Chawla to maintain that the original fraud claim did not already inform him of what might be involved in a conspiracy to commit fraud count. The latter is derivative of the former. All that is added is the agreement to defraud. Given that this count was previously brought against both Mr. Chawla and Mr. Bagga some cooperation between the two bordering on agreement must be assumed. In other words, Ravinder Chawla is hard put to argue that he is the victim of unfair surprise in being subjected to the conspiracy amendment. The Court thus rejects this argument.

*Plaintiffs' Standing
and the Fraud Claim*

Defendant's next challenge to the fraud claim is that the Plaintiffs lack standing. Defendants rely here on the Court's February 2008 ruling which granted partial summary judgment in the Chawla Defendants' favor as to Counts I and II of the original complaint. As explained, *supra*, that ruling held that the Plaintiff FL Trust

35

lacked standing to raise RICO causes of action.  The corollary to this ruling, Defendants

say, is that the Plaintiffs lack standing to raise *any* legal claim—other than

contract—against them.  Chawla Defendants' Brief, 54-55.  They point to New York

case law—controlling in this instance—which requires fraud-based claims to have been

expressly assigned before an assignee may sue on them.  *Id.*, 55.  Plaintiffs respond

that this Court has already found that evidence in the record supports the fraud and

conspiracy to defraud claims against Ravinder Chawla.  Plaintiffs' Brief, 48, citing ruling

denying reconsideration on partial summary judgment and granting leave to amend,

392 B.R. 169-170.

While the Court's February 2008 finding that Captec did not assign any legal

claims disposed of the pending RICO claims, that determination did not automatically

eliminate the fraud count.  This was something which the Court acknowledged (and the

only thing it intended to acknowledge) when it granted leave to amend in April 2008.

As a result, it was incumbent upon FL Trust to amend its pleading to state that legal

claims *had*, in fact, been assigned; otherwise, the fraud claim would perforce share the

fate of the RICO counts (i.e., dismissal).  This Court has closely reviewed the Amended

Complaint to confirm how the pleading has been altered in this respect.  Nowhere does

the amended pleading state that Captec intended to assign its legal claims, along with

the loans, to FL Trust in September 2002.  There is reference made to the assignment

as well as the operative documents (*see, e.g.*, ¶¶ 8-10), but it is not alleged that legal

claims were part of the bargain.[27] Given the Court's previous ruling regarding the

limited extent of what was assigned in September 2002, the matter is settled and will

not be revisited here.  The implication of this for FL Trust is that, just like the RICO

claims, there is no discernible standing on its part to make out a claim of common law

fraud based on conduct which preceded the assignment.  Conversely, where allegations

of the Amended Complaint sufficiently make out a fraud claim for conduct which post-

date the assignment, then such claims (but only such claims) will survive.

*Substance of the Fraud
and Conspiracy Claims
as to Ravinder Chawla*

Turning to the legal sufficiency of such claims, the Court observes that the fraud

and conspiracy to defraud claims are leveled against both Mr. Bagga and Ravinder

Chawla.  While the count consists of eleven paragraphs, Mr. Chawla's name does not

appear until the tenth.  There, it is alleged that he "agreed" with Mr. Bagga to

fraudulently induce Captec to extend loans; that he provided the false invoices from

SJM Trading[28] upon which the loans were based; that he caused SJM to endorse the

checks from Captec; and that he accepted the proceeds of those loans.   ¶ 313.  All of

this, however, involves conduct which predates the September 2002 assignment.  In

---

[27]This is curious given that FL Trust made an offer of proof in its Motion for Leave to Amend that Captec, indeed, intended all along to assign its legal claims to the Plaintiff Trust. *See* 392 B.R. at 169.  For whatever reason, the Amended Complaint never alleges Captec's intention to have assigned legal claims, or that it did so.  And the Plaintiff Trust, of course, never commenced appropriate legal proceedings to "reform" its transaction documents consistent with the contentions it has made concerning them.

