# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| JAMUNA REAL ESTATE, LLC | : BANKRUPTCY NO. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : BANKRUPTCY NO. 04-37132 |
| BAGGA ENTERPRISES, INC.          DEBTOR(S) | : BANKRUPTCY NO. 04-37136 |
| _____ | : |
| | : |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF UNITED | : |
| MANAGEMENT SERVICES, INC.; | : |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF JAMUNA REAL | : |
| ESTATE LLC; GARY SEITZ, IN HIS | : |
| CAPACITY AS CHAPTER 7 TRUSTEE OF | : |
| BAGGA ENTERPRISES, INC., | : |
| WILMINGTON   TRUST COMPANY | : |
| IN ITS CAPACITY AS OWNER TRUSTEE OF | : |
| FL RECEIVABLES TRUST 2002-A AND FL | : |
| RECEIVABLES TRUST 2002-A | : |
|          PLAINTIFFS | : |
| | : |
|          V. | : |
| | : |
| PRATPAL BAGGA; KHUSHVINDER BAGGA; | : |
| RAVINDER CHAWLA; HARDEEP CHAWLA; | : |
| ET AL. | : |
|          DEFENDANTS | : ADV NO. 06-128, 06-129 and 06-130 |
| _____ | |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Motion of Mr. and Mrs. Bagga to dismiss Counts I and II

of the Plaintiffs' Second Amended Complaint (the SAC).[1]  The Motion is opposed by the

Plaintiffs FL Trust and Wilmington Trust.  After a hearing held on April 22, 2010, the

Court took the matter under advisement.  For the reasons which follow, the Motion will

be granted in part and denied in part.

*Summary of Holding*

> Count I - RICO (Plaintiffs against Pratpal Bagga and Khushvinder Bagga)

> •     Basis for Contention: Pratpal and Khushvinder Bagga maintain that this
>       count fails to state a claim under RICO against them.

> •     Holding: The Motion will be granted as to Khushvinder Bagga because
>       Count I fails to state a substantive RICO violation on her part.  The Court
>       finds that Count I does state such a claim as to Pratpal Bagga.
> Count II - Conspiracy to Violate RICO (Plaintiffs against All Defendants)

> •     Basis for Contention: The Baggas maintain that Count I's failure to state a
>       claim against them means *ipso facto* that any RICO conspiracy claim must
>       likewise fail.

> •     Holding: As with Count I, the Court finds that Count II states a RICO
>       conspiracy claim only as to Pratpal Bagga.  The request for dismissal will
>       be granted as to Khushvinder Bagga.

*Grounds for Dismissal*

The Baggas' Motion is premised on F.R.C.P. 12(b)(6)[2]; to wit, that the SAC fails

to state a claim upon which relief can be granted.  Those deficiencies are alleged to be

---

[1]For the extensive prior procedural history of this proceeding, *see* 365 B.R. 540
(Bankr.E.D.Pa. 2007) (ruling on Defendant's Motion to Dismiss the original complaint ); 382 B.R.
263 (Bankr.E.D.Pa. 2008) (granting Chawla Defendants' Motion for Partial Summary Judgment
on RICO claims); 385 B.R. 127 (Bankr.E.D.Pa.2008) (denying Chawla Defendants' Motion for
Summary Judgment as to remaining claims); and 392 B.R. 149 (Bankr.E.D.Pa.2008) (denying
Plaintiff's motion for reconsideration of summary judgment as to RICO claims and granting
limited leave to amend complaint); 416 B.R. 412 (Bankr.E.D.Pa. 2009) (granting motion to
dismiss); and 2009 WL 5112008 (Bankr.E.D.Pa.) (granting, in part, Plaintiffs' motion for leave to
amend)

[2]Made applicable to adversary proceedings by B.R. 7012(b).

of a dual nature: a lack of standing on the Plaintiffs' part as well as a general failure to sufficiently plead the causes of action.[3]  Because standing has been described as the "irreducible constitutional minimum,"[4] it would at first blush seem obvious that it must be taken up first.  But the Court's March 5, 2009 Opinion observed that the essence of standing is injury.  In the context of RICO, a plaintiff must allege injury which has resulted from a violation of the statute: "Any person injured in his business or property *by reason of a violation of section 1962* of this chapter may sue therefor ..." 18 U.S.C. § 1964(c).  At bottom, where RICO is implicated this becomes a question of causation. What this means from a methodology standpoint is that the Court must analyze whether first a RICO violation occurred and, if so, then was the plaintiff harmed as a result of that violation.  The Court will address the standing question in this way.  *See Maio v. Aetna, Inc.,* 221 F.3d 472, 482 n. 7 (3d Cir.2000) (discussing similarity between standing analysis and RICO violation and resulting injury analysis).

*Standard Required*

---

[3]Like the Chawla Defendants, the Bagga Defendants have raised the issue of standing as a defense to all or part of the Plaintiffs' claims.  They refer, of course, to the Court's February 6, 2008 ruling on the Chawla Defendants' motion for summary judgment.  382 B.R. 263.  There, the Court found that the Plaintiffs' lacked standing to raise RICO claims for acts which occurred after FL Trust purchased the loans from Captec.  The upshot of that ruling was that if these plaintiffs' were to raise RICO claims, then such claims would have to be based on conduct which occurred on or after September 2002, the date Captec assigned the loans.  In other words, the Plaintiffs would have to demonstrate *independent*, as opposed to *derivative*, RICO standing.

[4]Article III standing requires that "the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Township of Piscataway v. Duke Energy,* 488 F.3d 203, 208 (3d Cir.2007) (citing *Trump Hotels & Casino Resorts v. Mirage Resorts,* 140 F.3d 478, 484-85 (3d Cir.1998)).