[28]The loans were purportedly obtained to finance the purchase of equipment for Mr. Bagga's restaurants.  The SJM invoices would have listed the equipment to be purchased.

other words, it was still Captec who was the victim of that artifice.  As a result, and for

all of the reasons this Court has by now repeatedly articulated, Plaintiffs lack standing

to press this claim.

For the same reasons, the conspiracy to commit fraud claim also fails.  To

reiterate, civil conspiracy requires "(1) a combination of two or more persons acting

with a common purpose to do an unlawful act or to do a lawful act by unlawful means

or for an unlawful purpose; (2) an overt act done in pursuance of the common

purpose; and (3) actual legal damage." *Chantilly Farms, Inc. v. W. Pikeland Twp.,* 2001

WL 290645 *13 (E.D.Pa.) (quoting *Smith v. Wagner*, 403 Pa.Super. 316, 322-23, 588

A.2d 1308, 1311-12 (Pa.Super.1991)); *see also Lum v. Bank of America,* 361 F.3d 217,

228 (3d Cir.2004) (explaining that conspiracy to commit fraud is subject to Rule 9(b)")

It is now alleged that Ravinder Chawla "agreed with Pratpal Bagga to fraudulently

induce the Loans, including the Equipment Loans to Bagga Enterprises."  ¶ 313.  He is

also alleged to have "provided the falsified SJM invoices and caused SJM to endorse the

Equipment loan checks to Brand Trade."  *Id.*  Finally, he is charged with having

"accepted proceeds of the Equipment Loans."  *Id*.  Like the fraud claim, all of this

conduct precedes the assignment from Captec thereby precluding FL Trust's right to

sue on it.

*Aiding and Abetting a*
*Breach of Fiduciary Duty*

Count XIV charges all of the defendants with aiding and abetting breaches of

fiduciary duties.[29]  The Chawla Defendants argue that this count fails for three main reasons: first, there is no underlying duty that was breached; second, it is not alleged that either Ravinder Chawla or Hardeep Chawla assisted or encouraged a breach; and third, the claim is otherwise time-barred.  Defendants' Brief, 59-65.

To establish the claim in question, a plaintiff must show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach.  *Adena, Inc. v. Cohn*, 162 F.Supp.2d 351, 357-358 (E.D.Pa.2001).  As a breach of fiduciary claim is subject to a notice pleading standard, *see In re Total Containment,* 335 B.R. 589, 611 (Bankr.E.D.Pa.), that standard will similarly govern a claim that one aided and abetted another breaching such duty.

*Timeliness of the*
*Aiding/ Abetting Claim*

The Chawla Defendants final challenge to Count XIV will be taken up first.  It is that the claim is stale.  Like the conspiracy to defraud count, they posit, a two year limitations period applies.  Defendants' Brief, 65.  That period has long since expired they conclude.  *Id*.  In the same way, Plaintiffs raise yet again Rule 15's relation back provision in response.  They point out that the acts which support aiding and abetting were first set forth in the District Court complaint.  Plaintiffs' Brief, 52.  Attached to

---

[29]The Court's April 2007 Opinion held that as a matter of law this cause of action would be recognized by the Third Circuit.  365 B.R. at 573.  That explains the Chawla Defendants' statement of their opposition to this count in the subjunctive: even if this states a cognizable legal claim, the Plaintiffs have failed to plead the requisite elements.

their Brief is a copy of that Complaint (Ex. 26).  They cite from it four paragraphs which they say appear essentially unchanged in this amendment.  From that they conclude that the Chawlas have been apprised of these allegations all along.

The Court is in agreement with the Plaintiffs.  While only one of the four paragraphs from the District Court complaint resembles what is now alleged to support aiding and abetting (the "surreptitious movement of cash" around the Bagga/Chawla Enterprise), that one example is the alleged Bagga/Chawla Enterprise in a nutshell: it borrowed money for a stated purpose, used the money for other reasons with no intention of paying it back, and frustrated every attempt at collection.   This is the factual basis of the RICO claims, as well as those which follow.  Any claim of surprise by the Chawla Defendants with regard to these allegations is totally disingenuous.