*for Stating a Claim*

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2008)); *see also Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009) (explaining that pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss). The Supreme Court explained that although factual allegations are to be accepted as true for purposes of legal sufficiency, the same does not apply to legal conclusions; therefore, the factual allegations must sufficiently support the legal claims asserted. *Iqbal,* 129 S.Ct. at 1949, 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Fowler,* 578 F.3d at 210; and *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008).

*Count I - RICO*

Against this background, the Court turns to the RICO claim. Count I alleges that Pratpal Bagga[5] and Khushvinder Bagga violated § 1962 of RICO.[6] That section

---

[5]The Plaintiffs maintain that the Court's observation in the December 2009 Opinion that the SAC stated a RICO claim against Mr. Bagga is now the law of the case precluding his challenge in this motion. Plaintiffs' Brief, 4-6 citing 2009 WL 5112008 at *15, n.14. As a matter of law, that is simply incorrect. See *In re Integrated Health Services, Inc.,* 358 B.R. 637, 641 (Bankr.D.Del.2007) ( "the effect of the decisions on a Motion to Dismiss cannot constitute the law of the case.) *See, e.g., McKenzie v. BellSouth Telecomms., Inc.,* 219 F.3d 508, 513 (6th Cir .2000) (concluding that "our holding on a motion to dismiss does not establish the law of the

(continued...)

provides, in pertinent part, that:

> [i]t shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the activities
> of which affect interstate or foreign commerce to conduct or
> participate, directly or indirectly, in the conduct of such
> enterprise's affairs through a pattern of racketeering activity
> or collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to plead a violation of RICO, a plaintiff must allege (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Lum v.*

*Bank America,* 361 F.3d 217, 223 (3d Cir. 2004); citing *Sedima, S.P.R.L. v. Imrex Co.,*

*Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).

*Conduct*[7]

Liability under subsection (c) is predicated on a defendant having "*conduct[ed] or*

*participate[d], directly or indirectly, in the conduct* of [the] affairs of the enterprise." 18

U.S.C. § 1962(c)(emphasis added).  In *Reves v. Ernst & Young*, the Supreme Court

held that "'to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs,' one must participate in the operation or management of the

---

[5](...continued)

case for purposes of summary judgment"); *Perez-Ruiz v. Crespo-Guillen,* 25 F.3d 40, 42 (1st
Cir.1994) (concluding that "[i]nterlocutory orders, including denials of motions to dismiss, remain
open to trial court reconsideration, and do not constitute the law of the case."). *See also Council
of Alternative Political Parties v. Hooks,* 179 F.3d 64, 69-70 (3d Cir .1999) (holding that law of
the case doctrine does not prohibit courts from revisiting matters that are "avowedly preliminary
or tentative").

[6] RICO creates a private cause of action for a person injured in business or property
under 18 U.S.C. § 1962. 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496
(1985).

[7]It is agreed that the Mr. and Mrs. Bagga are "persons" as defined by the statute.  18
U.S.C. § 1961(3).

enterprise itself." 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (citation omitted).[8] The High Court understood the word "conduct" to indicate some degree of direction over the affairs of the enterprise.  *Id.* at 178, 113 S.Ct. at 1169.  The Court concluded also that the term "participate" meant "to take part in."  *Id.* at 179, 113 S.Ct. at 1170*; see also University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (adopting "operation or management" test enunciated in *Reves*); *see also United Nat. Ins. Co. v. Equipment Ins. Managers*, 1995 WL 631709 at *4 (E.D.Pa.).

Along with Khushvinder Bagga, Pratpal Bagga is alleged to have "directly or indirectly *conducted or participated in conducting* the affairs" of the enterprise.  SAC ¶ 69.  Generally, the conduct is alleged to consist of [mail and wire fraud,money laundering and bankruptcy fraud.  *Id*. ¶¶ 65-67.  Mr. Bagga's conduct begins with his alleged misrepresentation to Captec regarding what the loans were for.  *Id*.  ¶ 71.  Once made, the loans were converted by both husband and wife.  *Id*. ¶ 72.  Pratpal is further alleged to have mislead Captec as to what happened to the loan proceeds.  *Id*. ¶ 74(a)  Both Mr. and Mrs Bagga are alleged to have laundered the Captec funds.  *Id*. ¶ 81(a) and (b).  Finally, Pratpal Bagga is charged with having committed bankruptcy fraud.  *Id*. ¶ 82.

*Pleading an*
*Enterprise*

---

[8] Although *Reves* involved a motion for summary judgment, the Third Circuit has held that its holding is applicable to a motion to dismiss.  *See University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (rejecting argument that *Reves* test applies only in a summary judgment context)

The "conduct" or "participation" alleged must have been part of the affairs of an "enterprise." The statute specifically defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As to *exactly* what must be pleaded to state the existence of an enterprise, the Court has previously explained that post-*Twombly* enough must be set forth to inform the Defendant of the elements of the enterprise with a degree of plausibility. *See* 416 B.R. at 420-422

The Plaintiffs allege the existence of the "Bagga/Chawla enterprise" at the outset. SAC, ¶ 61. The enterprise is alleged to be an association in fact of persons and entities engaged in clothing, real estate, and restaurant ventures and under the joint direction, control and leadership of Mr. and Mrs. Bagga as well as Ravinder Chawla. *Id.* Its objective, as alleged, was to obtain corporate loans by means of fraud, to convert the loans proceeds to their own personal use, to intentionally default on the loans, to either compromise the loans for less than their true value or put the companies out of business, to fraudulently transfer any remaining assets beyond the reach of creditors, and to thereby impair the value of the lender's collateral or resulting judgments. The end result was for the Defendants to enrich themselves at the expense of legitimate creditors who had done business with them or the other enterprise members. *Id.* ¶ 63