*What Underlying
Duty Existed*?

The Chawla Defendants' first substantive argument is broken down into two sub-parts: First, it is argued that because the Bagga companies were closely-held, there existed no duty between Mr.  Bagga[30] and his corporations.  Plaintiffs offer no response to the first argument and the Court, having found it well supported by the Chawla's Defendants' cited authority, considers it well made.  Second—and it is on this point that the parties contend— Mr. Bagga owed no fiduciary duty to creditors *before* his corporations became insolvent.

---

[30]The April 2007 Opinion found that only Mr. Bagga was a an officer or director of the Debtor corporations.  365 B.R. 570-571.  The amendment states the same.  *See* ¶¶ 13-15.

*Question of
Insolvency*

The parties do agree on the legal premise of the second point: The duty

between a corporation's owners and creditors arises upon insolvency of the corporation.

Defendants' Brief, 63; Plaintiffs' Brief, 50.  Where they disagree is on the point in time

at which the Debtor corporations became insolvent.  Plaintiffs see insolvency as early as

2000.  ¶¶ 288-290.  Within Count IV (Fraudulent Transfer) there are a number of

alleged instances of the Baggas diverting cash from the corporations thereby

compromising their financial state.  *Id.* ¶ 293.  For their part, Defendants identify a

number of allegations which demonstrate financial soundness until early 2003.

Profitability may be inferred for 2000 based on what is alleged in ¶ 59.  Similarly, it is

alleged that in misrepresenting the ability to repay Captec, Mr. Bagga hid the fact that

his companies were profitable during the years 2000-2002.  *Id.* ¶ 62.  It is also alleged

that but for the diversion of funds in December 2002, the Bagga Companies could have

serviced the Captec loan.  ¶ 76  Finally, it is alleged that while these entities "had

sufficient assets to pay their legitimate debts, Mr. Bagga refused to direct them to do

so."  *Id.* ¶ 78.  These being the Plaintiffs' own allegations, they circumscribe the time

period for which the Court may infer that the Bagga Companies were insolvent: to wit,

late 2002/early 2003 and thereafter.  Mr. Bagga's duty as a fiduciary *to the creditors* of

his companies arose during that time-period.

*Underlying Fiduciary Breaches*

Before determining if the amendment pleads aiding and abetting on the part of

41

the Chawlas, the Court must first ascertain whether it pleads *misconduct which was*, in

fact, *aided and abetted*.  The three counts which precede Count XIV plead examples of

fiduciary mis- or malfeasance: Self-Dealing (Count XI), Failure to Preserve Entity

Property (Count XII),  and Deepening Insolvency (Count XIII)  Of those three counts, it

is only Count XII which alleges a fiduciary failing which implicates the Chawlas and it

does so only in general terms.  There, the Baggas are supposed to have "transferred

funds to the Chawlas or the Chawla Companies" and to have "failed to collect funds

from the Chawlas or the Chawla Companies." ¶ 331.  That is as specific as the

allegations within the count get: there is no mention of when these transfers were

made or in what amount.  Likewise, as to the uncollected debt owed the Baggas, there

are no circumstance setting forth when the debt was incurred, the nature of the debt,

or the amount of such debt.  That information, to the extent it exists, is found in the

paragraphs which precede this count.