As this Court noted in ruling on the motion to dismiss the First Amended Complaint, those allegations serve as the framework around which facts are pleaded to establish the enterprise. 416 B.R. at 422. The same elements of association are

present: Mr. and Mrs. Bagga and Mr. Chawla are blood relatives who operate entities

that do business with each other.  Neither individual appears to oversee the others and

by all appearances they work by cooperation.  As to when these persons arrived at their

alleged scheme, the SAC does not specify exactly, but given what is alleged in the way

of coordinated deception before, during, and subsequent to the loan process, it is fair to

read the SAC to allege that the enterprise was formed at the time Mr. Bagga first

approached Captec.  Finally, it goes without saying that the enterprise is the alter ego of

the Individual Defendants' outwardly legitimate businesses (fast-food franchises,

apparel, and real estate businesses).  In sum, the Court finds a RICO enterprise to be

sufficiently pleaded.

*Pattern and
Racketeering*

The modus operandi of a RICO defendant is through a "pattern of racketeering

activity."  As explained in prior opinions, this Court will determine first if acts of

racketeering were alleged before determining if those acts were part of a pattern.  *See,*

*e.g., H.J.,Inc., v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250, 109 S.Ct. 2893, 2906,

106 L.Ed.2d 195 (1989) (finding first that petitioner alleged multiple predicate acts of

bribery before analyzing whether such acts related to a common purpose); *see also*

*Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411-12 (3d Cir. 1991) (finding

that complaint alleged predicate act of mail fraud before determining if pattern pleaded).

As before, the Court begins with the definition found in the statute.  It defines, in

pertinent part, a "racketeering activity" as

> (B) any act which is indictable under any of the following
> provisions of title 18 United States Code: … section 1341

8

> (relating to mail fraud), section 1343 (relating to wire fraud)
> … section 1956 (relating to the laundering of monetary
> instruments) … section 2320 (relating to trafficking in goods
> and services bearing counterfeit marks) … section 2314 and
> 2315 (relating to interstate transportation of stolen property)[9]
> … (D) any offense involving fraud connected with a case
> under title 11 …

18 U.S.C. § 1961(1). The SAC alleges two or more related instances of mail fraud, wire fraud, money laundering, and bankruptcy fraud. SAC ¶¶ 71(a), 72(a), 73(a), 74-79 (mail/wire fraud); ¶¶ 80, 81(a)(b) (money laundering); and ¶¶ 82, 83(a)-(c), 84, and 85 (bankruptcy fraud). Before determining if the SAC implicates Mr. and Mrs. Bagga, the Court will first review the pleading standard applicable to each predicate act.

*Pleading Standards
for Predicate Acts*

Where, as here, Plaintiffs rely, *inter alia*, on a series of fraud-based predicate acts (mail, wire, and bankruptcy fraud as well as money laundering[10]) as a basis for a RICO claim, those allegations must meet a heightened standard. Consistent with Federal Rule of Civil Procedure 9(b), allegations of fraud must be pleaded with

---

[9]While the SAC alleges dealing in counterfeit goods and moving collateral across interstate lines, it does so only in passing. The emphasis of the predicate actions is on mail/wire fraud, money laundering and bankruptcy fraud.

[10]A previous opinion did not subject a money laundering claim to a heightened pleading standard. 416 B.R. 412, 423-424. However, upon reconsideration of the question as raised by Defendants, the Court observes that there is a split of authority. The majority would apply Rule 9(b) to money laundering claims. *Compare Best Deals on TV, Inc. v. Naveed,* 2007 WL 2825652 at *7 (N.D.Cal.)(applying heightened standard); *Stewart v. Wachowski*, 2004 WL 2980783 *4 (C.D.Cal.2004)(same); *Spitzer v. Abdelhak*, 1999 WL 1204352 at *5 (E.D.Pa.1999)(same); and *Choimbol v. Fairfield Resorts, Inc.*, 428 F.Supp.2d 437, 445-446 (E.D.Va.2006)(same) with *Eastman Kodak Corp. v. Camarata*, 2006 WL 3538944 at *6 (W.D.N.Y.) (applying general notice pleading standard); *Levin v. Torino Jewelers, Ltd.*, 2006 WL 709098 at *4 n.3 (S.D.N.Y.)(same); *Leung v. Law*, 387 F.Supp.2d 105, 118 (E.D.N.Y.)(same). Upon reflection, the Court now believes that the majority view of heightened pleadings for money laundering claims should be followed and will do so here.

9

specificity.  *See Saporito v. Combustion Engineering*, 843 F.2d 666, 673 (3d Cir. 1988).

In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances'

of the alleged fraud in order to place the defendants on notice of the precise misconduct

with which they are charged, and to safeguard defendants against spurious charges of

immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach.*

*Corp.*, 742 F.2d 786, 791 (3d Cir.1984).  Plaintiffs may satisfy this requirement by

pleading the "date, place or time" of the fraud, or through "alternative means of injecting

precision and some measure of substantiation into their allegations of fraud." *Id.*

(holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject

of alleged fraudulent transactions and the nature and subject of the alleged

misrepresentations).  Plaintiffs also must allege who made a misrepresentation to whom

and the general content of the misrepresentation. *See Saporito,* 843 F.2d at 675; *Rolo*

*v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658-59 (3d Cir.1998); *Klein v.*

*General Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir.1999); *see also First Capital*

*Asset Mgmt, Inc. v. Satinwood, Inc*., 385 F.3d 159, 178 (E.D.Pa. 2004) (requiring RICO

violation based on bankruptcy fraud to be pleaded with heightened particularity); *see*

*also Lum, supra*, (requiring mail and wire fraud-based RICO claim to be subject to Rule

9(b) pleading standard).