The second example of alleged aiding and abetting on the Chawlas part (failure

to collect funds) can be disposed of first.  It is alleged that this was part of the Bagga's

decision not to "collect funds from the Chawlas."  What exactly the Plaintiffs are

referring to here is hard to discern.  The Court observes that the pleading contains a

heading titled "December 2000 Loans to the Chawlas."  ¶¶ 82-92.  That conduct

predates the insolvency period and so it is seemingly irrelevant.  Likewise, there is an

allegation that AMCI (Mr. Bagga's company) never pressed World Apparel (Mr. Chawla's

company) for payment, but AMCI is not one of the Debtor corporations so that, too,

would not appear relevant.  *See* Amended Complaint, ¶ 39(i).  The Plaintiffs are entitled

to liberal notice pleading.  On the other hand, a pleading as large as this one must be

sufficiently structured to adequately inform a defendant of what the actionable conduct

was.  *See Horn v. Lee*, 2008 WL 345888 *1 (W.D.Va.) (explaining that Rule 8 does not

require "[t]he Court to pore through a scattershot complaint in search of a claim")

*Transfers to the Chawlas*
*While Debtors Insolvent*

The Plaintiffs fare better in alleging that the Baggas were transferring funds to

the Chawlas while the Debtor corporations were insolvent.[31]  The first allegation that

Mr. Bagga or his companies made transfers to either of the Chawla or their companies

during that time period is found in the section titled Concealment and Diversion of

Assets.  ¶¶ 142-144.  It begins with Mr. Bagga's skimming of cash receipts from his

restaurants and distributing them to the Chawlas and others.  *Id.*  This is alleged to

have been going on through mid-2003.  *Id.*  A second example of payments to the

Chawlas during this time period was added by the amendment.  The heading is titled

"Transfers after September 2002." It explains that following the assignment of the

Captec loan to FLTrust, the Baggas continued to transfer funds of the Debtors and

other Bagga Companies to themselves and the Chawlas at the expense of creditors,

including FL Trust."  ¶ 203.  Specifically, it is alleged that on November 5, 2002, United

---

[31]Again, because it is a *creditor* who claims to be harmed by a fiduciary's breach, the misconduct must either (i) have rendered the Debtor corporations insolvent or (ii) occurred when the Debtor corporations were already insolvent.  The Court has already identified the approximate date of insolvency as being at the end of 2002 or the beginning of 2003, and continuing thereafter.  For any alleged transfers to the Chawlas to be actionable, then, they must have occurred during that time.

issued a check to Sant Properties for $16,000 and that on December 16, 2002, United

issued another check to Sant Properties for $119,000.   ¶¶ 204-05.   That is the extent of

the allegations going to the Chawla Defendants receiving transfers from the Bagga

entities during late 2002 and thereafter.[32]   While not overwhelming, these allegations

clearly suffice for purposes of alleging that the Bagga companies breached a fiduciary

duty to their creditors.

*Elements of*
*Aiding or Abetting*

But that finding takes the claim only part of the way: to survive dismissal, Count

XIV must describe how any one of the Chawla Defendants is supposed to have "aided

or abetted" these breaches.   To reiterate, this requires the pleading of two elements:

first, that they knew of the fiduciary duty which the Baggas owed; and second, that

they substantially assisted or at least encouraged the Baggas in violating that

responsibility.   The required mental state is straightforward enough.   What constitutes

"substantial assistance and encouragement" is not.   Those terms have not been

specifically defined by Pennsylvania courts in this context.   However, in an analogous

context, they have been.   Pennsylvania law recognizes the tort of "concert of action."

*Charan Trading Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 2009 WL 81873 *8

(Bankr.D.Del.)   It derives from the Restatement of Torts and provides:

> For harm resulting to a third person from the tortious
> conduct of another, one is subject to liability if he

---

[32]That is not to say that the amendment does not allege other transfers to the Chawlas.
It does, but those other transfers predate the period of insolvency.

> (a) does a tortious act in concert with the other or pursuant
> to a common design with him, or
>
> (b) *knows that the other's conduct constitutes a breach of
> duty and gives substantial assistance or encouragement to
> the other so to conduct himself*, or
>
> (c) gives substantial assistance to the other in accomplishing
> a tortious result and his own conduct, separately considered,
> constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (emphasis added).  This is useful for present purposes because it has as its elements (knowledge, substantial assistance or encouragement) the same two found in aiding and abetting a fiduciary breach.  The Comment to Clause (b) of § 876 provides that "[i]f the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act."  This has been interpreted to mean that the aid must "proximately cause the violation." *Aetna Cas. and Sur. Co. v. Leahey Constr., Co.*, 219 F.3d 519, 537 (6th Cir. 2000) The Court finds these interpretations reasonable and will employ them to assess the sufficiency of what this count alleges.