*Mail/Wire Fraud*

The scheme is alleged to have begun by Pratpal Bagga's fraudulent use of the

mails and wires.  It is alleged to have begun by him via a combination of **mail** and **wire**

**fraud**.  Title 18 of the United States Code punishes those acts as follows:

> Whoever, having devised or intending to devise any scheme
> or artifice to defraud, or for obtaining money or property by
> means of false or fraudulent pretenses, representations,…,
> for the purpose of executing such scheme or artifice or
> attempting so to do, places in any post office or authorized
> depository for mail matter, any matter or thing whatever to
> be sent or delivered by the Postal Service, … shall be fined
> under this title or imprisoned not more than 20 years, or
> both.

and

> Whoever, having devised or intending to devise any scheme
> or artifice to defraud, or for obtaining money or property by
> means of false or fraudulent pretenses, representations, or
> promises, transmits or causes to be transmitted by means of
> wire, radio, or television communication in interstate or
> foreign commerce, any writings, signs, signals, pictures, or
> sounds for the purpose of executing such scheme or artifice,
> shall be fined under this title or imprisoned not more than 20
> years, or both.

18 U.S.C. §§ 1341, 1343.  The wire fraud statute is patterned on its mail fraud

counterpart.  *U.S. v. Computer Sciences Corp.*, 689 F.2d 1181, 1188 n.14 (4th Cir.

1982).  They are the same underlying crime executed via difference means.  What is

alleged in this regard?

After Captec sold its in interest in the loans to FL Trust, the SAC alleges

continued mail and wire fraud on at least Mr. Bagga's part.  From March through May

2003, Pratpal Bagga is alleged to have transmitted via the mails or wires false and

misleading financial information to FL Trust.  This information was intended to explain to

FL Trust why the Bagga companies were unable to repay the Equipment loans.  ¶ 48.  It

is alleged to have involved the location of the lender's collateral as well as financial

information regarding the companies' business operations and alleged losses to

creditors.  *Id.*  He is also alleged to have sent them other false information about

different losses sustained.  *Id*. ¶ 74(a)(v), (vi).  There is no mention of *Mrs*. Bagga with

regard to allegations of mail or wire fraud.

*Money Laundering*

In addition to the foregoing frauds, however, Mr. Bagga is charged with

transferring the proceeds and converting them.  Mrs. Bagga is also implicated here.

The alleged offense is money laundering which involves

> [ ] knowing that the property involved in a financial
> transaction represents the proceeds of some form of
> unlawful activity, [a person] conducts or attempts to conduct
> such a financial transaction which in fact involves the
> proceeds of specified unlawful activity-
> …
> (B) knowing that the transaction is designed in whole or in part
>
> (i) to conceal or disguise the nature, the location, the source,
> the ownership or the control of proceeds of specified
> unlawful activity ...

18 U.S.C. § 1956(a)(1)(B)(i).  To establish a money laundering offense under 18 U.S.C.

§ 1956(a)(1), a party must plead: "(1) an actual or attempted financial transaction; (2)

involving the proceeds of specified unlawful activity; (3) knowledge that the transaction

involves the proceeds of some unlawful activity; and (4) ... knowledge that the

transactions were designed in whole or in part to conceal the nature, location, source,

ownership, or control of the proceeds of specified unlawful activity." *United States v.

Omoruyi,* 260 F.3d 291, 294-95 (3d Cir.2001).

The Captec loan proceeds–which were supposed to have gone to pay for

equipment—are alleged to have gone from the Bagga companies and to have been

invested in Mr. Chawla's company (World Apparel).  From there, the same money

would be returned to the Baggas personally.  SAC ¶¶ 32-37.  While earlier iterations of

12

this complaint limited the money laundering to the pre-Captec assignment period, the

Second Amended Complaint alleges that this predicate act continued into 2005 and

2006.  *Id*.  ¶ 73  At that time, Mr. Chawla is alleged to have sent the Baggas, or certain

named third parties, 13 transfers of money.  *Id*. ¶¶ 53-55.  Of these 13 transfers, only

one is expressly made for the benefit of Mr. Bagga.  *See* ¶ 55(i) (mentioning a $100,000

payment to Mr. Bagga).  It is explained next that all of the transfers redounded to the

benefit of the Baggas, either directly or indirectly.  *Id*. ¶¶ 55-56.  For its part, however,

the Court finds that of the two spouses this predicate act implicates only Mr. Bagga.

There is not even a vague reference as to how Mrs. Bagga specifically benefitted from

these transfers.

*Bankruptcy Fraud*

At the same time that money laundering is alleged to have been occurring,  Mr.

Bagga is charged with having **abused the Bankruptcy Code** in furtherance of the

enterprise.  With regard to bankruptcy filings, it is a crime to:

> (1) knowingly and fraudulently conceal[ ] from a custodian,
> trustee, marshal, or other officer of the court charged with
> the control or custody of property, or, in connection with a
> case under title 11, from creditors or the United States
> Trustee, any property belonging to the estate of a debtor;
>
> (2) knowingly and fraudulently make[ ] a false oath or
> account in or in relation to any case under title 11;
>
> (3) knowingly and fraudulently make[ ] a false declaration,
> certificate, verification, or statement under penalty of perjury
> as permitted under section 1746 of title 28, in or in relation to
> any case under title 11;
> …
> (5) knowingly and fraudulently receive[ ] any material amount
> of property from a debtor after the filing of a case under title
> 11, with intent to defeat the provisions of title 11;

13

…

(8) after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor; or

(9) after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor,

18 U.S.C. § 152.  In addition, one is also guilty of bankruptcy fraud

[ ] who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so

(1) files a petition under title 11 ... ;

(2) files a document in a proceeding under title 11...; or

(3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, ... , at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,

18 U.S.C. § 157.  A claim of bankruptcy fraud is subject to Rule 9(b)'s heightened standard for fraud-based causes of action.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir.2004) (requiring RICO violation based on bankruptcy fraud to be pleaded with heightened particularity).  What bankruptcy-related frauds and offenses are alleged?