*Allegations of
Aiding or Abetting*

As to knowledge, it is alleged that "[t]hose Individual Defendants who did not breach their own fiduciary duty had knowledge of the breaches of fiduciary duties by other Individual Defendants." Similarly, "the individual Defendants who did not breach their own fiduciary duty provided substantial assistance or encouragement to the

Individual Defendants" who did.  ¶ 338, 339.  For the Chawla Defendants, this is all

rather vague.  They argue that the count fails to inform at even the most basic level.

Defendants' Brief, 64-65.  The Court is inclined to agree.  From this "catch-all" style of

pleading, neither of the Chawlas can determine who is charged with the breaching of

fiduciary duties and who is guilty of aiding and abetting such breaches.  This matters

because, by definition, a defendant cannot both "breach" and "aid/abet" a breach in the

same instance.  Considering the volume of pleading preceding this count, it is not

unreasonable to require the Plaintiffs to inform each Defendant of his role in this count

and by now with some precision.  Inferences can be made from what is pleaded before

the count, but they take the Defendants only so far.  The Chawla Defendants are

entitled to know how each of them is alleged to have assisted in a breach of fiduciary

duties.  *Cf Sovereign Bank v. Valentino*, 914 A.2d 415, 422 (Pa.Super.2006) (holding

that a claim of concerted action cannot be established if the plaintiff is unable to

identify the wrongdoer *or the person who acted in concert with* the wrongdoer); *see

also Nelson v. DeVry, Inc.*, 2008 WL 2845300 *4 (E.D.Pa.) (dismissing concert of action

count where allegations lacked any description of how assistance was rendered)  For

that reason, this Count will be dismissed.

*John Doe Defendants*

The Chawla Defendants' last objection is to the continued inclusion of as yet

unnamed and undiscovered defendants to this litigation.  Defendants' Brief, 65-66.

Plaintiff makes no response to this argument.   Although F.R.C.P. 10(a)[33] requires that a

complaint name each defendant, the use of fictitious parties is an acceptable practice

until reasonable discovery permits the naming of the actual parties.  *Scheetz v. Morning

Call, Inc.,* 130 F.R.D. 34, 36-37 (E.D.Pa.1990).  Fictitious parties, however, must be

dismissed if discovery does not yield their identities.  *Brown v. New Hanover Township,*

2008 WL 4306760 *6 (E.D.Pa.)

    In this case, a great deal of discovery has already been undertaken.  There

nevertheless exists the real possibility that more will be need.  Before the Court is an

amended pleading which is being challenged for legal sufficiency.  At the hearing on

the Chawla Defendants' Motion to Dismiss the Amended Complaint, their counsel

explained that he would not be in a position to know if further discovery was needed

until he knew which claims survived his challenge.  *See* Transcript of Hearing,

December 4, 2008, 24-32.  The Court finds that point to be well-made and, for that

reason, concludes that any dismissal of unnamed defendants would be premature at

this juncture.

*Summary*

    To reiterate, after careful review of all of the various challenges to the Amended

Complaint, the Court concludes that Count I fails to state a RICO claim against Ravinder

Chawla; that Count II fails to state a RICO conspiracy claim against either Ravinder

Chawla, Hardeep Chawla or the corporations they control; that Count IX fails to state a

---

[33]Made applicable to adversary proceedings by B.R. 7010.

claim of either fraud or conspiracy to commit fraud as to Ravinder Chawla; and that

Count XIV fails to state a claim as to any of the Chawla Defendants.  As a consequence,

the dismissal motion will be granted in its entirety.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief, United States Bankruptcy Judge