*Standing and
Bankruptcy Fraud*

As a preliminary matter, Defendants also raise the question of FL Trust's

14

standing to raise any claims of bankruptcy fraud.  Defendant's Brief, 18-19;

Supplemental Brief, 3-4; Second Supplement Brief, 8-9; and Third Supplemental Brief,

2-4.  They consider such claim to be the province of the bankruptcy trustees.  FL Trust

responds that because the allegations of bankruptcy fraud and abuse resulted in harm

directly—and not derivatively— sustained by it, its standing is established.  This applies

to all of the predicates alleged.  *See* Letter Response of May 20, 2010.

FL Trust, however, is not seeking a criminal sanction, but is, instead, pressing a

private right under the federal civil racketeering law.  That statute incorporates certain

criminal predicates to establish a racketeering enterprise.  *See* 18 U.S.C. § 1961(1).

So long as the harm alleged is the direct result of the racketeering, standing lies.  *In re*

*Sunrise Securities Litig.*, 916 F.2d 874, 880-881 n.8 (3d Cir. 1990) (noting how federal

courts have analyzed whether an alleged RICO injury is direct and distinct versus

derivative in ruling on standing).  Where bankruptcy fraud is alleged to be part of a

RICO scheme, it has been held that a debtor's creditor who alleges to have been

injured by such fraud had standing against the debtor's officers, despite the fact that the

debtor suffered the identical injury with the same right of recovery.  *See Bankers Trust*

*Company v. Rhoades*, 859 F.2d 1096, 1100-1101 (2d Cir. 1988).  These plaintiffs'

standing to allege bankruptcy fraud is accordingly not precluded.

*Allegations of*
*Bankruptcy Fraud*

What is alleged, then, in the way of bankruptcy fraud?  The SAC explains that in

order to thwart legitimate collection efforts, Mr. Bagga placed the three Defendant

companies (as well as a fourth business) into Chapter 11.  SAC, ¶ 49.  This is alleged to

have occurred in 2003[11] and 2004.[12] These were businesses, Plaintiffs maintain, that were operationally sound, but were rendered insolvent by the Baggas' intentional misdeeds.  *Id*. ¶ 82.  After these filings, Mr. Bagga is charged with concealing property pledged to Plaintiffs (¶ 50(a)).  This is alleged to have involved his knowing misrepresentation of the Debtors' assets and liabilities.  He is also charged with making false statements regarding payments to insiders (¶ 50(b)) and knowingly destroying or concealing business records (¶ 50(c)).  He is similarly accused of transferring estate property to non-debtors both before and after the bankruptcy filing (¶ 50(d)).  This is alleged to involve the money received from Captec as well the continued instances of money laundering in 2005/2006.  *Id*.  He also is supposed to have made unauthorized payments to lessors and other individuals.  (¶ 50(e)).  Lastly, Mr. Bagga, along with the Chawlas, is charged in the United Management case of granting a release to Ravinder Chawla's company of an obligation owed the debtor without court approval.  ¶ 52.  These transgressions, the Court observes, are set forth with varying degrees of specificity; however, there is enough set forth in the SAC to allege more than one instance of bankruptcy fraud.

*Summary of
Predicate Acts*

Reviewing the involvement of both individual defendants, the Court observes that it is Mr. Bagga who is charged with *three* predicate acts and Mrs. Bagga who is charged with *one*.  *His* conduct consists of the mail and wire fraud, money laundering as well as

---

[11]*In re The Welcome Group, Inc.*, Case No. 03-13639, filed April 25, 2003.

[12]All three Debtor corporations filed Chapter 11 petitions on December 30, 2004.

bankruptcy fraud.  Each is fleshed out with the requisite degree of specificity required

for fraud-based causes of action.  The Court finds that the SAC sufficiently pleads his

commission of all three acts.  Mrs. Bagga's allegations, however, are a different story.

*Her* conduct is  limited to money laundering and those allegations which matter (i.e.,

those which occurred after the Captec Assignment—are vague at best.[13]  She is lumped

collectively with Mr. Bagga[14] and there is no distinct act of money laundering attributed

to her after the Plaintiffs obtained standing.  In sum, the Court finds that predicates are

sufficient pleaded only as to Mr. Bagga.  It now turns to whether Mr. Bagga's predicate

actions are alleged to be part of a pattern.