Dated:   <u>March 5, 2009</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                                              : CHAPTER 7
                                                                   :
JAMUNA REAL ESTATE, LLC                                            : BANKRUPTCY NO. 04-37130
UNITED MANAGEMENT SERVICES, INC.                                   : BANKRUPTCY NO. 04-37132
BAGGA ENTERPRISES, INC.                                            : BANKRUPTCY NO. 04-37136
                DEBTOR(S)                      :
_____      :
MARVIN KRASNY, IN HIS CAPACITY AS CHAPTER 7                        :
    TRUSTEE OF UNITED MANAGEMENT SERVICES, INC.;    :
MARVIN KRASNY, IN HIS CAPACITY AS CHAPTER 7                        :
    TRUSTEE OF JAMUNA REAL ESTATE LLC;              :
GARY SEITZ, IN HIS CAPACITY AS CHAPTER 7                           :
    TRUSTEE OF BAGGA ENTERPRISES, INC.,             :
WILMINGTON TRUST COMPANY IN ITS CAPACITY AS                        :
    OWNER TRUSTEE OF FL RECEIVABLES TRUST           :
    2002-A AND FL RECEIVABLES TRUST 2002-A :
                PLAINTIFFS                    :
                VS.                           :
PRATPAL BAGGA; KHUSHVINDER BAGGA;                                  :
RAVINDER CHAWLA; HARDEEP CHAWLA;                                   :
WELCOME GROUP, INC.; K&P REAL ESTATE LLC;                          :
WORLD APPAREL PRODUCTS, INC. D/B/A/ SJM                            :
TRADING COMPANY, D/B/A TEN TIGERS; AMERICAN                        :
MERCHANDISE CO., INC., A/K/A AMERICAN                              :
MERCHANDISING CO.,INC.; 21ST CENTURY                               :
RESTAURANT SOLUTIONS, INC.; BRAND TRADE, INC.;                     :
H.B. PROPERTIES, INC.; H.B. PROPERTIES LLP;                        :
SANT PROPERTIES; JOHN AND JANE DOES AND                            :
ABC COMPANIES                                                      :
                DEFENDANTS                    : ADVS NOS. 06-128, 06-129, 06-130
_____

# <u>ORDER</u>

     **AND NOW**, upon consideration of the Motion of Ravinder Chawla, Hardeep

Chawla, World Apparel Products, Inc., Sant Properties, HB Properties, Inc., and HB

Properties, LLP (the "Chawla Defendants") to dismiss the Plaintiffs' Amended Complaint,

the Plaintiffs' Response thereto, the parties' briefs, after a hearing held December 4,

2008, and for the reasons set forth in the preceding Opinion, it is hereby:

**ORDERED,** that the Chawla Defendants' Motion is granted in its entirety and all

counts of the Amended Complaint which are directed at them are dismissed.

By the Court:

_____
Stephen Raslavich
Dated: <u>March 5, 2009</u>          Chief, United States Bankruptcy Judge

2

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for Plaintiffs
Lawrence J. Tabas, Esquire
Richard P. Limburg, Esquire
OBERMAYER REBMANN MAXWELL
& HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd
Philadelphia, PA 19103

Patrick E. Fitzmaurice, Esquire
THATCHER PROFFITT & WOOD LLP
Two World Financial Center
New York, NY 10281

Nicholas M. Centrella, Esquire
CONRAD O'BRIEN GELLMAN & ROHN, PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102

Counsel for Chawla Defendants
Paul C. Madden, Esquire
Richard M. Simins, Esquire
Jeffrey Carbino, Esqurie
BUCHANAN INGERSOLL & ROONEY
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985

Counsel for Pratpal Bagga
Mark B. Frost, Esquire
FROST & ZEFF
Pier 5 at Penn's Landing
Philadelphia, PA 19106

Andrew Teitelman, Esquire
LAW OFFICE OF ANDREW TEITELMAN
3103 Philmont Avenue, Ste 301
Huntingdon Valley, PA 19006