*What Constitutes a Pattern
for Purposes of RICO?*

There is no specific definition of the term "pattern" in the statute.  The closest it

comes is in its definition of "pattern of racketeering activity." That is defined as

> at least two acts of racketeering activity, one of which
> occurred after the effective date of this chapter and the last
> of which occurred within ten years (excluding any period of
> imprisonment) after the commission of a prior act of
> racketeering activity;

18 U.S.C. § 1961(5).  This definition has been held to "state a minimum necessary

condition for the existence" of a "pattern." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492

U.S. 229, 237, 109 S.Ct. 2893, 2899 (1989)  The Supreme Court emphasized that

---

[13]Before the Captec assignment, there are two specific allegations of money laundering
on her part.  She is alleged to have received $470,000 of the Captec loan proceeds that was
supposed to have paid for restaurant equipment.  ¶ 32(a), 72(a)(ii).  She is further alleged to
have used some of the same money to purchase a check in the amount of $525,000 payable to
Mr. Chawla. ¶ 33(b)

[14]The 2005/2006 allegations of money laundering refer to "the Baggas."

allegations cannot constitute a RICO "pattern" unless they show that the racketeering predicates are *related*, and that they amount to or pose a threat of *continued criminal activity*." *H.J. Inc.,* 492 U.S. at 239; *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1417 (3d Cir.1991) (emphasis added) (*citing H.J., Inc., supra* to require RICO plaintiff to plead that predicate acts were related and that they amount to or pose the threat of continuing criminal activity to sufficiently allege pattern requirement); *see also Tabas v. Tabas,* 47 F.3d 1280, 1303 (3d Cir.1995) ("Thus, a plaintiff seeking to bring a RICO claim must allege, among other things, relatedness and continuity")  Both tests are fact-specific. *Kehr, supra, id*.

*Relatedness*

The Supreme Court has adopted a broad, multi-factor test for relatedness.  It focuses on whether the alleged predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.* at 240, 109 S.Ct. at 2901 (quoting Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98-473, tit. II, § 212(a)(2), 98 Stat.1987).   Does the SAC allege a nexus among either of the Bagga's actions?

At least with regard to Pratpal Bagga, the Court finds that it does.  Mr Bagga's first frauds (mail and wire) begot the next (money laundering) which would ultimately result in an abuse of title 11 (bankruptcy fraud) of the Debtor borrowers which would be followed by more laundering of proceeds.  All of this was done by him to keep the Plaintiff from ever recovering on the defaulted loan.  If proven, this appears to be all part and parcel of an integrated scheme.

18

*Continuity*

In addition to relatedness, the commission of the predicates must also be alleged to be continuous.  That is, the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.  *H.J. Inc., supra*, 492 U.S. at 240, 109 S.Ct. at 2901.  The continuous nature of the pattern could be either open or closed-ended.  *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412-13 (3d Cir.1991).

The SAC alleges generally that the predicate acts are part of a pattern which has continued from at least 1999 to the present.  ¶ 70.  These acts are further alleged to exhibit continuity in that they have extended over more than a three-year period and that they are part of the way that the Enterprise regularly does business.  *Id.*, ¶ 87. Plaintiffs also see a threat of future racketeering activity given the members' continued use of the fraudulently obtained loan proceeds, as well as other wrongly obtained assets.  *Id.*, ¶ 88.  This is alleged to have occurred as recently as 2006.  *Id.*

Given that four years have passed since the last alleged racketeering is supposed to have occurred, the Court does not find the SAC to set forth "open-ended" continuity on the Baggas' part.  That leaves the question of whether there are alleged predicates to support a claim of "closed-end" continuity.  While there is no indication of *ongoing* fraud, continuity may be demonstrated where what is alleged to have occurred transpired over a considerable time period.  Case law has interpreted continuity in this context as fundamentally a temporal concept;[15] that continuity, of course, does not

---

[15]*H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902.

necessarily connote perpetuity and the two dimensions are not to be confused;[16] and

that "duration is the sine qua non of continuity." *Hindes v. Castle*, 937 F.2d 868, 873 (3d

Cir. 1991).  Does what is alleged in the SAC demonstrated a fixed, but continuous,

pattern of racketeering on the part of either Mr. or Mrs. Bagga?

In that regard, it should be observed at the outset that the predicates attributed

to *Mr*. Bagga versus *Mrs*. Bagga differ greatly in scope and variety.  Even from the date

that FL Trust stepped into Captec's shoes, Mr. Bagga continued the artifice as to FL

Trust with the hiding of collateral, false explanations and misleading financial

information.  It is also he who is alleged to have shepherded these Debtors through

abusive bankruptcy filings.  And while those proceedings were unfolding in this forum,

he is alleged to have continued in laundering of the original Captec loan monies.  It is

fair, then, to say that the SAC portrays him as instrumental to every phase of the

enterprise.  So while nothing recent is alleged to have happened, Mr. Bagga had over a

three year period piloted this enterprise via alleged frauds and other wrongdoings.  Four

of those eight years occurred on FL Trust's watch; i.e., when it held the Captec loans.

This is a considerable enough span of time to be called continuous.

*Causation*

That brings the Court to the final element of a substantive RICO claim.  Even

assuming that all of the foregoing elements are set forth, the Plaintiffs would have to

show that it sustained damages as a result of racketeering.  This returns the Court to

the standing issue which has arisen in almost every other major ruling issued by this

---

[16]*In re Jamuna Real Estate LLC, supra*, 365 B.R. at 552.

Court.  The RICO statute provides that "[a]ny person *injured* in his business or property *by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district court …" 18 U.S.C. § 1964(c) (emphasis added).  To be a "person injured ... by reason of a ... [RICO] violation," a plaintiff must allege that his harm was proximately caused by that violation; "but for" causation is insufficient.  *See Holmes v. SIPC,* 503 U.S. 258, 268-269, 112 S.Ct. 1311, 1317 (1992).  What is required, then, is "some direct relationship between the injury asserted and the injurious conduct alleged." *Id.*  In other words, any claim that is derivative of harm sustained by another will not suffice.  For this plaintiff, that means any injury *it*—not Captec— sustained as a result of racketeering.  Because Captec did not assign the Equipment loans to Plaintiff until September 26, 2002, its rights under RICO do not accrue until after that date.

*Recent Supreme Court Authority*

At the hearing, the Defendants brought to the Court's attention two Supreme Court decisions which dealt with RICO standing: *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 126 S.Ct. 1991 (2006), and *Hemi Group, LLC v. City of New York*,  — U.S. — 130 S.Ct. 983 (2010).  Both cases would result in a finding that the would-be plaintiff lacked standing because the connection between the alleged racketeering and the alleged injury was too attenuated.  In *Anza*, the plaintiff Ideal was a competitor of Anza. It accused Anza of not charging sales tax to customers as an inducement to do

business with it instead of Ideal.  Anza was likewise accused of filing fraudulent tax returns indicating that taxes were paid when they were not.  Ideal claimed that, as a result of this illegal practice, it wrongfully suffered loss of market share to Anza's company.  Ideal thus sued Anza under RICO.  The High Court found a lack of standing because it was the taxing authority—and not Ideal—who was harmed by the fraudulent conduct.  Ideal may have suffered from the loss of customers but that could not be directly attributable to the Anza's alleged tax fraud.

*Hemi Group* also involved fraudulent tax practices.  There, the defendant was in the business of online cigarette sales.  Because online vendors do not collect sales tax in New York, the defendant was required to report its sales to the state of New York which, in turn, reported that information to the City of New York.  With that information, the City could collect taxes due from Hemi's customers.  The City alleged that Hemi was purposefully not reporting those sales to the state and when the City learned of that fact it sued Hemi under RICO.  The Supreme Court found that the harm alleged to be suffered by the City (unpaid taxes) was caused by conduct of a customer, not the seller of the cigarettes.  This disconnect between the racketeering and the injury precluded any standing on the City's part.

The Court finds both cases to be distinguishable and it is these very differences that make them useful for present purposes.  They point up the crucial element of RICO standing.  The would-be RICO plaintiff must have suffered harm as the *proximate* result of the racketeering.  *See Holmes, supra*, 503 U.S. at 268-269, 112 S.Ct. at 1317-1318 (holding that plaintiff may sue under RICO § 1964(c) only if the alleged violation was the proximate cause of the plaintiff's injury).  That was not found in either *Anza* or *Hemi*

22

*Group*.  Both cases, the High Court ruled, involved an attempt to expand the connection

between act and injury.  The harm that the plaintiff complained of was either collateral

(*Hemi Group*) or speculative (*Anza*).  To be sure, both cases involved direct harm, but it

was a different entity—a taxing authority— that sustained it.  The complaint before this

Court follows a different schematic.  FL Trust is not asserting standing through what

might have befallen Captec.  Indeed, the Court's February 2008 ruling specifically

forbade that.  Instead, it is asserting its own, independent standing for acts of

racketeering directed at it as of the date it held the loans.  There is a directness (i.e,

*proximate*ness) to the effects of that racketeering which simply did not exist in *Hemi*

*Group*.  And because these parties (that is, FL Trust and the Baggas) are in privity, the

alleged damages are not of that speculative nature (loss of market share) asserted in

*Anza*.  Here, the damages are concrete.  To repeat, FL Trust holds loans in the amount

of approximately $4 million and has yet to be paid anything.  In short, neither of the

recent cases helps Defendants' cause.

To summarize, after carefully considering all of the parties' arguments, the Court

finds that the SAC sufficiently pleads that Plaintiff FLTrust was the victim of Mr. Bagga's

racketeering.  Upon assuming the Captec loans, FL Trust's recovery efforts were denied

by continued wire fraud on Mr. Bagga's part as to the whereabouts of their collateral.

SAC ¶ 48.  Next followed the alleged abuse of the Chapter 11 filings for the Welcome

Group as well as the Debtors.  (April 2003, December 2004).  In those proceedings, he

is alleged to have concealed property, failed to disclose insider payments, destroyed

records, transferred estate property to non-debtors, and made unauthorized payment all

in order to frustrate FL Trust's collection efforts.  *Id.* ¶ 50.  Lastly, his continued

participation in money laundering with Mr. Chawla in 2005 and 2006 (*Id.*, ¶¶ 55-56) has

resulted in this Plaintiff still not having recovered anything from these loans.  This is the

harm which FL Trusts traces to Mr. Bagga's racketeering.  At least as to Mr. Bagga,

then, the Court finds that the SAC states a substantive RICO claim.

*Count II - Conspiracy*
*to Violate RICO*

The second count of the SAC alleges a conspiracy to violate the RICO statute.

Subsection (d) of § 1962 prohibits conspiracies to violate "any of the provisions of

subsection (a), (b), or (c) of [§ 1962]."  *See* 18 U.S.C. § 1962(d).  Both Mr. and Mrs.

Bagga contend that the failure to state a substantive claim against either of them

necessarily dooms any conspiracy claim.  *See* Defendants' Brief, 21.  The Court's

finding *supra* that Count I states a substantive RICO claim against Mr. Bagga undercuts

that premise; however, it does not answer the question as to whether it is alleged that

either Mr. or Mrs. Bagga conspired with another member of the enterprise to violate

RICO.  And with regard to Mrs. Bagga, this is of critical importance: the Third Circuit has

explained that a person need not be guilty of having committed a substantive violation

of RICO in order to have *conspired* to do so.  *Smith v. Berg*, 247 F.3d 532, 536-537 (3d

Cir. 2001)

*Pleading RICO Conspiracy*

The Court begins with a two-part inquiry: what must be pleaded to state a RICO

conspiracy and with what degree of specificity.  The Supreme Court has explained that

liability under § 1962(d) is governed by the general principles of conspiracy law.  *Beck*

*v. Prupis*, 529 U.S. 494, 504, 120 S.Ct. 1608, 1615 (2000).  One conspires to violate

24

RICO by agreeing to commit an overt act of racketeering.  *Id*. at 505-506; 120 S.Ct. at

1616; *see also Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) *citing Odesser v.*

*Continental Bank,* 676 F.Supp. 1305, 1312 (E.D.Pa.1987) (explaining that the elements

which must *pleaded* to allege a RICO conspiracy claim are (1) an agreement to commit

the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of

racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c)).

Knowing what must generally be set forth, the Court turns to the question of how much

of that subject matter is required.

Previously, the Court observed that "allegations of conspiracy are not measured

under the ... [Fed.R.Civ.P.] 9(b) standard, which requires greater particularity of

allegation of fraud, but are measured under the more liberal ... [Fed.R.Civ.P. 8(a) ]

pleading standard."  *Odesser, supra*, 676 F.Supp. at 1313.  At that same time, we noted

that a conspiracy claim must also contain supportive factual allegations.  *See Black &*

*Yates, Inc. v. Mahogany Ass'n, Inc.,* 129 F.2d 227, 231-32 (3d Cir.), *cert. denied,* 317

U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942).  To the extent that the parties may have

harbored any doubts on that score, the Supreme Court's decision in *Twombly, supra*,

should have dispelled them.  *Twombly*, it is worth pointing out, involved a conspiracy

claim, albeit in a different context (i.e., antitrust law).  The allegations must be sufficient

to "describe the general composition of the conspiracy, some or all of its broad

objectives, and the defendant's general role in that conspiracy."  *Alfaro v. E.F. Hutton &*

*Co., Inc.,* 606 F.Supp. 1100, 1117-18 (E.D.Pa. 1985).  "'Although mere inferences from

the complaint are inadequate to establish the necessary factual basis', a court may look

to any 'factual allegations of particular acts' within the complaint as a whole

25

incorporated by the conspiracy claim to provide this basis." *Rose, supra*, 817 F.2d at

366 (citations omitted); *see also Swiggett v. Upper Merion Twp.*, 2008 WL 4916039 at

*3 (E.D.Pa.) *quoting Rose, supra*, ("Only allegations of conspiracy which are

particularized, such as those addressing the period of the conspiracy, the object of the

conspiracy, and certain actions of the alleged conspirators taken to achieve that

purpose, will be deemed sufficient.")

*Agreement*

The Court begins its analysis with a determination of whether it is alleged that

either of the Baggas agreed to the commission of predicate acts.  Within Count II it is

alleged that Mr. and Mrs. Bagga along with Ravinder Chawla *agreed* to conduct the

affairs of the Bagga Chawla Enterprise through a pattern of racketeering activity.  ¶ 91.

It is next alleged that Hardeep Chawla agreed with one or more of the individual

Defendants to violate the RICO statute.  ¶ 92.  Where or when they reached precise

agreement as to these acts is not alleged; however, as this Court has previously noted,

evidence of such an agreement is rarely offered up.  416 B.R. at 429.  What is alleged,

then, that might allow such an inference?  When was it supposed to have happened?

From the date FL Trust purchased the loans from Captec, (again, that would be

September 2002), Mr. Bagga is alleged to have continued his wire fraud by deceiving

the Plaintiff as to the whereabouts of its collateral.  What followed is the alleged

bankruptcy fraud in the Chapter 11 cases of his companies.  It appears to have

concluded with the claims of money laundering in 2005 and 2006.  So what is set forth

here is not "parallel" actions which were found insufficient in *Twombly* but rather

coordinated conduct on the part of Mr. Bagga and the Chawlas to stay one step ahead

of the Plaintiff.  From this, the Court may fairly infer his agreement to conspire.

But can the same be said of Mrs. Bagga?  After the Captec assignment, there is no specific mention of her in the SAC.  She is referred to not individually, but collectively ("the Baggas") under the subheading *Money Laundering Continues*.  SAC, 17.  There is no reference of her having made a transfer or having received one.  There are 13 separate instances of subsequent money laundering of which one expressly went to *Mr*. Bagga and another to his lawyer in Texas, but all of the others went to persons or entities whose identities the SAC leaves a mystery.  There is then no basis upon which the Court may make any inference as to whether she might have agreed to anything during this period, much less a conspiracy.

*The Required*
*Mental State*

The same finding must made as to the Baggas' mental state *qua* conspirator. While a RICO violator must have agreed with his co-conspirator, he must also have known at the time of the conspiracy that he would be engaging in racketeering.  *See Rose, supra*, 871 F.2d at 367 (noting that conspirator must have knowingly furthered the enterprise's affairs).   Here, again, the specific allegations within the count are conclusory: the "defendants knowingly took steps in furtherance of the conspiracy" and "knowingly undertook the commission of acts that did or would…constitute a pattern of racketeering activity."  ¶¶ 94-95.  Is the requisite state of mind established as to either Defendant?

This second element—*mens rea*— is what the amendment establishes as to Mr. Bagga, but not Mrs. Bagga.  As to Mr. Bagga, no rational reader could conclude from

27

what is alleged to have been done by him that it was not purposeful.  The deceit, the

misuse of the bankruptcy process and the receipt of laundered funds demonstrate

intent, pure and simple.  Yet none of this involves Mrs. Bagga.  At this juncture in the

SAC narrative, she appears to have left the stage.  If she is not actively involved in any

of the other's misdeeds, we cannot infer that she somehow agreed to one or more of

them.  There is then a failure to implicate her in the RICO conspiracy claim in Count II.

*Summary*

 For all of the reasons which follow, the Court finds that Counts I and II state

claims against Mr. Bagga only.  Accordingly, Counts I and II will be dismissed as to Mrs.

Bagga.

 An appropriate order follows.


                                        By the Court:

                                        _____
                                        Stephen Raslavich
                                        Chief U.S. Bankruptcy Judge


Dated: <u>July 13, 2010</u>